Nos. 23-15862 & 23-15990

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

SCHRADER CELLARS, LLC,
*Plaintiff, Counter-Defendant – Appellee, Cross-Appellant,*

v.

ROBERT M. ROACH, Jr.,
*Defendant, Counter-Claimant – Appellant, Cross-Appellee,*

---

On Appeal from the United States District Court
for the Northern District of California
No. 3:21-cv-01431-SK
Honorable Sallie Kim, Presiding

---

# OPENING BRIEF OF
# APPELLANT, ROBERT M. (RANDY) ROACH, Jr.

---

William J. Boyce
Robert B. Dubose
ALEXANDER DUBOSE & JEFFERSON LLP
1844 Harvard Street
Houston, Texas 77008
(713) 523-2358
bboyce@adjtlaw.com
rdubose@adjtlaw.com

Manuel López
ROACH NEWTON, LLP
One Westchase Center
10777 Westheimer Rd., Suite 1100
Houston, Texas 77042
(713) 652-5717
MLopez@roachnewton.com

*Attorneys for Appellant,*
*Robert M. (Randy) Roach, Jr.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................... i

TABLE OF AUTHORITIES ...............................................................v

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUES ..........................................................1

STATUTORY PROVISIONS................................................................1

SUMMARY OF ARGUMENT ............................................................2

STATEMENT OF THE CASE .............................................................6

    A.    Cellars filed this lawsuit in retaliation for Roach's Texas lawsuit regarding the RBS wine. ................................................... 6

    B.    Fred solicited Roach's investment and partnership in the RBS wine. ............................................................................... 7

    C.    To induce Roach to invest and partner in RBS, Fred made false representations and promises with no intention of completing them. ............................................................................... 9

    D.    RBS, LLC was created to formalize Fred's RBS promises...............10

    E.    Fred and Cellars made continuous representations of Roach's ownership of the RBS wine to induce 15 years of work from Roach..............................................................................10

    F.    Roach provided limited legal advice to Fred that, with only one exception, occurred after the RBS agreement...................................12

    G.    Fred deprived Roach of his promised ownership share of RBS by secretly selling it to Constellation. ....................................14

    H.    Procedural History. ..........................................................14

STANDARD OF REVIEW & ROADMAP FOR DISPOSITION ........................16

ARGUMENT..................................................................................17

I.  The district court's summary-judgment ruling disregarded genuine issues of disputed facts as well as the district court's own finding that RBS was separate from Cellars. ....................................................17

    A.  Roach raised genuine, disputed fact issues as to whether an attorney-client relationship existed between Roach and Cellars at the creation of the RBS agreement. ....................................................18

    B.  Roach raised genuine, disputed fact issues regarding whether he rebutted California's rebuttable presumption of unfairness and undue influence................................................................22

    C.  Roach raised genuine, disputed fact issues regarding whether Roach breached his fiduciary duties.................................................26

    D.  Cellars cannot properly invoke Rule 3-300 because, at the relevant time, Roach only claimed an interest in the RBS wine, which the district court found to be separate from Cellars................28

    E.  This Court should render judgment dismissing Cellars' declaratory-judgment claim under the *Noerr-Pennington* doctrine and the litigation privilege.................................................29

II.  The summary judgment should be reversed because Cellars had no standing to void the RBS agreement. .........................................32

    A.  Under California law, only parties to a contract have standing to rescind a contract. ................................................................32

    B.  The evidence confirmed that the only parties to the RBS agreement were Roach and Fred. ......................................................35

    C.  The district court's standing and jurisdictional error was compounded by Cellars' dramatic admission, post-verdict, that it never sought to rescind the RBS agreement. ....................................37

III.  The district court erroneously granted summary judgment by disregarding binding Texas ethics decisions that fully exonerated Roach. ................................................................38

A.     Private attorneys should not be able to shop around ethics allegations that have been authoritatively and repeatedly rejected on the merits. ...................................................................40

B.     Cellars failed to meet this Court's test for overriding the multiple Texas ethics decisions. .....................................................42

C.     The district court's choice-of-law analysis did not justify disregarding the Texas ethics decisions ...........................................43

     1.     The district court declined to defer to the Texas ethics decisions based on factual errors. ...........................................44

     2.     The district court declined to defer to the Texas ethics decisions based on legal errors. ...............................................45

D.     The district court's implicit finding of waiver was erroneous ...........47

IV.    The district court erroneously granted summary judgment against Roach's non-contract counterclaims without regard to their merits. ............50

A.     Roach pled counterclaims that were not based on the enforceability of an RBS contract. ...................................................51

     1.     Roach pled fraud-based ownership percentage claims.............52

     2.     Roach pled fiduciary-duty-based ownership percentage claims. ...................................................................................53

     3.     Roach pled estoppel-based ownership percentage claims........54

     4.     Roach's fraud, fiduciary duty, and estoppel allegations created ownership percentage rights........................................55

B.     This Court should reject the district court's subsequent rationalizations for its erroneous ruling. ...........................................56

     1.     Roach did not waive his counterclaims. ..................................56

     2.     Roach had no obligation to demonstrate reliance. ...................59

CONCLUSION ................................................................................................60

CERTIFICATE OF COMPLIANCE..................................................................62

CERTIFICATE OF SERVICE................................................................64

STATUTORY ADDENDUM................................................................65

# TABLE OF AUTHORITIES

## Cases

*Adarand Constructors, Inc. v. Mineta*,
　　534 U.S. 103 (2001)..................................................................35

*Alcini v. Nw. Mut. Life Ins. Co.*,
　　2008 WL 11337236 (C.D. Cal. Sept. 29, 2008)..........................35

*Alliance Mortg. Co. v. Rothwell*,
　　10 Cal. 4th 1226, 900 P.2d 601 (1995).......................................59

*Almog v. Golden Summit Invs. Grp., Ltd.*,
　　2012 WL 12867972 (C.D. Cal. April 30, 2012) ..........................32

*American Canoe Ass'n v. Murphy Farms, Inc.*,
　　326 F.3d 505 (4th Cir. 2003).......................................................49

*Applied Med. Distribution Corp. v. Surgical Co. BV*,
　　587 F.3d 909 (9th Cir. 2009).......................................................46

*Atkins v. Union Pac. R. Co.*,
　　685 F.2d 1146 (9th Cir. 1982).....................................................19

*Balint v. Carson City*,
　　180 F.3d 1047 (9th Cir. 1999) (en banc) ....................................16

*Ballaris v. Wacker Siltronic Corp.*,
　　370 F.3d 901 (9th Cir. 2004).................................................48, 49

*Bell v. Wilmott Storage Servs., LLC*,
　　12 F.4th 1065 (9th Cir. 2021)..................................................6, 16

*BGJ Associates, LLC v. Wilson*,
　　7 Cal. Rptr. 3d 140 (Cal. Ct. App. 2003).............................27, 28

*Birney v. Birney*,
　　217 Cal. 353, 18 P.2d 672 (1933)...............................................52

*Brown v. New York Life Ins. Co.*,
　　152 F.2d 246 (9th Cir. 1945).......................................................55

v

*Brown v. New York Life Ins. Co.*,
    58 F. Supp. 252 (D. Or. 1944)....................................................................55

*Canatella v. California*,
    404 F.3d 1106 (9th Cir. 2005)...........................................................39, 47

*Cantrell v. City of Long Beach*,
    241 F.3d 674 (9th Cir. 2001)....................................................................34

*City of Long Beach v. Mansell*,
    476 P.2d 423 (Cal. 1970) .........................................................................54

*Claudine v. West*,
    241 P.2d 580 (Cal. Ct. App. 1952)...........................................................54

*Cline v. Festersen*,
    275 P.2d 149 (Cal. Ct. App. 1954)...........................................................54

*Cobb v. McDonald-Weist Logging Co.*,
    278 F. 165 (9th Cir. 1921)..................................................................54, 56

*Costco Wholesale Corp. v. Superior Ct.*,
    47 Cal. 4th 725, 219 P.3d 736 (2009)......................................................21

*Crown Point Dev., Inc. v. City of Sun Valley*,
    506 F.3d 851 (9th Cir. 2007)....................................................................48

*David Welch Co. v. Erskine & Tulley*,
    250 Cal. Rptr. 339 (Cal. Ct. App. 1988)...................................................26

*Depner v. Joseph Zukin Blouses*,
    56 P.2d 574 (Cal. Ct. App. 1936)............................................................37

*Di Benedetto v. Grell*,
    2004 WL 902458 (Cal. Ct. App. Apr. 28, 2004) ......................................53

*Doyle v. Oklahoma Bar Ass'n*,
    998 F.2d 1559 (10th Cir. 1993)...............................................................39

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986)..................................................................47

*Estate of Sanders*,
　40 Cal. 3d 607, 710 P.2d 232 (1985)............................................................53

*Fair v. Bakhtiari*,
　125 Cal. Rptr. 3d 765 (Cal. Ct. App. 2011)...........................................27, 28

*Feldman v. 1100 Park Lane Assocs.*,
　74 Cal. Rptr. 3d 1 (2008) ............................................................................30

*Fergus v. Songer*,
　59 Cal. Rptr. 3d 273 (Cal. Ct. App. 2007)...........................................19, 23

*Ferguson v. Yaspan*,
　183 Cal. Rptr. 3d 83 (Cal. Ct. App. 2014)...................................................23

*Flatt v. Superior Ct.*,
　885 P.2d 950 (Cal. 1994) ............................................................................18

*Fossen v. Blue Cross & Blue Shield of Montana, Inc.*,
　660 F.3d 1102 (9th Cir. 2011)....................................................................51

*Fountain v. Filson*,
　336 U.S. 681 (1949)....................................................................................59

*Gadda v. Ashcroft*,
　377 F.3d 934 (9th Cir. 2004)............................................... 38, 42, 43, 45

*GHK Assocs. v. Mayer Group, Inc.*,
　274 Cal. Rptr. 168 (Cal. Ct. App. 1990)....................................................55

*Green v. United States*,
　355 U.S. 184 (1957)....................................................................................41

*Hall v. City of Los Angeles*,
　697 F.3d 1059 (9th Cir. 2012)....................................................................50

*In re E.R. Fegert, Inc.*,
　887 F.2d 955 (9th Cir. 1989)......................................................................48

*In re Kirsh*,
　973 F.2d 1454 (9th Cir. 1992)............................................................24, 27

*In re Kramer*,
   282 F.3d 721 (9th Cir. 2002)..................................................41, 42, 43, 49

*In re North*,
   383 F.3d 871 (9th Cir. 2004).......................................................41

*In re Ruffalo*,
   390 U.S. 544 (1968)....................................................................39

*In re Yagman*,
   38 F.4th 25 (9th Cir. 2022)............................................38, 42, 48

*Kaepa, Inc. v. Achilles Corp.*,
   76 F.3d 624 (5th Cir. 1996).........................................................46

*Landgraf v. USI Film Prod.*,
   511 U.S. 244 (1994)....................................................................21

*Lee v. Hanley*,
   354 P.3d 334 (Cal. 2015) ...........................................................26

*Lucas v. Associacao Protectora Uniao Madeirense Do Estado Da California*,
   143 P.2d 53 (Cal. Ct. App. 1943) ...............................................58

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..............................................................34, 35

*Marshall v. Gates*,
   44 F.3d 722 (9th Cir. 1995).........................................................58

*McAdam v. State Nat'l Ins. Co.*,
   15 F. Supp. 3d 1009 (S.D. Cal. 2014) ........................................18

*Microsoft Corp. v. Motorola, Inc.*,
   696 F.3d 872 (9th Cir. 2012).......................................................46

*Microsoft Corp. v. Motorola, Inc.*,
   871 F. Supp. 2d 1089 (W.D. Wash. 2012)..................................46

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,
   457 U.S. 423 (1982)........................................................38, 39, 50

*Moore v. Way FM Media Group Inc.*,
2012 WL 13012658 (C.D. Cal. Mar. 29, 2012) ...........................................33

*National Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*,
210 F.3d 246 (4th Cir. 2000)........................................................................43

*Nickel v. Bank of Am. Nat. Tr. & Sav. Ass'n*,
290 F.3d 1134 (9th Cir. 2002)......................................................................55

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*,
210 F.3d 1099 (9th Cir. 2000)................................................................49, 58

*Noble v. Sears, Roebuck & Co.*,
109 Cal. Rptr. 269 (Cal. Ct. App. 1973)......................................................27

*Ramirez v. Am. Gen. Life Ins. Co.*,
2018 WL 300374 (Cal. Ct. App. Jan. 5, 2018) ............................................33

*Ramirez v. Sturdevant*,
26 Cal. Rptr. 2d 554 (Cal. Ct. App. 1994)...................................................26

*Republic Supply Co. of California v. Richfield Oil Co. of California*,
79 F.2d 375 (9th Cir. 1935)..........................................................................58

*Rosenthal v. Interstate Assur. Co.*,
2002 WL 1648509 (Cal. Ct. App. July 24, 2002) ........................................53

*Rubin v. Green*,
847 P.2d 1044 (Cal. 1993) ...........................................................................30

*Schauer v. Mandarin Gems of Cal., Inc.*,
23 Cal. Rptr. 3d 233 (Cal. Ct. App. 2005)............................................passim

*Sentience Studio LLC v. Sec. Ins. Co. of Hartford*,
231 Fed. Appx. 583 (9th Cir. 2007) .............................................................33

*Seven Arts Pictures, Inc. v. Jonesfilm*,
2008 WL 11335019 (C.D. Cal. Feb. 26, 2008)............................................58

*Shen v. Miller*,
150 Cal. Rptr. 3d 783 (Cal. Ct. App. 2012).................................................18

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006).......................................................30

*Stanley v. Richmond*,
    41 Cal. Rptr. 2d 768 (Cal. Ct. App. 1995)............................26, 27

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)..................................................................34

*Templeton v. Catlin Specialty Ins. Co.*,
    612 Fed. Appx. 940 (10th Cir. 2015) .......................................19

*Tenzer v. Superscope, Inc.*,
    702 P.2d 212 (Cal. 1985) .........................................................52

*Thompson v. Mahre*,
    110 F.3d 716 (9th Cir. 1997)....................................................18

*TransUnion LLC v. Ramirez*,
    141 S.Ct. 2190 (2021)..............................................................34

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
    692 F.3d 1009 (9th Cir. 2012)..................................................49

*Vai v. Bank of America*,
    364 P.2d 247 (1961).................................................................53

*Wilhelm v. Pray, Price, Williams & Russell*,
    231 Cal. Rptr. 355 (Cal. Ct. App. 1986)...................................27

*Williams v. City of St. Louis*,
    783 F.2d 114 (8th Cir. 1986).....................................................59

*Zenith Ins. Co. v. O'Connor*,
    55 Cal. Rptr. 3d 911 (Cal. Ct. App. 2007)................................19

**Statutes**

15 U.S.C. § 1119..............................................................................1

15 U.S.C. § 1121..............................................................................1

28 U.S.C. § 1291..............................................................................1

28 U.S.C. § 1331.................................................................... 1

28 U.S.C. § 1332.................................................................... 1

Cal. Civ. Code § 1689 ...........................................................33

Cal. Civ. Code § 1710 ...........................................................52

Cal. Civ. Code § 2223 .....................................................55, 57

Cal. Civ. Code § 2224 .....................................................55, 57

Cal. Corp. Code § 17153 ......................................................53

Cal. Corp. Code § 17704.09..................................................53

Cal. Evid. Code § 623 ...........................................................54

Cal. Prob. Code § 16004 ............................................22, 26, 28

**Other Authorities**

CACI 4106 ............................................................................26

Cal. R. Prof'l. Cond. 1.0........................................................27

Cal. R. Prof'l. Cond. 3-300.............................................passim

Tex. R. Disc. Prof. Cond. 1.08..............................................45

**Rules**

Fed. R. App. P. 4 ................................................................. 1

Fed. R. Civ. P. 16.................................................................29

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1332, and 15 U.S.C. §§ 1119, 1121(a). There was complete diversity of parties, and the amount in controversy exceeded $75,000. On March 13, 2023, the district court entered a final judgment that disposed of all parties' claims. 1-ER-22. On April 7, 2023, Roach timely filed post-trial motions covered by FED. R. APP. P. 4(a)(4)(A). 2-ER-140-83. On June 8, 2023, those motions were denied. 1-ER-2-21. Afterwards, on June 8, 2023, Roach timely filed a notice of appeal. 10-ER-1810-14. This Court has jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

1. Do genuine fact issues preclude summary judgment?

2. Does Cellars have standing to rescind a contract to which it is not a party?

3. Were the ethics rulings by the Texas disciplinary authorities and courts that exonerated Roach binding under this Court's precedent?

4. Should Roach's non-contract counterclaims have been dismissed based on a finding that the contract at issue was void?

# STATUTORY PROVISIONS

The text of the pertinent statutes are set forth in the Statutory Addendum.

## SUMMARY OF ARGUMENT

This lawsuit arose out of a promised ownership interest in RBS, a wildly successful, California cult wine. Frederick Schrader ("Fred")[1] induced Roach, a Texas attorney, to invest and partner with him to create RBS. By making false promises that Roach would receive a 50% ownership interest in RBS, Fred convinced Roach to invest the cash necessary to buy grapes from a prestigious Napa vineyard. Those grapes transformed Fred into perhaps Napa's most successful cult vintner.

For 15 years, Roach also provided free marketing, legal, and other services to Fred. Nevertheless, Fred secretly sold RBS as part of the sale of plaintiff, Schrader Cellars, LLC ("Cellars"), to Constellation Brands, Inc., leaving Roach with nothing. Roach sued Fred and Constellation in Texas for conversion and fraud. In that lawsuit, Roach eventually claimed an equitable ownership interest in Cellars itself, after Fred testified that he transferred Roach's investment to Cellars. That Texas litigation is ongoing.

Cellars admittedly filed this lawsuit in California in order to defeat Roach's Texas ownership claims.

---

[1] Roach refers to Fred Schrader as "Fred" to distinguish him from his ex-wife, Carol Schrader, and plaintiff Schrader Cellars, LLC. No disrespect is intended.

The district court resolved the ownership issues as a matter of law. Specifically, the court granted Cellars' motion for summary judgment, making the following rulings:

- A declaration that the claimed assets are the sole property of Cellars, including RBS.

- A declaration that Roach has no rights or title to the claimed assets, including RBS.

- The dismissal of all of Roach's counterclaims.

1-ER-104; 6-ER-1119 ¶46. Only one of Cellars' claims was tried to a jury: Roach's alleged breach of fiduciary duties. As to that claim, the district court instructed the jury that Roach was liable as a matter of law. Nevertheless, the jury found in favor of Roach on his affirmative defenses.

Roach asks this Court to reverse the summary judgment, nullify the declaratory judgment, and remand his counterclaims for trial. The parties tell flatly contradictory versions of the facts, with Fred claiming that Roach's investment was merely a loan and that Roach was merely a hired lawyer. The jury should have decided who was telling the truth.

That core dispute, however, never reached the jury because the district court's summary-judgment order found Cellars' ethics allegations to be a silver bullet. In short, the court held that Roach violated Rule 3-300 as a matter of law. Then, by invoking a rebuttable presumption under California law, the Court found an

automatic breach of fiduciary duty. As a result, Cellars was granted a unilateral right to void the RBS agreement. Cellars was allowed to keep Roach's share of RBS, and there was no adjudication of Roach's promised ownership rights or Cellars' misconduct.

At the most basic level, the district court's ethics-based, summary-judgment order erroneously decided disputed material fact issues, starting with whether Roach even represented Cellars at the relevant time to trigger the application of Rule 3-300 in the first place. The existence of an attorney-client relationship is a matter of intent and is inherently fact-intensive. California's *rebuttable* presumption presents an even more fact-intensive issue, as the trial court must determine (i) whether the RBS agreement was unfair and (ii) whether Roach exercised undue influence. The summary-judgment evidence proved that the promised ownership in RBS was Fred's idea and that Fred pursued Roach's cash investment. There was more than enough disputed evidence for a trial, especially when construing the evidence in favor of the non-movant.

The summary judgment should also be reversed for a more fundamental reason. Under California law, a non-party to a contract does not have standing to rescind the contract. Here, the RBS agreement was between Fred and Roach, so Cellars had no standing to rescind it, as the district court ordered.

More disturbing, Cellars prevailed on the exact same ethics allegations that its own lawyers previously lost in Texas disciplinary proceedings and in Texas civil courts. This Court's jurisprudence gives "great deference" to state disciplinary proceedings and requires a specific evidentiary showing to disregard those decisions. Cellars did not attempt to make that showing. Thus, the Texas ethics decisions should have been controlling. By not following this Court's precedent, the district court's order resulted in inconsistent decisions on ethics charges, the most serious accusations that an attorney can face.

In addition, the summary judgment order made a straightforward logical error. By definition, non-contract claims do not depend on a contract. Yet the district court dismissed all of Roach's non-contract counterclaims based on its holding that the RBS agreement was voidable. The district court subsequently justified its perplexing ruling by wrongfully charging Roach with waiver, even though Roach had explicitly noted that precise "disconnect" in his summary-judgment opposition.

While the legal issues are multifaceted, the core dispute concerns the straightforward misappropriation of partnership property by one partner from the other. Roach's major claim — that Cellars participated in Fred's fraud to deprive Roach of promised ownership rights — should have been tried to a jury.

## STATEMENT OF THE CASE

Because Roach is challenging a partial summary judgment, Roach presents the following facts, "viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1068 (9th Cir. 2021).

### A. Cellars filed this lawsuit in retaliation for Roach's Texas lawsuit regarding the RBS wine.

This lawsuit arises out of litigation pending in Texas. *See* Verdict, 2-ER-184-85, Question 4. On September 4, 2018, Roach sued Fred in Texas, asserting that Fred misappropriated Roach's 50% ownership of RBS — a successful Cabernet Sauvignon that they jointly created. 4-ER-668-70 ¶¶7-11, 4-ER-691 ¶63; 9-ER-1679-80; 5-ER-827-28. On April 22, 2019, Roach sued Constellation. 4-ER-691 ¶63.

In his Texas lawsuit, Roach asserted that he had "equitable ownership interests" in Cellars arising out of Fred's misappropriation of Roach's RBS investment for Cellars' use and the deliberate commingling of assets. *See* 6-ER-1188-1267 ¶¶23, 31-33, 49-56, 59, 104-05, 156-57. Although not a party to the Texas lawsuit, Cellars felt threatened by Roach's ownership claims. *See* 6-ER-1109-10 ¶¶12-14; 4-ER-591. Constellation tried to force Roach to sue Cellars and filed a motion to abate. 4-ER-693 ¶5. The Texas court denied that motion but invited Cellars to intervene. *See* 6-ER-1274.

Instead of intervening, Cellars responded by filing this lawsuit. 6-ER-1137-38 ¶¶13-15. Cellars freely admitted that the purpose of its lawsuit was to "nullify[]" Roach's ownership claims in Texas. 4-ER-591. Not surprisingly, the jury found that Cellars sued Roach to "punish" him for the Texas lawsuit — as Cellars itself had described the jury question. *See* 2-ER-184-85, Question 4; 13-ER-2449.

In response to the Texas litigation, Fred filed ethics charges in Texas against Roach, who is a Texas lawyer. *See* 9-ER-1511-1601; 7-ER-1277-1391 & 8-ER-1393-1508. The grievances included the same allegation at the heart of the summary judgment order. *See*, *e.g.*, 9-ER-1516-17. The Texas disciplinary authorities exonerated Roach. 6-ER-1269; 6-ER-1133. They ruled that Fred's grievances did not "demonstrate misconduct on the part of the lawyer." 6-ER-1269. Fred also filed an unsuccessful motion in the Texas litigation to disqualify Roach Newton, LLC on the basis of the same ethics allegation. 9-ER-1581-1601. Fred then appealed the denial of his disqualification motion, and lost that too. 9-ER-1603-65; 6-ER-1271-72.

## B. Fred solicited Roach's investment and partnership in the RBS wine.

RBS was created approximately 15 years ago. By promises of an ownership interest, Fred induced his close friend, Roach, to partner with him in the RBS project by investing cash and providing services. 4-ER-671 ¶15. The RBS project was completely Fred's idea. *See* 4-ER-668-69 ¶¶6-8. Roach was the sole financial

investor in RBS. 4-ER-669 ¶¶8-9. Neither Roach nor Fred could have predicted the success that would follow Roach's investment. 5-ER-827-28. At that time, Fred was two years into his own new wine, "Schrader," and was struggling financially. *See* 4-ER-733-36; 4-ER-668 ¶6. Fred's first vintages had performed poorly. *See* 4-ER-735-36. Roach's investment was partially used to obtain prestigious Beckstoffer To Kalon Clone 337 grapes, which was the basis for Fred's subsequent success. *See* 4-ER-737-39; 4-ER-668-70 ¶¶7, 10; 6-ER-1108-09 ¶¶9-10.

Before RBS, Fred had solicited Roach's investment for a different project, a Sonoma pinot noir called Aston. 4-ER-668 ¶6. Roach agreed to invest in Aston in exchange for an ownership interest, but later volunteered to withdraw when another investor asked to be the sole investor and co-owner. *Id.* Fred's solicitation of Roach's Aston investment became the model for Fred's solicitation of the RBS investment. *See* 4-ER-669 ¶8. Specifically, Fred asked Roach to invest and partner in RBS. 4-ER-668 ¶7. Roach "agreed to invest all the capital to obtain [the Beckstoffer] grapes … in exchange for an equal equity interest in the wine …." 4-ER-669 ¶8. For regulatory and administrative purposes, Fred and Roach agreed that Cellars "would make and sell the wine for our separate RBS business under a verbal license agreement." 4-ER-670 ¶11; *see generally* 4-ER-676 ¶25. The district court concluded that the RBS wine "was to be separate from Cellars." 1-ER-78.

**C.  To induce Roach to invest and partner in RBS, Fred made false representations and promises with no intention of completing them.**

To induce Roach's cash investment, Fred promised Roach that he "was making an equity investment and obtaining an equity ownership and partnership interest in the RBS wine business…. Fred said frequently that RBS was a separately owned business, distinct from Schrader Cellars."  4-ER-671 ¶15.  Roach described his investment as a "capital contribution" that was intended for the "Schrader RBS cab."  10-ER-1806.

Instead of using Roach's money exclusively for RBS, as promised, Fred secretly used Roach's money for all of his Cellars wines.  4-ER-788-91; 4-ER-719; *see also* 5-ER-854-55 (admitting that Fred used Roach's investment money for "my wine production").  Thus, Fred's promises were false at the time they were made. From this, it can reasonably be inferred that Fred never intended to recognize Roach's promised ownership and partnership rights.

Fred now asserts that Roach's cash investment was a loan.  *See* 5-ER-854-55. But the summary-judgment evidence contradicted that assertion.  4-ER-671 ¶16; 4-ER-758-59.  Cellars' own accounting records referred to Roach's contribution as an "investment" and the RBS project as a "joint venture."  10-ER-1742-44; 4-ER-755-56; *see also* 10-ER-1809.  Fred's claimed intention to treat Roach's investment as a

loan confirms that Fred never intended to recognize Roach's promised ownership and partnership rights in RBS.  *See* 4-ER-788-91.

### D.    RBS, LLC was created to formalize Fred's RBS promises.

A limited liability company was formed to formalize Roach's promised ownership interest:  Roach Brown Schrader, LLC ("RBS, LLC").  Roach testified that "RBS, LLC was designed to provide official, concrete proof of our partnership agreement."  4-ER-782.  Even though Roach's counterclaims were not at issue in the trial, the California jury asked the key question:  "Was there a registered LLC or Inc. for RBS exclusively?"  12-ER-2252.  The judge responded that she could not answer that question.  12-ER-2254-55.

To create RBS, LLC, Roach hired Fred's law firm, Farella Braun + Martel.  4-ER-677 ¶26.  Farella cleared conflicts with Fred.  *Id.*  Farella prepared, signed, and filed the paperwork to create RBS, LLC.  10-ER-1803.  Farella also prepared a draft of the RBS operating agreement.  10-ER-1779-96.  Fred, however, refused to sign the draft operating agreement even though the RBS, LLC was filed.  4-ER-672-77 ¶¶18, 20, 26.

### E.    Fred and Cellars made continuous representations of Roach's ownership of the RBS wine to induce 15 years of work from Roach.

For 15 years, Roach provided services to the RBS partnership, primarily wine marketing.  4-ER-679-86 ¶¶35, 39-49.  To induce Roach to provide these services, Fred and Cellars continuously led Roach to believe that he was a partner and owner

10

of RBS.  4-ER-681 ¶36.  For example, Schrader's mailing brochure for its 2001 vintage indicated that RBS was made "with Randy Roach," and identified Roach as one of "three partners" in RBS.  10-ER-1775.  Fred put Roach's name on the RBS cork.  10-ER-1777.  Fred and Cellars created a business card for Randy identifying him as "Vintner" of RBS.  10-ER-1770; 4-ER-751-54.  Fred described Roach in writing as "a wine partner of mine" and "MY WINE PARTNER."  10-ER-1737; 10-ER-1733.  Fred always called Roach "Vintner Roach" and "Partner Roach."  4-ER-743-45; 4-ER-747-48; 4-ER-681 ¶36; *see also* 4-ER-673-76 ¶¶19, 23.  Cellars' management described RBS to Roach as "YOUR" wine.  10-ER-1740; *see also* 10-ER-1725 ("YOU GOT 99").  In a draft press release, Fred said that the RBS trademark belonged to Roach.  10-ER-1730.  Cellars told its trademark lawyers that Roach had a "vested interest" in Cellars' trademarks disputes.  10-ER-1749-50.

A Cellars partner, Carole Boehk, confirmed in writing that Cellars did not even own the RBS project and that it belonged "only" to Fred and Roach — and that Cellars merely provided services to the project:  "To further clarify, Randy is not a partner in Schrader Cellars, LLC.  Mr. Schrader's project of the Schrader RBS Cabernet is between Fred and Randy only.  Schrader Cellars produces and sells the wines for the project."  10-ER-1752.[2]

---

[2] Even though Cellars' own documents recognized Roach's major role in the RBS project, Cellars' pleadings claimed that Roach had absolutely no "association," "connect[ion]," "affiliat[ion]" or "relat[ion]" with Cellars or RBS.  *See* 6-ER-1106-

One of the markers of Roach's ownership was that Fred annually provided Roach with 15 cases (later 17 cases) of RBS "library wine." 4-ER-669 ¶9. Fred represented to Roach that "in the Napa wine world, library wine traditionally came at no expense to the owner and vintner of a wine …." 4-ER-686-87 ¶51. While Fred now contends that this wine constituted payment for legal fees, the summary-judgment evidence squarely contradicted that assertion. 4-ER-686-87 ¶51.

## F. Roach provided limited legal advice to Fred that, with only one exception, occurred after the RBS agreement.

Roach also provided legal services to Fred. 4-ER-678-84 ¶¶30, 39-42. Roach described these services as "the same kind of brief legal work that I would routinely perform free of charge for others and that is so extremely limited in its scope that it only requires a relatively few hours of my time and does not require a written fee agreement." 4-ER-683-84 ¶42. Fred was the intended client of the agreement to provide these legal services. 4-ER-682-84 ¶¶39-42; 5-ER-893-94.

The RBS agreement was created in 2001. *See* 10-ER-1809 (memo dated October 17, 2001 confirming Roach's participation in RBS); 10-ER-1742. Before the 2001 RBS agreement, Roach had provided this limited legal advice to Fred

_____

31 ¶¶12, 24, 67, 68, 88. In addition to using these "no association" allegations to support its own claims, Cellars also used them to attack Roach's ownership claims – the critical issue in the case. *See* 6-ER-1109 ¶12. To ensure that these falsehoods did not influence either the public's or the district court's perception of Roach's ownership claims, Roach took the unusual step of seeking sanctions. *See* Dkt. 65.

regarding a divorce. 4-ER-667-68 ¶5; 4-ER-682-83 ¶41. This occurred around 1997-98. *See* 4-ER-667-68 ¶5. This was the only legal work that occurred before the 2001 RBS agreement. *See* 5-ER-936-37 (Interrogatory #9, listing Roach's legal work). This limited consulting required less than three hours of Roach's time, and it began and ended in less than three days. 4-ER-667-68 ¶5.

Importantly, Roach did not represent Cellars at the time of the 2001 RBS agreement. 5-ER-893-94; 5-ER-912-13. There are no written engagement agreements between Cellars and Roach, and Cellars never paid attorneys' fees to Roach in 2001 or at any time. 5-ER-910-11.

Pursuant to the agreement between Roach and Fred, Roach subsequently provided discrete legal services to Cellars regarding two lawsuits, the Mondavi litigation and the Schrader Vineyards matter. *See* 4-ER-667-68 ¶5 & 4-ER-682-83 ¶¶40-41. Roach's participation in the Mondavi litigation occurred in 2003, long after the 2001 RBS agreement. 4-ER-667-68 ¶5. Roach testified that "Fred asked me to provide high level dispute-resolution oriented assistance in that trademark matter." *Id*. On January 27, 2003, Roach submitted a pro hac vice application in the Mondavi litigation. *See* 10-ER-1764. It was not granted until July 28, 2003. 10-ER-1768. The case was dismissed two weeks later. *Id*. The Schrader Vineyards matter occurred in 2009. 4-ER-667-68 ¶5. In that matter, Roach again provided "similar, sporadic high-level dispute resolution advice." *Id*.

### G. Fred deprived Roach of his promised ownership share of RBS by secretly selling it to Constellation.

On June 16, 2017, Fred sold Cellars to a subsidiary of Constellation. 4-ER-676 ¶24. The negotiations were kept secret from Roach, even though Fred had long before promised to tell Roach of any opportunities to sell RBS. 4-ER-690-91 ¶62. Roach initially believed that the sale of Cellars to Constellation did not include RBS because Fred had always assured Roach that RBS was separate from Cellars. *See* 4-ER-676 ¶24. Roach later learned that the sale included RBS. *Id.*

### H. Procedural History.

At the time of the summary judgment order, Cellars asserted claims for (i) declaratory relief, (ii) unjust enrichment, and (iii) breach of fiduciary duties. 1-ER-90-91. Cellars subsequently dismissed its claims for unjust enrichment. *See* 3-ER-424.

Roach asserted six counterclaims: (i) trademark cancellation (for RBS); (ii) trademark cancellation (for RBS and other trademarks); (iii) declaratory judgment that Roach possesses ownership rights in RBS and Cellars; (iv) declaratory judgment that Cellars is equitably estopped from denying Roach's ownership in RBS; (v) declaratory judgment that Cellars is equitably estopped from denying Roach's ownership in Cellars; (vi) equitable accounting. 5-ER-1012-33. Roach did not assert counterclaims for any damages. *See generally id.*

The district court issued two summary-judgment orders. The first granted Cellars' declaratory-judgment claim and dismissed Roach's counts three, four, five, and six. *See* 1-ER-104. The district court subsequently granted leave for Roach to file a motion for reconsideration. *See* 4-ER-512-33; 3-ER-510. Roach filed his motion for reconsideration. 3-ER-478-509. It was denied. 1-ER-65-74. The district court subsequently issued its second summary-judgment order, dismissing Roach's claims for trademark cancellation (counts one and two). *See* 3-ER-422-27.

The case proceeded to trial solely on Cellars' claim for breach of fiduciary duty. *See* 1-ER-26; 1-ER-50. Immediately before trial, the district court tentatively concluded that Roach's defenses under the *Noerr-Pennington* doctrine and the litigation privilege were dispositive of that claim as a matter of law. *See* 1-ER-60-61; *see also* 2-ER-254-55 (emphasizing that the litigation privilege prohibited Cellars' damages theory). After considerable briefing and argument, however, the district court submitted those defenses to the jury. *See* 3-ER-354-57; 1-ER-62; 2-ER-208-248.

After approximately four and a half hours of deliberations, the jury returned a verdict, finding in favor of Roach's privilege defenses: "Do you find that the gravamen — or heart — of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas lawsuit? [Answer:] Yes." 2-ER-

184-85, Question 4.  The district court issued a final judgment based on the verdict and the court's prior summary judgment orders.  1-ER-22.

## STANDARD OF REVIEW & ROADMAP FOR DISPOSITION

Roach seeks reversal of the district court's summary judgment and remand of his counterclaims for trial.  This Court reviews an order granting summary judgment *de novo*, "viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor."  *Bell*, 12 F.4th at 1068.  "This court does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial."  *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) (en banc).

A reversal on any of Roach's four major issues, below, should result in overturning the declaratory judgment entered in Cellars' favor and a reinstatement of all four of Roach's ownership counterclaims:

- **Count Three:**  seeking a declaratory judgment that Roach possesses ownership rights in RBS and Cellars.

- **Count Four:**  seeking a declaratory judgment that Cellars is equitably estopped from denying Roach's ownership in RBS.

- **Count Five:**  seeking a declaratory judgment that Cellars is equitably estopped from denying Roach's ownership in Cellars.

- **Count Six:**  seeking an equitable accounting.

5-ER-1018-33.

This is because every ruling in the summary-judgment order was ultimately based on the ethics allegations against Roach. *See generally* 1-ER-75-107. Specifically, the district court ruled that Roach's alleged violation of Rule 3-300 gave Cellars the unilateral right to void the RBS agreement, which, in turn, justified both (i) granting Cellars' declaratory-judgment claim and (ii) dismissing all four of Roach's ownership counterclaims: "Given that the alleged partnership agreement is not enforceable, Cellars prevails on its claim for declaratory relief, and Roach cannot prevail on his claims for declaratory relief and equitable accounting, as they are all based on the existence of an enforceable partnership agreement." 1-ER-104.

## ARGUMENT

I. **The district court's summary-judgment ruling disregarded genuine issues of disputed facts as well as the district court's own finding that RBS was separate from Cellars.**

Cellars' ethics allegations became the silver bullet by which the district court granted summary judgment, dismissed all of Roach's claims, and narrowed the case for a quick trial. *See* 1-ER-104. The district court, however, erroneously resolved three fact-intensive issues in finding ethics violations as a matter of law:

- Whether an attorney-client relationship existed between Roach and Cellars at the relevant time.

- Whether the RBS agreement was fair, including whether Roach exercised "undue influence."

- Whether Roach violated his fiduciary duties.

Under this Court's precedent, "[w]here there is a genuine issue, trial rather than summary judgment is the means of determining what is true." *See Thompson v. Mahre*, 110 F.3d 716, 719 (9th Cir. 1997). Although all aspects of a summary judgment ruling are reviewed *de novo*, the court's findings of ethical misconduct as a matter of law are improper if fact issues exist.

The district court also made a pure legal error by disregarding the effect of its own factfinding. Specifically, it was "undisputed" that the parties intended RBS "to be separate from Cellars." 1-ER-78. This is dispositive because, at all relevant times, Roach only claimed an ownership interest in the "separate" RBS wine, not in Cellars itself. Roach claimed an interest in Cellars for the first time only after litigation commenced in Texas. At that late date, Roach had no obligation to comply with Rule 3-300.

### A. Roach raised genuine, disputed fact issues as to whether an attorney-client relationship existed between Roach and Cellars at the creation of the RBS agreement.

The California Supreme Court has described the formation of an attorney-client relationship as a question of fact. *See Flatt v. Superior Ct.*, 885 P.2d 950, 953 (1994); *see also Shen v. Miller*, 150 Cal. Rptr. 3d 783, 789 (Cal. Ct. App. 2012) (citing *Flatt*). Federal courts agree. *See*, *e.g.*, *McAdam v. State Nat'l Ins. Co.*, 15 F. Supp. 3d 1009, 1013 (S.D. Cal. 2014) ("The question of whether an attorney-client relationship existed between two persons at a particular time is a question of fact.").

This makes sense because "it is the intent and conduct of the parties that controls the question as to whether an attorney-client relationship has been created." *Zenith Ins. Co. v. O'Connor*, 55 Cal. Rptr. 3d 911, 920 (Cal. Ct. App. 2007). Evidence of intent is required. *See Templeton v. Catlin Specialty Ins. Co.*, 612 Fed. Appx. 940, 965 (10th Cir. 2015) (applying California law). Summary judgment cannot be based on a question of intent. *See Atkins v. Union Pac. R. Co.*, 685 F.2d 1146, 1149 (9th Cir. 1982).

It is undisputed that Roach did not represent Cellars at the time Roach and Fred entered into the RBS agreement in 2001. *See* 5-ER-893-94. At that time, Roach had not yet performed any legal work for Cellars. 5-ER-912-13. That should have been enough to deny summary judgment. The district court, however, adopted the rule that attorneys must repeatedly comply with Rule 3-300 every time that parties modify an agreement, even for non-material, slight changes. *See* 1-ER-99. This Court should reject that proposed rule, which would set a future trap for attorneys. The district court cited a case for this proposition that did not make the asserted holding. *See Fergus v. Songer*, 59 Cal. Rptr. 3d 273, 288 (Cal. Ct. App. 2007). First, *Fergus* declined to rule on Rule 3-300. *Id*. at 288 n.6. Second, *Fergus* addressed a major "novation" of the attorney-client relationship that created a completely new and different contract. *Id*. at 279, 288.

Even if this Court looks at the subsequent time periods, there are disputed fact issues. Most importantly, the parties intended Fred — not Cellars — to be Roach's client. 4-ER-682-84 ¶¶39-42 (testimony from Roach); 5-ER-893-94 (testimony from Fred). Roach identified a list of law-related activities he undertook for Fred, and the vast majority related to Fred's personal matters. *See* 5-ER-936-37 (Interrogatory #9). The litigation matters that involved Cellars were the Mondavi litigation and Schrader Vineyards dispute. *See id.* But as Fred and Carol Schrader implicitly admitted, even these two matters constituted work that Roach did for Fred. *See* 5-ER-902; 5-ER-845.

In the Mondavi litigation, Roach submitted a pro hac vice application that was not granted until July 28, 2003. 10-ER-1768. The case was dismissed two weeks later. *Id.* The Schrader Vineyards matter occurred in 2009. 4-ER-667-68 ¶5. Both occurred after the creation of the 2001 RBS agreement.

Roach also provided legal services over short periods of time — routinely requiring only a "few hours." 4-ER-683-84 ¶42. Further, there are no written engagement agreements between Roach and Cellars, and Cellars never paid Roach any attorneys' fees. 5-ER-910-11; *see also* 4-ER-683-84 ¶42; 4-ER-686-87 ¶51. Thus, any attorney-client relationship between Roach and Cellars at any specific point in time would need to be implied. In addition, Roach often provided mere business advice. *See* 4-ER-685 ¶46; 5-ER-824-25. Providing business advice does

not create an attorney-client relationship. *See Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 735, 219 P.3d 736, 743 (2009). Fred could not even recall the legal work that Roach had performed. 5-ER-901. Similarly, Cellars' corporate representative was aware of only Roach's work on the Mondavi litigation. 5-ER-914.

Alternatively, the district court held that the RBS agreement itself triggered Rule 3-300, regardless of whether Roach represented Cellars at the relevant time. 1-ER-101-02. But that analysis disregards that Fred was the intended recipient of the agreement to provide legal services — not Cellars. 4-ER-682-84 ¶¶39-42; 4-ER-893-94. Cellars may have **subsequently** received incidental legal services pursuant to the RBS agreement. But that future event did not retroactively trigger the application of Rule 3-300 between Roach and Cellars. *Cf. Landgraf v. USI Film Prod.*, 511 U.S. 244, 280 (1994) (explaining that a statute has a disfavored retroactive effect when it would "impose new duties with respect to transactions already completed").

Importantly, Fred and Cellars had a long history of retaining attorneys other than Roach. *See* 5-ER-894-95 (hiring an attorney for the formation of Cellars); 5-ER-895-97 (hiring Lola Ellwein); 10-ER-1756-60 (hiring Farella Braun + Martel); 5-ER-896-98 (same); 10-ER-1762 (hiring Shartsis Friese to represent Cellars in the Mondavi litigation); 10-ER-1746 (hiring two law firms to represent Cellars in the

Schrader Vineyards matter); 5-ER-904 (hiring Pillsbury in connection with Cellars' acquisition by Constellation).

Given the above evidence, there was no basis to conclude, as a matter of law, that an attorney-client relationship existed between Roach and Cellars at the relevant time to trigger the application of Rule 3-300 as to Cellars.

## B. Roach raised genuine, disputed fact issues regarding whether he rebutted California's rebuttable presumption of unfairness and undue influence.

The second fact issue concerned the rebuttable presumption of (i) unfairness and (ii) undue influence that was borrowed from the California Probate Code. *See* CAL. PROB. CODE § 16004(c). As the district court recognized, "Rule 3-300 does not itself provide a basis for civil liability." 1-ER-96. Section 16004, however, can create "a rebuttable presumption that the transaction is the product of undue influence by the attorney." *Id*. This was the pivotal issue in the summary-judgment order. By invoking Section 16004, the district court (1) granted Cellars a unilateral option to void the RBS agreement and (2) found a breach of fiduciary duty as a matter of law. 1-ER-96; 1-ER-104; 1-ER-50; 1-ER-19-20.

The district court erroneously found that Roach made no effort to rebut the presumption of unfairness. 1-ER-104. To the contrary, Roach expressly argued fairness. *See* 4-ER-659-60; 4-ER-552-53. Moreover, the basic facts of the case demonstrated fairness: Fred initiated RBS, solicited a cash investment from Roach,

and controlled the terms of the resulting RBS agreement. 4-ER-666-78 ¶¶6-9, 15-19, 26, 30. This is the opposite of Roach having "undue influence." *See Fergus*, 59 Cal. Rptr. 3d at 291-92 (finding no undue influence when the non-attorney client induced a cash investment from the attorney's wife).

The RBS project was Fred's idea. *See* 4-ER-668-69 ¶¶6-8. Under California law, that is a critical fact pointing to fairness. *See Ferguson v. Yaspan*, 183 Cal. Rptr. 3d 83, 92 (Cal. Ct. App. 2014) (finding no unfairness when the key provision in the contract was the client's idea). Fred had previously solicited Roach's investment in the Aston pinot noir project in exchange for an equity interest. 4-ER-668 ¶6. "Fred openly acknowledged that he needed cash …." *Id*. With that Aston solicitation as a model, Fred subsequently asked Roach to invest and partner in RBS. 4-ER-668-69 ¶¶7-8. A former Cellars partner confirmed that (1) Fred was short of cash and (2) Roach was the sole supplier of cash for RBS. 4-ER-733-36; 4-ER-739.

The relevant time period to evaluate fairness is the time of the contract. *See Ferguson*, 183 Cal. Rptr. 3d at 92-93. Cellars had been unsuccessful at the time that Roach took a "gamble" on Fred. 5-ER-827-28. Before Roach's investment, Cellars' wines had performed poorly. *See* 4-ER-735-36. Roach's investment was used to obtain the prestigious Beckstoffer grapes, which was the basis for Cellars' subsequent success. *See* 4-ER-737-39; 4-ER-668-70 ¶¶7, 10; 6-ER-1108-09 ¶¶9-10. Roach's investment was thus directly tied to Fred's turnaround and later

extraordinary success. Roach summarized all the benefits that Fred obtained from the partnership. 4-ER-685-86 ¶48. Fred was so pleased that he hosted a New Years Eve celebration of the RBS partnership. *See* 5-ER-740-42; 4-ER-670 ¶12.

Fred had pursued Roach's cash investment so intently that he made false representations to induce Roach to enter into the RBS agreement:

> Fred had told me that I was making an equity investment and obtaining an equity ownership and partnership interest in the RBS wine business. Specifically, Fred said frequently that RBS was a separately owned business, distinct from Schrader Cellars…. When Fred made these statements, he intended that I provide my initial financial investment and additional services to him and his companies.

4-ER-671 ¶15; *see also* 4-ER-666-91 ¶¶17, 29, 48; *cf.* 4-ER-666-91 ¶¶11, 19, 21, 36, 53. These misrepresentations were the basis for Roach's own fraud-based claims, which Roach described in his Opposition. *See* 4-ER-654. In short, "This is not a case where a faithless attorney has taken advantage of his client. Quite the reverse." *In re Kirsh*, 973 F.2d 1454, 1461 (9th Cir. 1992).

As to the fairness of not having a written operating agreement, the district court concluded that Fred "required" Roach to operate without a written agreement. 1-ER-78. That is how Fred usually operated. 4-ER-757. Roach had requested a written partnership agreement. *See* 4-ER-672 ¶18. "Fred refused and said he preferred doing business by oral/handshake agreements." *Id.* Fred wanted a partnership "built on complete trust." *Id.*

24

As to Fred's knowledge, it was Fred who dictated the terms of the RBS agreement. *See* 4-ER-671-77 ¶¶15-19, 26; *cf. id.* ¶22 ("I placed my full trust and confidence in Fred and his stewardship of RBS. In fact, Fred had also always demanded my complete trust."). Roach "agreed that Fred would have the day-to-day exclusive operational control of the wine production, marketing, and sales." 4-ER-678 ¶30. In fact, Fred sought out Texas investors because he believed that they would "permit him more freedom in the day-to-day management of his projects." 4-ER-668 ¶6. Afterwards, Fred continued to exert control over Roach's marketing activities. *See*, *e.g.*, 4-ER-681 ¶37 (directing Roach to cancel an RBS promotional event).

Roach also submitted the findings of the Texas disciplinary rulings, which provided conclusive evidence of fairness. 6-ER-1269; 6-ER-1133. As will be discussed more fully below, the Texas authorities fully exonerated Roach on the same charges and specifically found that Fred did not "demonstrate misconduct on the part of the lawyer." 6-ER-1269.

Roach also willingly agreed to have Fred's own law firm draft the RBS, LLC agreement that was filed and the operating partnership agreement that Fred refused to sign. *See* 4-ER-677 ¶¶26-27. As Roach testified, "Fred had told me that he wanted me to use his firm, Farella, to put together the RBS, LLC papers even though

he wanted me to pay them." 4-ER-677 ¶26. Importantly, Farella opined that the deal favored Fred: "Fred has the upper hand once again." 10-ER-1799.

All of this evidence raised a fact issue as to whether Roach met his burden of proof under Section 16004: "Where, as here, the trustee/attorney produces evidence that the transaction was conducted at arm's length with an intelligent, experienced and sophisticated client, the trial court is entitled to conclude that the burden of proof has been met." *Ramirez v. Sturdevant*, 26 Cal. Rptr. 2d 554, 561 (Cal. Ct. App. 1994).

### C. Roach raised genuine, disputed fact issues regarding whether Roach breached his fiduciary duties.

Under California law, whether a party breached his fiduciary duties is inherently a fact issue for the jury. *See David Welch Co. v. Erskine & Tulley*, 250 Cal. Rptr. 339, 342 (Cal. Ct. App. 1988), *disapproved on other grounds by Lee v. Hanley*, 354 P.3d 334, 344 (2015); *Stanley v. Richmond*, 41 Cal. Rptr. 2d 768, 776 (Cal. Ct. App. 1995) (citing *Welch*). The California model jury instructions direct the jury to determine whether a defendant attorney "breached the duty of an attorney." *See* CACI 4106. In contrast, based on its Rule 3-300 ruling, the district court instructed the jury that "Roach breached his fiduciary duty to Cellars." 1-ER-50; *see generally* 1-ER-75-107; 1-ER-63-64.

That holding should be reversed. Converting a previously rejected ethics violation into an automatic breach of fiduciary duty, without a trial, is contrary to

this Court's precedent: "The Rules of Professional Conduct do not establish substantive legal duties — they neither create, augment nor diminish any duties…. While the rules can be evidence of a breach of fiduciary duty, they do not, standing alone, prove the breach." *Kirsh*, 973 F.2d at 1461. Moreover, *Kirsh* made that ruling in the context of the predecessor to Rule 3-300. *Id.* *Kirsh* is thus on point and directly contrary to the district court's finding of an automatic breach of fiduciary duty.

*Kirsh* correctly stated California law. The ethics rules themselves indicate that they are not "intended to enlarge or to restrict the law regarding the liability of lawyers to others." Rule of Professional Conduct 1.0(b)(3). California courts have consistently held that a violation of the ethics rules does not automatically amount to a breach of fiduciary duty. *See Noble v. Sears, Roebuck & Co.*, 109 Cal. Rptr. 269, 271-72 (Cal. Ct. App. 1973); *Wilhelm v. Pray, Price, Williams & Russell*, 231 Cal. Rptr. 355, 359 n.5 (Cal. Ct. App. 1986); *Stanley*, 41 Cal. Rptr. 2d at 783.

Rejecting such authorities, the district court relied on two intermediate California opinions in making its summary-judgment finding of a breach of fiduciary duty. *See BGJ Associates, LLC v. Wilson*, 7 Cal. Rptr. 3d 140, 146-49 (Cal. Ct. App. 2003); *Fair v. Bakhtiari*, 125 Cal. Rptr. 3d 765, 777-81 (Cal. Ct. App. 2011). In both cases, however, the courts found a breach of fiduciary duty only after long trials addressing the rebuttable presumption. *See BGJ Associates*, 7 Cal. Rptr. 3d at 146

(eight-day bench trial about Rule 3-300 and Section 16004); *Fair*, 125 Cal. Rptr. 3d at 773 (three-week bench trial from which the trial court based its rulings on Rule 3-300 and Section 16004). Neither opinion supports granting summary judgment. To the contrary, *BGJ Associates* confirmed that "A violation of the Rules of Professional Conduct … does not in itself provide a basis for civil liability." *BGJ Associates*, 7 Cal. Rptr. 3d at 147.

Importantly, the district court's breach-of-fiduciary-duty holding was not mooted by the jury's rejection of Cellars' fiduciary-duty claim. As the district court subsequently explained, the summary-judgment order was based on the finding of a breach of fiduciary duty. *See* 1-ER-19-20.

### D. Cellars cannot properly invoke Rule 3-300 because, at the relevant time, Roach only claimed an interest in the RBS wine, which the district court found to be separate from Cellars.

There is an independent legal reason that Rule 3-300 does not apply: Roach did not claim an interest in Cellars for the first time until long after the attorney-client relationship had ended. Specifically, Roach ceased performing legal services for Cellars in 2016. 6-ER-1128 ¶96; 5-ER-905-06; 5-ER-917-19. In contrast, according to Cellars, Roach first claimed an ownership interest in Cellars in the Texas litigation, when Roach filed his Fifth Amended Petition in January 2021. *See* 4-ER-713; 6-ER-1188-1267. In short, Roach's ownership claims arose only after the discovery of Fred's tortious conduct. 4-ER-788-91. Roach learned for the first

time in the Texas litigation that Cellars had misappropriated Roach's RBS investment for itself. *See* 4-ER-788-91. Roach thus never entered into a business transaction with Cellars to acquire an ownership interest in Cellars that would trigger Rule 3-300.

The summary-judgment evidence further proved that Cellars was not a party to the RBS agreement. 4-ER-669-70 ¶¶8-11. Roach did not personally enter into any business transaction with Cellars — a pre-requisite for application of Rule 3-300. *See* 4-ER-676 ¶25 ("During my relationship with Fred, I did not enter into any agreement with Schrader Cellars, LLC.").

Importantly, the district court found that the RBS wine was to be separate from Cellars. 1-ER-78. This provides critical support for this point because Roach has historically claimed an ownership interest only in the RBS wine. *See* 10-ER-1806. Because Rule 3-300 does not apply to Roach's relationship with Cellars at all, the summary judgment should be reversed.

### E. This Court should render judgment dismissing Cellars' declaratory-judgment claim under the *Noerr-Pennington* doctrine and the litigation privilege.

While normally the reversal of a summary judgment results in a remand for trial, pursuant to FED. R. CIV. P. 16(d), this Court should render judgment dismissing Cellars' declaratory-judgment claim under the *Noerr-Pennington* doctrine and the California litigation privilege. *See* 1-ER-62 (order following pretrial conference

confirming that Roach seeks to apply these doctrines to defeat "all claims by Plaintiff Schrader Cellars LLC"); *see also* 3-ER-354-57. Both the *Noerr-Pennington* doctrine and the litigation privilege protect Roach's fundamental right of access to the courts. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929-31 (9th Cir. 2006) (*Noerr-Pennington*); *Rubin v. Green*, 847 P.2d 1044, 1047-48 (1993) (litigation privilege).

Under *Rubin*, Roach's filing of his Texas lawsuit constitutes a communication that should be "absolutely immune." *Id*. The purpose of California's litigation privilege is to prevent "another round of litigation." *Id*. at 1049-51. The litigation privilege applies whenever it would further the underlying policies of the privilege, particularly the policy of "allowing access to the courts without fear of harassing derivative actions." *Feldman v. 1100 Park Lane Assocs.*, 74 Cal. Rptr. 3d 1, 26 (2008). The same is true under *Noerr-Pennington*. As this Court explained, citizens are entitled to "enjoy the right of access to the courts without fear of prosecution." *Sosa*, 437 F.3d at 934.

Here, the jury found that Cellars filed its fiduciary-duty claim in retaliation for Roach's Texas lawsuit. *See* 2-ER-184-85, Question 4. As Cellars itself told the jury, Question 4 asked whether Cellars sought to "punish" Roach for bringing his Texas lawsuit: "That's what that question is actually after, Number 4. Are we here to just punish him for filing suit?" 13-ER-2449. The jury answered yes.

The same conclusion is inescapable as to Cellars' entire lawsuit, including Cellars' declaratory-judgment claim. Cellars repeatedly admitted that its lawsuit was filed in retaliation for Roach's Texas lawsuit. In Cellars' summary judgment papers, for example, Cellars freely admitted that the basis for its lawsuit was to "nullify[]" Roach's Texas ownership claims in the Texas lawsuit. 4-ER-591. Cellars pinpointed the "threat" as Roach's Fifth Amended Petition, in which Roach sought "to declare Roach as the owner." 4-ER-589. Cellars admitted that "It is that ongoing threat which prompted Schrader Cellars, less than two months later, to bring its claims in this Court **to declare otherwise**." 4-ER-589 (emphasis added). Cellars repeated this admission under oath. *See* 4-ER-603 ¶8. Cellars made similar admissions in open court. 3-ER-373; 3-ER-409-12. Cellars also made these admissions in its pleadings. *See* 6-ER-1109-10 ¶¶12-14; *see also* 6-ER-1118 ¶45 (basing Cellars' declaratory-judgment claim on the allegation that "Roach has and continues to claim an interest in Schrader Cellars").

In light of these admissions, Cellars' declaratory-judgment claim unquestionably constituted an attempt to shut down Roach's Texas lawsuit. Cellars further admitted that it intended to defeat Roach's Texas ownership claims by prosecuting the previously rejected ethics allegations against Roach. 4-ER-586. This makes it plain that Cellars' lawsuit constitutes the harassment and prosecution of Roach for filing his Texas lawsuit. To protect Roach's fundamental rights, Cellars

should not be allowed to resume that impermissible conduct on remand.  This Court should thus render judgment dismissing Cellars' retaliatory declaratory-judgment claim.

## II.	The summary judgment should be reversed because Cellars had no standing to void the RBS agreement.

The district court lacked jurisdiction to make its key summary-judgment ruling that Cellars had the unilateral right to void the RBS agreement.  1-ER-96; 1-ER-104.  Cellars lacked standing because it was not a party to the RBS agreement.  *See* 4-ER-669-70 ¶¶8-11; 4-ER-676 ¶25.  In California, only parties to a contract have standing to void that contract.  *See Schauer v. Mandarin Gems of Cal., Inc.*, 23 Cal. Rptr. 3d 233, 240-41 (Cal. Ct. App. 2005).

### A.	Under California law, only parties to a contract have standing to rescind a contract.

*Schauer* explained why a plaintiff must be a party to a contract to have standing to rescind it:

> Plaintiff, not having participated in the agreement, not having undertaken any duty or given any consideration, is a stranger to the agreement, with no legitimate interest in voiding it.  As a matter of law, … plaintiff cannot rescind the sales contract to which she was not a party.

*Schauer*, 23 Cal. Rptr. 3d at 241; *see also Almog v. Golden Summit Invs. Grp., Ltd.*, 2012 WL 12867972, at *8 (C.D. Cal. April 30, 2012) (declining to order rescission because plaintiff was not a party to the contract) (citing *Schauer*); *Ramirez v. Am.*

*Gen. Life Ins. Co.*, 2018 WL 300374, at *9 (Cal. Ct. App. Jan. 5, 2018) (affirming the dismissal of a rescission claim because the plaintiff was not a party to the contract) (citing *Schauer*).

This strict standing rule for rescission reflects the similar but more lenient rule that, normally, only parties to a contract have standing to enforce it. *See Sentience Studio LLC v. Sec. Ins. Co. of Hartford*, 231 Fed. Appx. 583, 584 (9th Cir. 2007) ("Under California law, Sentience Studio is a third-party claimant that generally does not have standing to bring a direct breach of contract action against an insurance company."); *Moore v. Way FM Media Group Inc.*, 2012 WL 13012658, at *4 (C.D. Cal. Mar. 29, 2012) (dismissing various breach of contract claims for lack of standing).

The standing rule for rescission is stricter. There are no exceptions that allow some third-party beneficiaries to rescind a contract. *See Schauer*, 23 Cal. Rptr. 3d at 240. *Schauer* described this strict rule as "self-evident" and a matter of "common sense." *Id*. Especially in the context of a partnership, a non-party should not be able to obtain a ruling that two other parties failed to form a partnership, as the district court held. *See* 1-ER-94 (holding that "any partnership would be void"). Most importantly, the *Schauer* rule is based on a California statute: "Civil Code section 1689 limits its grant of rescission rights to the contracting parties." *Schauer*, 23 Cal. Rptr. 3d at 240. Thus, the California Legislature deprived Cellars' of standing.

The *Schauer* rule undermines Cellars' Article III standing. *Cf. Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001) (acknowledging that state law controls the parties' legal interests, which in turn determines standing in diversity cases). To prove standing, a plaintiff must show an (i) "injury in fact" (ii) that is traceable to the defendant and (iii) redressable by the courts. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Further, the "injury in fact" must constitute an invasion of a "legally protected interest." *Id.* at 560. In brief, Cellars has no "legally protected interest" in voiding the RBS agreement. *See Schauer*, 23 Cal. Rptr. 3d at 241. Likewise, there is no redressability because *Schauer* prohibits Cellars from voiding the RBS agreement. *See id.*

Moreover, under federal law, Cellars was obligated to establish its standing for each specific type of relief at issue: "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) ("[Plaintiff] bears the burden of showing that he has standing for each type of relief sought."). Here, Cellars did not have standing to obtain the specific relief that it obtained: the right to void the RBS agreement between Roach and Fred. *See Alcini v. Nw. Mut. Life Ins. Co.*, 2008 WL 11337236,

34

at *2-3 (C.D. Cal. Sept. 29, 2008) (granting motion to dismiss a claim for rescission due to lack of standing) (citing *Schauer*).

## B. The evidence confirmed that the only parties to the RBS agreement were Roach and Fred.

Federal courts are obligated to determine whether standing exists, even *sua sponte*. *See Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001). The burden of proof to demonstrate standing is on the plaintiff. *See Lujan*, 504 U.S. at 561. Because the district court proceeded to the summary judgment stage and then to trial, Cellars had the burden to demonstrate its standing with evidence. *See id.*

Cellars failed to meet its burden to prove that it was a party to the RBS agreement. Cellars argued that it "was in fact **part** of [Roach's] alleged deal." 2-ER-127 (emphasis added). Cellars, however, is talking about a different contract, literally a side deal: "the deal supposedly included an oral license and oral lease with Cellars." 2-ER-137. That is a different contract than the RBS agreement that the district court rescinded. *See* 1-ER-104.

The summary-judgment evidence confirmed that the license agreement with Cellars was separate from the RBS agreement. Roach testified that "Fred and I agreed the RBS wine would be owned separately from Schrader Cellars and called Roach Brown Schrader. We also agreed that, for regulatory and administrative purposes, Schrader Cellars would make and sell the wine for our separate RBS business under a verbal license agreement." 4-ER-670 ¶11; *see generally* 4-ER-676

¶25. Cellars itself provided the best evidence when it attached an email from Cellars that explained (1) "Mr. Schrader's project of the Schrader RBS Cabernet is between Fred and Randy **only**" and (2) "Schrader Cellars produces and sells the wines for the project." 10-ER-1752 (emphasis added).

The parties have always disputed the terms of the RBS agreement, with Roach asserting that Fred promised him an equity interest in the RBS wine. Fred asserted that Roach provided him only a loan and legal services. Regardless of the terms, however, three of the four witnesses at trial testified that the RBS agreement was between Fred and Roach:

Testimony By Fred:

- "Q. I know that in your view Mr. Roach made you a loan, but you'd agree with me, Mr. Schrader, that money -- you received money from Mr. Roach; isn't that true? A. I did." 11-ER-2082.

- "Q. Did Mr. Roach lend money -- A. To me, yes." 11-ER-2128.

- "We had had an agreement, and he decided that he had better priorities for his time legally than continuing with the agreement of helping me." 11-ER-2066.

- "A. Did he pay for the wine? No. That was part of our agreement." 11-ER-2098.

- "[I]t was just what he got per our agreement for he took care of everything legal and I gave him wine in return. It went on for years." 11-ER-2127.

- "[O]ur agreement was [...] is that he would have -- he would do the legal services and I would give him wine for it." 11-ER-2132.

<u>Testimony By Roach</u>:

- "Q. But what was your understanding of -- of the partnership between you and Fred? A. Well, it was for the manufacture and sale of this 337 clone Napa Cabernet …." 12-ER-2173; *see generally* 12-ER-2172-76.

<u>Testimony By Sall</u>:

- "There's been testimony that I heard from Mr. Schrader that he received a loan from Mr. Roach and he paid it back in full with interest." 12-ER-2258.

Given that Cellars was not a party to the RBS agreement, Cellars had "no legitimate interest in voiding it." *Schauer*, 23 Cal. Rptr. 3d at 241. The district court thus exceeded its jurisdiction when it gave Cellars the unilateral "option" to rescind the RBS agreement.

**C.      The district court's standing and jurisdictional error was compounded by Cellars' dramatic admission, post-verdict, that it never sought to rescind the RBS agreement.**

Surprisingly, in response to this issue, post-verdict, Cellars disclaimed ever having sought to void the RBS agreement: "Cellars never brought a claim for recission or asked the Court to rescind any contract through its requested declaratory relief." 2-ER-137. After Cellars confirmed that it had not even invoked the district court's jurisdiction to void the RBS agreement, there was no jurisdictional basis to provide Cellars with that remedy. *See Depner v. Joseph Zukin Blouses*, 56 P.2d 574, 575 (Cal. Ct. App. 1936) ("A voidable contract is one which may be rendered null at the option of one of the parties, but is not void until so rendered.").

Despite Cellars' admission, the district court denied Roach's post-verdict motion to dismiss without providing any analysis of how Cellars could have standing to void an agreement to which it was not a party and had not sought to void. *See generally* 1-ER-2-21.

## III. The district court erroneously granted summary judgment by disregarding binding Texas ethics decisions that fully exonerated Roach.

The summary judgment should also be reversed because the same ethics allegations that formed the basis for the summary-judgment ruling were authoritatively rejected by both the Texas disciplinary authorities and the Texas trial and appellate courts. This Court gives "great deference" to state disciplinary decisions. *Gadda v. Ashcroft*, 377 F.3d 934, 943 (9th Cir. 2004). The Supreme Court has likewise held that state disciplinary proceedings "are of a character to warrant federal-court deference." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982). While this doctrine is usually invoked in cases involving reciprocal attorney discipline, as Judge Berzon explained, the same "great deference" is owed to state disciplinary proceedings that **vindicate** a lawyer. *In re Yagman*, 38 F.4th 25, 34 (9th Cir. 2022) (Berzon, J., dissenting).

The reason for this deference is that states traditionally have the primary responsibility to police the "conduct of the attorneys whom they license." *Gadda*, 377 F.3d at 944. This state "control" of its bar is paramount, "regardless of the

jurisdiction in which [the alleged misconduct] occurs." *Canatella v. California*, 404 F.3d 1106, 1110 (9th Cir. 2005).

This "deference" jurisprudence is also based on due process concerns. Disciplinary proceedings are considered "quasi-criminal." *See In re Ruffalo*, 390 U.S. 544, 551 (1968). In many ways, the attorney sits as a criminal defendant. *See Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1566-67 (10th Cir. 1993).[3] Importantly, this deference is not based on *res judicata* principles. So it is irrelevant, as Cellars argued below, that *res judicata* does not apply to Texas disciplinary rulings as a matter of Texas' disciplinary *procedural* rules. 3-ER-470.

In summary, "[t]he traditional and primary responsibility of state courts for establishing and enforcing standards for members of their bars and the quasi-criminal nature of bar disciplinary proceedings … call for **exceptional deference** by the federal courts." *Middlesex*, 457 U.S. at 438 (Brennan, J., concurring) (emphasis added). Accordingly, this Court should reverse the summary judgment and direct the district court on remand to defer to the Texas disciplinary decisions exonerating Roach.

---

[3] According to Cellars, "any [disciplinary] complaint is ultimately pursued (or not) by the State Bar and is not an action on behalf of the client." 3-ER-470. This further confirms that the Texas disciplinary proceedings were quasi-criminal.

**A.** **Private attorneys should not be able to shop around ethics allegations that have been authoritatively and repeatedly rejected on the merits.**

It would undermine the above-described jurisprudence to allow private attorneys to shop around ethics allegations until they get the desired result. That is exactly what occurred here. One of the most powerful law firms in the country subjected Roach to three rounds of disciplinary proceedings in Texas. *See* 9-ER-1511-1601 (original grievance); 7-ER-1277-1391 & 8-ER-1393-1508 (amended grievance); 6-ER-1133 (describing the appeal). This was done by the same attorneys who also represent Cellars. *See* 7-ER-1286 (letter of representation in connection with grievance).

Both the original and amended grievances made the same core ethics allegation that was the basis for the summary-judgment ruling, *i.e.*, that Roach wrongly attempted to claim an ownership interest in his client's wine businesses:

- "Randy now claims he took an ownership interest in all of my winemaking entities but admits he did not disclose that ownership interest to me or give me an opportunity to seek legal advice on any agreement resulting in his claimed ownership." 9-ER-1517.

- "Neither Randy Roach nor anyone associated with him or his law firm, including John Newton, ever indicated to me during these many years of representation that anyone at that firm believed they were entitled to an ownership interest in Schrader Cellars, LLC, Roach Brown Schrader, LLC, or Boars' View LLC or their assets." 9-ER-1520-21.

- "[Randy] is now suing me for an ownership interest in Schrader Cellars, LLC and Boars' View, LLC, in direct conflict with his previous representation of myself and those entities." 7-ER-1283.

40

Roach was fully vindicated in Texas. 6-ER-1269; 6-ER-1133. The Texas decisions included a factfinding that Fred did not "demonstrate misconduct on the part of the lawyer." 6-ER-1269. Under this Court's precedent, that finding is entitled to deference. *See In re North*, 383 F.3d 871, 875 (9th Cir. 2004). The decisions were reaffirmed on appeal and deemed "final." 6-ER-1133. Previously, those same lawyers had also filed an unsuccessful motion in Texas state court to disqualify Roach's law firm based on the same ethics allegations. *See* 9-ER-1581-1601. These same lawyers also challenged the denial of their disqualification motion in an unsuccessful mandamus petition. *See* 9-ER-1603-65; 6-ER-1271-72. In summary, Cellars' ethics allegations have "already been adjudicated by another court or disciplinary agency." *In re Kramer*, 282 F.3d 721, 725 (9th Cir. 2002).

In light of the quasi-criminal nature of disciplinary proceedings, any attorney who is exonerated of ethics charges should not be repeatedly subjected to the same charges. As the Supreme Court explained regarding the Double Jeopardy Clause,

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187-88 (1957).

Importantly, the Texas disciplinary decisions were the only state decisions for the district court to consider. Recently, this Court grappled with conflicting decisions from disciplinary proceedings in New York and California — and this Court followed the out-of-state decision. *Compare Yagman*, 38 F.4th at 32 (relying on New York's disbarment of attorney) *with id.* at 33-34 (Berzon, J., dissenting) (seeking to defer to California's reinstatement of attorney). Here, Cellars' attorneys pursued these charges in Texas, but never filed a valid disciplinary complaint in California. They now seek to disregard the very Texas ethics decisions that they themselves had solicited.

### B. Cellars failed to meet this Court's test for overriding the multiple Texas ethics decisions.

The Texas disciplinary decisions are also dispositive because Cellars made no effort to meet this Court's required evidentiary showing. To avoid "great deference" in the context of an order **disqualifying** an attorney, this Court adopted the following test:

> We will extend great deference to the state court's determination unless our independent review reveals one of the following conditions: (1) a lack of due process; (2) insufficient proof of attorney misconduct; or (3) "some other grave reason exist[s] that should prevent the court from recognizing the state court's determination."

*Gadda*, 377 F.3d at 943 (citations omitted). This Court's opinion in *Kramer* alternatively described the last factor as a showing of "grave injustice." *Kramer*,

282 F.3d at 724. Further, the Ninth Circuit requires "clear and convincing" evidence of these factors. *See id*. at 724-25.

Instead of attempting to make the required showing, Cellars' motion for summary judgment never even acknowledged the Texas ethics decisions. *See generally* 4-ER-697-729. That should have been dispositive. There is no basis in the summary judgment record to disregard the Texas ethics decisions. If anything, this case inverts the third *Kramer* factor — it would be a "grave injustice" to allow Cellars to repeatedly relitigate the ethics allegations until it finally prevails. *Kramer*, 282 F.3d at 724. Roach and his professional reputation should not be "whipsawed by inconsistent judgments." *National Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 252 (4th Cir. 2000) (addressing joinder issues).

## C. The district court's choice-of-law analysis did not justify disregarding the Texas ethics decisions.

Despite *Gadda* and *Kramer*, the district court afforded the Texas ethics decisions no deference whatsoever. To justify this result, the Court primarily relied on a choice-of-law analysis: "Roach … does not explain how a Texas administrative ruling regarding Roach's violation of a Texas Rule of Professional Responsibility regarding Roach's practice of law in Texas is required exceptional deference regarding Roach's violation of California's Rule of Professional Responsibility based on his practice of law in California." 1-ER-67; *see also* 1-ER-17.

That analysis raises a matter of first impression: Does the choice of California law displace the results of Texas disciplinary rulings? This Court should reject the district court's answer, both factually and legally.

> **1.    The district court declined to defer to the Texas ethics decisions based on factual errors.**

Factually, the undisputed written record disproves the district court's conclusion that the Texas ethics rulings solely addressed "Roach's practice of law in Texas." 1-ER-67. The Texas grievances expressly addressed Roach's actions in California. *See* 9-ER-1514 ("Roach and his firm also represented me and/or Schrader Cellars in connection with various lawsuits and arbitrations in California during that period."); 9-ER-1519 ¶2 (averring that Roach's legal representation of Fred and Cellars involved "various disputes in California"); 7-ER-1280 (referring to the California dispute "with To Kalon vineyards").

Likewise, the motion to disqualify in the Texas litigation involved Roach's ethical conduct in California. *See* 9-ER-1584. The motion to disqualify was further based on Roach's alleged ethical duties to Cellars, as well as to Fred personally. *See* 9-ER-1582-84. Moreover, Cellars' lawyers raised these complaints under California's ethics rules. 9-ER-1582 (citing the failure "to comply with binding ethical requirements under Texas or California law"). In fact, Cellars' lawyers

conceded that the Texas and California disciplinary rules were "substantially identical." 9-ER-1599.[4]

## 2. The district court declined to defer to the Texas ethics decisions based on legal errors.

Legally, there are at least five reasons why the district court's choice-of-law analysis does not override the "great deference" due to the Texas disciplinary proceedings. First, there is no precedent that allows federal courts to bypass either (i) this Circuit's "great deference" command or (ii) its clear-and-convincing test by means of a choice-of-law analysis. The district court wrongly engrafted a new and potentially broad exception to this Court's "great deference" rule.

Second, allowing a choice-of-law analysis to override a state disciplinary proceeding does not satisfy this Circuit's *Gadda* test. A choice-of-law analysis does not demonstrate "(1) a lack of due process; (2) insufficient proof of attorney misconduct; or (3) 'some other grave reason exist[s] that should prevent the court from recognizing the state court's determination.'" *Gadda*, 377 F.3d at 943.

Third, as this Court explained in a different context, the issue in the Texas disciplinary proceedings was the same as the issue here — *i.e.*, what are the implications when an attorney "enter[s] into a business transaction with a client"[5]:

---

[4] The motion to disqualify was presented to the Texas disciplinary authorities as a supporting attachment. *See* 9-ER-1581-1601.

[5] *See* 1-ER-95 (quoting this same phrase from both California Rule 3-300 and Texas Rule 1.08).

> [D]ifferences between foreign and domestic law do not
> necessarily make the "issues" different. Just as the local
> and foreign issues were functionally the same in *Gallo*
> even though the foreign action asserted claims under a
> foreign statute, *see Gallo*, 446 F.3d at 991, the issues are
> not different here merely because Surgical framed its
> Belgian action in terms of the Belgian Act.

*Applied Med. Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909, 918 (9th Cir. 2009).

Fourth, any pathway that allows private parties to relitigate ethics allegations undermines the strong policy "against avoiding inconsistent judgments, forum shopping and engaging in duplicative and vexatious litigation …." *Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1100 (W.D. Wash.), *aff'd.*, 696 F.3d 872 (9th Cir. 2012). This Court should not condone Cellars' harassing repetition of rejected ethics allegations for private gain. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627-28 (5th Cir. 1996) ("Achilles's belated ploy of filing as putative plaintiff in Japan the very same claims against Kaepa that Kaepa had filed as plaintiff against Achilles smacks of cynicism, harassment, and delay."). The concern is even more acute in light of the earlier admission by these same lawyers that the Texas and California rules imposed "substantially identical" requirements. *See* 9-ER-1599. This Court should not allow the apparent forum shopping to result in inconsistent ethics judgments.

Fifth, the district court should have deferred to the Texas disciplinary proceedings because Texas has the primary responsibility for Roach's conduct as an attorney who is licensed only in Texas, "regardless of the jurisdiction in which [the alleged misconduct] occurs." *Canatella*, 404 F.3d at 1110-11.

## D. The district court's implicit finding of waiver was erroneous.

Without using the word "waiver," the district court suggested that Roach waived his right to rely on the Texas disciplinary decisions, needlessly raising even more ethical issues. *See* 1-ER-67. The narrow basis for this holding was that Roach first identified this Court's controlling law in his motion for reconsideration: "Roach never argued in opposition to Cellars' motion for summary judgment that the Texas disciplinary proceedings were entitled to exceptional deference." *Id*. This Court should reverse and decide this issue on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) ("Cases should be decided upon their merits whenever reasonably possible.").

First, there was no waiver because Roach expressly invoked the Texas ethics decisions in his initial summary judgment papers — twice. 4-ER-657; 4-ER-628. Roach argued that the Texas decisions were binding. 4-ER-657 ("This should put the issue to rest completely."); 4-ER-628 ("[T]his would appear dispositive."). Roach also submitted the entire record of the original and amended Texas grievances

into the summary-judgment record. 9-ER-1511-1601 (91 pages); 7-ER-1277-1391 & 8-ER-1393-1508 (231 pages).

Moreover, Roach was not asserting an obscure legal theory. Roach made the obvious point that the ethics allegations should not be re-litigated. 4-ER-657; 4-ER-628. Under Ninth Circuit precedent, Roach is permitted to later cite controlling authority in support of his prior arguments. *See Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 907-08 (9th Cir. 2004) (finding no waiver when plaintiffs failed to "cite to the appropriate portions of the Code of Federal Regulations to support their argument"); *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 853-54 (9th Cir. 2007) (finding no waiver when the party previously asserted "the same argument now made" but failed to identify the change in controlling law). Further, "[t]here is no bright-line rule to determine whether a matter has been properly raised." *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989). Roach raised his argument "sufficiently for the trial court to rule on it." *Id.*

Second, it would be inequitable to find waiver because Cellars' Motion for Partial Summary Judgment failed to advise the district court about its attorneys' own prior prosecution of these same ethics allegations in Texas. *See generally* 4-ER-697-729. This was a serious omission. *Cf. Yagman*, 38 F.4th at 31 ("Nowhere in Yagman's supplemental brief did he mention that he was currently disbarred from practicing law in the state of New York.").

Third, there was no waiver because Roach was not required to respond at all. Under this Circuit's precedent, Cellars had the burden of proof on the *Gadda* factors. *See Kramer*, 282 F.3d at 724-25. Cellars also had the burden of production because it was the summary-judgment movant. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). By not even mentioning the Texas disciplinary decisions, Cellars made no attempt to meet either burden. Roach thus had no obligation to respond: "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything …." *Id*. at 1102-03.

Fourth, the district court expressly permitted Roach to file his motion for reconsideration. 3-ER-510. That cured the alleged waiver. *See Ballaris*, 370 F.3d at 908 (alternatively finding no waiver because the party raised the relevant legal authority in a motion to amend findings and conclusions of law); *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1019 (9th Cir. 2012) ("USAP sufficiently raised this argument in its supplemental brief …, which the district court permitted the parties to file…."). More importantly, once Roach identified the district court's "great deference" obligations, the court's primary responsibility was to follow the law: "The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003).

Finally, even if this Court were to find waiver, this Court has the power to consider the *Middlesex* issues, either (i) to avoid manifest injustice or (ii) because of the lack of prejudice to Cellars. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1071 (9th Cir. 2012). Here, it would be manifestly unjust to allow Cellars to prevail on "quasi-criminal" ethics allegations in a summary proceeding when its attorneys repeatedly prosecuted those same allegations in Texas and lost. Moreover, there is no prejudice:

- Roach put Cellars on notice that the Texas disciplinary decisions were dispositive. 4-ER-657; 4-ER-628.

- Cellars had a full opportunity to brief this issue in response to Roach's motion for reconsideration. *See* 3-ER-451-477.

This defeats any prejudice. *See Hall*, 697 F.3d at 1072 (finding no prejudice because (i) a plaintiff's factual allegations put the defendant on notice of the waived legal argument and (ii) the defendant had a full opportunity to brief the issue).

## IV. The district court erroneously granted summary judgment against Roach's non-contract counterclaims without regard to their merits.

The district court also erroneously dismissed Roach's non-contract counterclaims without regard to their merits. *See* 1-ER-104. Roach pled ownership counterclaims based on (i) fraud, (ii) breach of fiduciary duties, and (iii) equitable estoppel. *See* 5-ER-1018-33 (counts three through six). Without any substantive analysis, the district court summarily dismissed those claims based on its summary-judgment ruling that the RBS contract was void. *See* 1-ER-104. The district court

expressly stated its mistaken major premise, *i.e.*, that Roach's counterclaims "are all based on the existence of an enforceable partnership agreement." *Id.* Other than that conclusory statement, the district court provided no explanation for how voiding a contract could justify dismissal of non-contract claims.

Seeking reconsideration, Roach pointed out that the district court failed to resolve his non-contract claims on their merits. 3-ER-486-87; 3-ER-492-502. In response, the district court blamed Roach's summary-judgment briefing for the mistake and refused to correct its ruling. *See* 1-ER-66. The district court added, *sua sponte*, that Roach would be unable to prove reasonable reliance in any event. *See* 1-ER-66-67. This Court should reverse and remand Roach's non-contract counterclaims for disposition on the merits.

### A. Roach pled counterclaims that were not based on the enforceability of an RBS contract.

Roach pled viable non-contract tort and estoppel counterclaims to vindicate his ownership rights. *See* 5-ER-1018-33 (counts three through six). In its motion for summary judgment, Cellars did not attack those tort and estoppel claims on the merits. *See* 4-ER-705 & 4-ER-715 (asserting three reasons that Roach allegedly could not recover). Cellars never asserted, for example, that there was a lack of evidence of fraud. The district court should have addressed Roach's counterclaims as they were pled and resolved them on the merits. *See Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1114-15 (9th Cir. 2011) (reversing summary

51

judgment because the district court failed to appreciate how the claims, as pled, avoided federal preemption).

### 1. Roach pled fraud-based ownership percentage claims.

Roach pled Cellars' fraud as one of his overarching theories. *See* 5-ER-991-100 ¶¶3-5, 8-18. Roach also specifically pled fraud as the basis for seeking a declaration of his ownership rights (count three). *See*, *e.g.*, 5-ER-1022-23 ¶70. Roach also pled fraud as the basis for his ownership claims based on equitable estoppel (counts four and five). *See* 5-ER-1026-28 ¶76 & 5-ER-1029-32 ¶82.

In brief, Cellars fraudulently obtained Roach's investment money by making false promises that he would obtain an ownership interest in RBS, which was further promised to be "separate" from Cellars. 5-ER-993-95 ¶¶8, 11. Those promises were false at the time they were made. *See* 5-ER-991-92 ¶4. Under California law, false promises are actionable. *See* CAL. CIV. CODE § 1710(4). Moreover, fraud claims are valid even if the underlying contract would be unenforceable. *See Tenzer v. Superscope, Inc.*, 702 P.2d 212, 218 (Cal. 1985).

Importantly, under California law, Roach's alleged violation of Rule 3-300 does not prevent him from prosecuting Cellars' fraud. *See Birney v. Birney*, 217 Cal. 353, 359, 18 P.2d 672 (1933) ("[O]ne cannot lay a trap for another, secure his confidence, induce him to make a conveyance of his property in expectation that it

will be returned, and thereafter retain the fruits of his perfidy on the ground that the donor too readily yielded to temptation ….").

### 2. Roach pled fiduciary-duty-based ownership percentage claims.

Roach likewise pled ownership claims based on Cellars' breach of fiduciary duties. *See*, *e.g.*, 5-ER-1002 ¶20 & 5-ER-1008 ¶39. Importantly, Roach pled that Fred and Cellars owed fiduciary duties to Roach for other reasons besides the RBS agreement. *See* 5-ER-1000-1001 ¶19. For example, Cellars undertook fiduciary obligations by taking possession of Roach's RBS investment money. *See* 5-ER-1005 ¶28.

California law recognizes multiple bases for finding a fiduciary duty, including a close friendship. *See Estate of Sanders*, 40 Cal. 3d 607, 615, 710 P.2d 232 (1985). The creation of a limited liability company also creates fiduciary duties. *See* Cal. Corp. Code § 17153 (repealed); Cal. Corp. Code § 17704.09. A party can also assume fiduciary duties based on "holding out," such as holding out Roach as a partner and owner. *See Di Benedetto v. Grell*, 2004 WL 902458, at *1-3, 10, 14 (Cal. Ct. App. Apr. 28, 2004); *Rosenthal v. Interstate Assur. Co.*, 2002 WL 1648509, at *7-8 (Cal. Ct. App. July 24, 2002). "The key factor in the existence of a fiduciary relationship lies in control by a person over the property of another." *Vai v. Bank of America*, 364 P.2d 247, 252 (1961).

### 3. Roach pled estoppel-based ownership percentage claims.

Roach pled two equitable estoppel claims. 5-ER-1025-32 (counts four and five). These claims were largely based on Cellars' representations that Roach was an RBS partner and owner. *See*, *e.g.*, 5-ER-1026-28 ¶¶75-76. The district court failed to consider Roach's equitable estoppel claims on the merits even though Roach's Opposition expressly argued that "Summary judgment on ownership is inappropriate because of fact issues based on evidence that Fred and Schrader Cellars treated and held out Roach as a partner." 4-ER-641; *see also* 4-ER-643-44 (providing examples of Cellars' holding out Roach as a partner and owner).

Under California law, courts are required to hold parties to their representations. *See* CAL. EVID. CODE § 623; *City of Long Beach v. Mansell*, 476 P.2d 423, 442 (Cal. 1970). California courts have applied equitable estoppel principles to false representations of a partnership. *See Claudine v. West*, 241 P.2d 580, 581 (Cal. Ct. App. 1952). Moreover, equitable estoppel is especially appropriate because (i) Roach faithfully performed his side of the RBS agreement for a remarkable 15 years, including by making a substantial investment, and (ii) Cellars benefitted greatly from Roach's performance. *See Cobb v. McDonald-Weist Logging Co.*, 278 F. 165, 167 (9th Cir. 1921) (prohibiting a party from exercising its statutory right to void a contract because it had "accepted the benefit of the contract to a large extent"); *Cline v. Festersen*, 275 P.2d 149, 153 (Cal. Ct. App. 1954)

(applying equitable estoppel in light of the years that the parties had "spent together in hard work and labor").

> ### 4. Roach's fraud, fiduciary duty, and estoppel allegations created ownership percentage rights.

How did Cellars' fraud and breach of fiduciary duties create ownership rights? Under California law, any money obtained by fraud or "other wrongful act" automatically creates a constructive trust. CAL. CIV. CODE § 2224; *see also* CAL. CIV. CODE § 2223. Sections 2224 and 2223 do not impose a requirement that the plaintiff create a legally binding partnership. *See generally GHK Assocs. v. Mayer Group, Inc.*, 274 Cal. Rptr. 168, 182 (Cal. Ct. App. 1990) ("[A] constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property ….").

Moreover, Cellars took Roach's investment money under false pretenses. This Court has recognized that equitable ownership remedies are available when funds are misappropriated: "The elementary rule of restitution is that if you take my money and make money with it, your profit belongs to me." *Nickel v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 290 F.3d 1134, 1138 (9th Cir. 2002); *see also Brown v. New York Life Ins. Co.*, 58 F. Supp. 252, 259 (D. Or. 1944), *aff'd*, 152 F.2d 246 (9th Cir. 1945) (applying a constructive trust to a life insurance payout when the misappropriated funds were used to pay the policy premiums).

Further, Roach's non-contract counterclaims, if successful, would have prevented Cellars from exercising its alleged right to void the RBS agreement in the first place. In short, if the jury found that Cellars participated in fraud or breach of fiduciary duties, equity should have prevented Cellars from exercising its supposed option to void the RBS agreement. *See, e.g.*, *Cobb*, 278 F. at 167.

## B. This Court should reject the district court's subsequent rationalizations for its erroneous ruling.

In denying Roach's motion for reconsideration, the district court provided two justifications for previously dismissing Roach's non-contract counterclaims. First, it again found waiver: "Roach never argued, with supporting legal authority, how Cellars' purported fraud or breach of fiduciary duty could provide Roach an ownership interest." 1-ER-66. Second, the district court addressed reliance *sua sponte*: "Roach does not explain how his reliance on any such fraud to promise an ownership interest could have been *reasonable* in light of Roach's violation of California Rule of Professional Responsibility Rule 3-300 …." 1-ER-66 (emphasis in original). Neither rationalization withstands scrutiny.

### 1. Roach did not waive his counterclaims.

The district court's waiver finding was mistaken factually and legally. Factually, Roach's summary-judgment opposition expressly pointed out that Cellars' legal arguments did not justify the dismissal of Roach's non-contract counterclaims:

**Roach requests a declaration that Schrader Cellars holds assets in trust for Roach**, based on Schrader Cellars' [1] breaches of fiduciary duty and [2] fraud. Roach also requests a declaration that Schrader Cellars is [3] equitably estopped from denying Roach's ownership rights based on years of representations of Roach's ownership interests. In response, Schrader Cellars' motion seeks a declaration that the parties never created a legitimate partnership. **Schrader Cellars cites no cases holding that the failure to create a partnership would defeat either of these requests for relief** or any other of Roach's counterclaims. In other words, there is a **disconnect** between Schrader Cellars' legal argument and the dismissals that it seeks.

4-ER-660 (emphasis added).

Originally, the district court failed to address this passage. *See generally* 1-ER-75-107. On reconsideration, the district court quoted part of this passage, and claimed that Roach only made this argument "in passing." *See* 1-ER-66. To the contrary, this lengthy passage directly explains that the enforceability of the RBS agreement is irrelevant to Roach's non-contract counterclaims. There was no waiver.

Moreover, Roach's pleadings provided the authority to show that fraud, breach of fiduciary duties, and estoppel create ownership rights. For example, Roach's counterclaims cited California's constructive trust statutes approximately 21 times. *See* 5-ER-1000-24 (citing Cal. Civ. Code §§ 2223, 2224). Roach's pleadings cited authority from this Court for the proposition that "where one in a fiduciary capacity mingles money belonging to another with his own, the whole will

be treated as trust property ….” 5-ER-1008 ¶39 (quoting *Republic Supply Co. of California v. Richfield Oil Co. of California*, 79 F.2d 375, 377 (9th Cir. 1935)). Further, “when a constructive trustee purchases property with commingled funds, the trust attaches to the substituted form in which the money is retained.” *Id.* (quoting *Seven Arts Pictures, Inc. v. Jonesfilm*, 2008 WL 11335019, at *8 (C.D. Cal. Feb. 26, 2008)). Roach’s pleadings also cited California’s common law for the proposition that Cellars became a constructive trustee because it took Roach’s money with knowledge of the pre-existing trust. *Id.* (citing *Lucas v. Associacao Protectora Uniao Madeirense Do Estado Da California*, 143 P.2d 53, 56-58 (Cal. Ct. App. 1943)).

Legally, the district court improperly flipped the summary-judgment burden. As the movant, Cellars had the burden to show that Roach’s non-contract-based counterclaims should be dismissed. *See Nissan*, 210 F.3d at 1102. Roach’s Opposition pointed out that Cellars failed to meet that burden. 4-ER-660. Roach thus had no obligation to respond further, if at all. *See Nissan*, 210 F.3d at 1102-03. Just as in *Marshall v. Gates*, Cellars’ papers did not even address Roach’s fraud, fiduciary-duty, and estoppel allegations. 44 F.3d 722, 725 (9th Cir. 1995) (“Gates’ papers did not even address the allegations … that gave rise to Marshall’s complaint. He did not, therefore, meet his burden of demonstrating an absence of genuine issues

for trial."). Cellars' Motion thus provided no basis for the district court to dismiss Roach's counterclaims without considering their merits.

## 2. Roach had no obligation to demonstrate reliance.

The same reasoning applies with even more force as to reasonable reliance. Again, Cellars did not challenge Roach's reasonable reliance in its summary judgment motion. *See* 4-ER-705. As a result, Cellars did not meet its burden of production, so Roach had "no obligation to produce anything" in response. *Nissan*, 210 F.3d at 1102-03. A summary judgment should not be granted on any basis not asserted in the motion. *See Williams v. City of St. Louis*, 783 F.2d 114, 116 (8th Cir. 1986).

To put the matter more pointedly, a district court cannot grant summary judgment by *sua sponte* identifying elements lacking evidence. That approach deprives the non-movant of his due process right to notice and an opportunity to marshal his evidence. *See Fountain v. Filson*, 336 U.S. 681, 682-83 (1949) (reversing summary judgment when the nonmovant "had no opportunity to present a defense before the trial court").

Further, the California Supreme Court has recognized that "the question of whether a plaintiff's reliance is reasonable is a question of fact." *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239, 900 P.2d 601, 609 (1995). Here, even though Cellars did not challenge reasonable reliance, Roach raised a fact issue.

Specifically, the district court asserted that Roach's knowledge of Rule 3-300 prevented Roach's reasonable reliance on Cellars' promises of ownership. *See* 1-ER-66-67. But Roach proved that the Texas disciplinary authorities fully exonerated Roach of the same charges. 6-ER-1269; 6-ER-1133. A jury should have decided whether Roach's reliance was reasonable.

## CONCLUSION

For the foregoing reasons, the Court should reverse the summary judgment, render judgment dismissing Cellars' declaratory-judgment claim, and remand Roach's counterclaims for trial.

Respectfully submitted,

ALEXANDER DUBOSE & JEFFERSON LLP


By: /s/ William J. Boyce

     William J. Boyce
     Robert B. Dubose
     ALEXANDER DUBOSE & JEFFERSON LLP
     1844 Harvard Street
     Houston, Texas  77008
     (713) 523-2358
     bboyce@adjtlaw.com
     rdubose@adjtlaw.com

     Manuel López
     ROACH NEWTON, L.L.P.
     One Westchase Center
     10777 Westheimer Rd., Suite 1100
     Houston, Texas  77042
     (713) 652-5717
     MLopez@roachnewton.com


ATTORNEYS FOR ROBERT M. (RANDY) ROACH, JR.,

# CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number(s)**   23-15862 & 23-15990

- I am the attorney or self-represented party.

- **This brief contains 13,555 words,** including _____0_____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f).  The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

- I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[ **X** ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

> [  ] it is a joint brief submitted by separately represented parties.

> [  ] a party or parties are filing a single brief in response to multiple briefs.

[  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Manuel López*
**Date**   October 17, 2023

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 17, 2023.  All participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Manuel López

# STATUTORY ADDENDUM

# STATUTORY ADDENDUM

1. CAL. CIV. CODE § 1689 ....................................................................67

2. CAL. CIV. CODE § 1710 ....................................................................68

3. CAL. CIV. CODE § 2223 ....................................................................68

4. CAL. CIV. CODE § 2224 ....................................................................69

5. CAL. CORP. CODE § 17153 (repealed)..............................................69

6. CAL. CORP. CODE § 17704.09..........................................................69

7. CAL. EVID. CODE § 623 ...................................................................71

8. CAL. PROB. CODE § 16004 ..............................................................71

## CAL. CIV. CODE § 1689:

(a) A contract may be rescinded if all the parties thereto consent.

(b) A party to a contract may rescind the contract in the following cases:

(1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.

(2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.

(3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause.

(4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.

(5) If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.

(6) If the public interest will be prejudiced by permitting the contract to stand.

(7) Under the circumstances provided for in Sections 39, 1533, 1566, 1785, 1789, 1930 and 2314 of this code, Section 2470 of the Corporations Code, Sections 331, 338, 359, 447, 1904 and 2030 of the Insurance Code or any other statute providing for rescission.

**CAL. CIV. CODE § 1710:**

A deceit, within the meaning of the last section, is either:

1.      The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2.      The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

3.      The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

4.      A promise, made without any intention of performing it.

**CAL. CIV. CODE § 2223:**

One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner.

**CAL. CIV. CODE § 2224:**

One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.

**CAL. CORP. CODE § 17153 (repealed):**

The fiduciary duties a manager owes to the limited liability company and to its members are those of a partner to a partnership and to the partners of the partnership.

**CAL. CORP. CODE § 17704.09:**

(a)     The fiduciary duties that a member owes to a member-managed limited liability company and the other members of the limited liability company are the duties of loyalty and care under subdivisions (b) and (c).

(b)     A member's duty of loyalty to the limited liability company and the other members is limited to the following:

(1)     To account to the limited liability company and hold as trustee for it any property, profit, or benefit derived by the member in the conduct and winding up of the activities of a limited liability company or derived from a use by the

member of a limited liability company property, including the appropriation of a limited liability company opportunity.

(2)     To refrain from dealing with the limited liability company in the conduct or winding up of the activities of the limited liability company as or on behalf of a person having an interest adverse to the limited liability company.

(3)     To refrain from competing with the limited liability company in the conduct or winding up of the activities of the limited liability company.

(c)     A member's duty of care to a limited liability company and the other members in the conduct and winding up of the activities of the limited liability company is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

(d)     A member shall discharge the duties to a limited liability company and the other members under this title or under the operating agreement and exercise any rights consistent with the obligation of good faith and fair dealing.

(e)     A member does not violate a duty or obligation under this article or under the operating agreement merely because the member's conduct furthers the member's own interest.

(f)     In a manager-managed limited liability company, all of the following rules apply:

(1)     Subdivisions (a), (b), (c), and (e) apply to the manager or managers and not the members.

(2)     Subdivision (d) applies to the members and managers.

(3)     Except as otherwise provided, a member does not have any fiduciary duty to the limited liability company or to any other member solely by reason of being a member.


**CAL. EVID. CODE § 623:**

Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.


**CAL. PROB. CODE § 16004:**

(a)     The trustee has a duty not to use or deal with trust property for the trustee's own profit or for any other purpose unconnected with the trust, nor to take part in any transaction in which the trustee has an interest adverse to the beneficiary.

(b)     The trustee may not enforce any claim against the trust property that the trustee purchased after or in contemplation of appointment as trustee, but the court may allow the trustee to be reimbursed from trust property the amount that the trustee paid in good faith for the claim.

(c)     A transaction between the trustee and a beneficiary which occurs during the existence of the trust or while the trustee's influence with the beneficiary remains and by which the trustee obtains an advantage from the beneficiary is presumed to be a violation of the trustee's fiduciary duties.  This presumption is a presumption affecting the burden of proof.  This subdivision does not apply to the provisions of an agreement between a trustee and a beneficiary relating to the hiring or compensation of the trustee.