# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑 𝖋𝖔𝖗 𝖙𝖍𝖊 𝕹𝖎𝖓𝖙𝖍 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

**SCHRADER CELLARS, LLC**,

*Plaintiff, Counter-Defendant – Appellee/Cross-Appellant,*

v.

**ROBERT M. ROACH, JR**.,

*Defendant, Counter-Claimant – Appellant/Cross-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 3:21-CV-01431-SK
HONORABLE SALLIE KIM, PRESIDING

## BRIEF FOR CROSS-APPELLANT SCHRADER CELLARS, LLC

Casey Low (SBN 24041363)
Sarah Goetz (SBN 24109930)
PILLSBURY WINTHROP SHAW PITTMAN
LLP
401 Congress Avenue
Suite 1700
Austin, TX 78701
Telephone: (512) 580-9600
casey.low@pillsburylaw.com
sarah.goetz@pillsburylaw.com

Stacie Kinser (SBN 300529)
PILLSBURY WINTHROP SHAW PITTMAN
LLP
Four Embarcadero Center,
22nd Floor
San Francisco, CA 94111
Telephone: (415) 983-1000
stacie.kinser@pillsburylaw.com

*Counsel for Plaintiff, Appellee/Cross-Appellant Schrader Cellars, LLC*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, Appellee/Cross-Appellant Schrader Cellars, LLC is solely owned by TPWC, Inc. The sole shareholder of TPWC, Inc. is Constellation Brands, Inc.

DATED: December 18, 2023   */s/ Casey Low*
            Casey Low
            Pillsbury Winthrop
            Shaw Pittman LLP
            *Counsel for Plaintiff Appellee/Cross-Appellant Schrader Cellars, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................. 1

STATEMENT OF THE CASE .......................................... 3

I.   Undisputed Factual Background .................................. 3

    A.   History of Undisputed Ownership of Schrader Cellars ....... 3

    B.   Roach's Claim Arises Out of an Oral Agreement for Legal Representation .............................................. 4

    C.   Roach's Legal Work for Fred and Cellars Between 2001 and 2016 ..................................................... 5

    D.   Roach Asserts His Agreement to Provide Legal Services Conferred Ownership Rights in his Client's Assets. ....................................................... 8

    E.   Roach Changes His Position to Claim Ownership of Cellars Itself. ................................................. 9

II.   Procedural History ...................................................... 10

    A.   The District Court Grants Cellars' Motion for Summary Judgment regarding Declaratory Relief of Ownership ......................................... 11

    B.   Trial Proceeds on Cellars' Breach of Fiduciary Duty Claim ............................................................... 12

    C.   The Trial Evidence Established Roach's Unethical Agreement Harmed Cellars .................................. 13

    D.   The Jury Returned its Verdict Finding Liability. .............. 15

SCHRADER CELLARS' ANSWERING BRIEF  (CASE NO. 23-15862)  STATEMENT OF ISSUES .................................... 17

STATUTORY PROVISIONS ............................................ 17

SUMMARY OF ARGUMENT ......................................... 17

STANDARD OF REVIEW ............................................... 18

ARGUMENT ..................................................................... 19

I.   The District Court Correctly Found Cellars Presented Record Title and Ownership of its Equity and Assets. ............. 19

II.   The District Court Correctly Determined Roach Could Not Prevail on His Claimed Oral Agreement as a Matter of Law. ........................................................................ 22

    A.   Roach Does Not Dispute the District Court's Choice of Law Analysis. ................................................. 22

    B.   Roach Admitted He Violated Rule 3-300. ......................... 23

    C.   Roach Also Violated the California Probate Code. ........... 25

    D.   The Undisputed Evidence at Summary Judgment and Trial Established Roach's Breach of Fiduciary Duty. ....... 28

    E.   Roach's Reinvention of the Attorney-Client Relationship Does Not Undermine the District Court's Judgment. ........................................................ 30

III.  The District Court Correctly Concluded Roach Could Not Prevail on His Counterclaims. ...................................... 36

IV.   Additional Summary Judgment Grounds Were Fatal to Roach's Claims. ................................................ 40

    A.   The Statute of Frauds Precludes Roach' Oral Agreement. ..................................................... 40

    B.   Roach Lacked Evidence of Any Facts Sufficient to Bind Cellars as a Matter of Law. ..................................... 41

    C.   Roach's Claims Are Time-Barred. ..................................... 43

V.    Roach's New and Waived Red Herrings on Appeal are Also Unavailing. ................................................ 44

    A.   Roach's New "Standing" Argument is Baseless. .............. 44

    B.   The Texas State Bar Did Not "Exonerate Roach." ............ 46

        1.   Roach's conduct was never adjudicated in Texas. .. 46

        2.   Roach's "great deference" standard is a great stretch. ...................................................... 47

    C.   Roach's *Noerr-Pennington* and Privilege Defenses are Baseless. ....................................................... 49

CONCLUSION. ...................................................... 51

CROSS-APPELLANT'S OPENING BRIEF (CASE NO. 23-15990) STATEMENT OF JURISDICTION ........................... 52

STATEMENT OF ISSUES ................................................... 52

SUMMARY OF ARGUMENT ......................................... 53

STANDARD OF REVIEW .................................................. 54

I.    Motion for Judgment as a Matter of Law .................. 54

II.   Erroneous Jury Instructions ...................................... 55

III.  Evidentiary Rulings ................................................... 55

ARGUMENT ...................................................................... 56

I.    Roach Presented Legally Insufficient Evidence of
      Privilege .................................................................... 56

      A.   Cellars' Claim Was Premised on Roach's Failure to
           Properly Document or Advise Cellars in Entering
           Transaction. ......................................................... 57

      B.   Roach's Argument About How Cellars Learned of His
           Breach is Legally Insufficient as a Matter of Law ............. 58

II.   The Privilege Instruction Inaccurately Stated the Law. ............. 61

      A.   The Instruction Permitted Roach to Immunize His Past
           Tortious Conduct by Referencing it in a Pleading. ............. 61

      B.   The Instruction Tracked the Inapplicable Anti-SLAPP
           Standard. .............................................................. 62

      C.   The Undisputed Facts in Evidence Foreclosed the
           Defense Even as Charged. .................................... 64

III.  Cellars Was Substantially Prejudiced and Unfairly
      Surprised by the Submission of Unadmitted Hearsay
      Pleadings to the Jury ................................................... 65

IV.   The Jury's Finding Does Not Preclude Equitable Relief. .......... 67

CONCLUSION ................................................................... 69

STATUTORY ADDENDUM ........................................... 74

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Action Apartment Ass'n, Inc. v. City of Santa Monica*,
   163 P.3d 89 (Cal. 2007)................................................................. 56

*Agnew v. Foell*,
   248 P.2d 758 (Ct. App. 1952) ...................................................... 38

*Airwair Int'l LTD v. ITX USA LLC*,
   No. 19-cv-07641-SI, 2021 U.S. Dist. LEXIS 142908
   (N.D. Cal. July 30, 2021) ............................................................. 36

*Allergia, Inc. v. Bouboulis*,
   No. 14-CV-1566, 2017 WL 2547225 (S.D. Cal. June
   13, 2017)....................................................................................... 41

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
   486 U.S. 492 (1988) ..................................................................... 51

*BankAmerica Pension Plan v. McMath*,
   206 F.3d 821 (9th Cir. 2000).................................................. 44, 49

*Beery v. State Bar*,
   43 Cal. 3d 802, 739 P.2d 1289 (1987)......................................... 35

*Benipayo v. Volkswagen Grp. Of Am., Inc.*,
   975 F.3d 770 (9th Cir. 2020)....................................................... 46

*BGJ Assocs. v. Wilson*,
   7 Cal. Rptr. 3d 140 (Cal. Ct. App. 2003) .......................... 24, 25, 28

*Carmen v. San Francisco Unified Sch. Dist.*,
   237 F.3d 1026 (9th Cir. 2001)...................................................... 26

*In re Cedar Funding, Inc.*,
   419 B.R. 807 (B.A.P. 9th Cir. 2009) ............................................ 56

*Celotex Corp. v. Cattrett*,
   477 U.S. 317 (1986) ..................................................................... 28

*Charles v. Diggs*,
    No. 14-19-00725-CV, 2020 WL 6326422 (Tex. App.
    Oct. 29, 2020) ................................................................ 47

*Chodos v. Cole*,
    148 Cal. Rptr. 3d 451 (Cal. Ct. App. 2012) ................................. 62

*City of Cotati v. Cashman*,
    52 P.3d 695 (Cal. 2002) ........................................ 49, 50, 51, 60, 62

*City of Wichita v. United States Gypsum Co.*,
    72 F.3d 1491 (10th Cir. 1996) ............................................... 65

*Clem v. Lomeli*,
    566 F.3d 1177 (9th Cir. 2009) .............................................. 55

*Club Members for an Honest Election v. Sierra Club*,
    196 P.3d 1094 (Cal. 2008) ................................................. 62

*Cnty. of San Bernardino v. Walsh*,
    69 Cal. Rptr. 3d 848 (Cal. Ct. App. 2007), *as modified
    on denial of reh'g* (Jan. 25, 2008), *as modified* (Jan.
    28, 2008) ................................................................. 68

*Communist Party v. 522 Valencia, Inc.*,
    41 Cal. Rptr. 2d 618 (Cal. Ct. App. 1995)
    .................................................................. 21, 22, 39, 40

*ComputerXpress, Inc. v. Jackson*,
    113 Cal. Rptr. 2d 625 (Cal. Ct. App. 2001) ................................. 50

*Crawford v. Lungren*,
    96 F.3d 380 (9th Cir. 1996) .............................................. 37

*David Welch Co. v. Erskine & Tulley*,
    250 Cal. Rptr. 339 (Ct. App. 1988) ......................................... 29

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change
    Sys., Inc.*,
    980 P.2d 371 (Cal. 1999) ................................................. 32

*Devereaux v. Abbey*,
    263 F.3d 1070 (9th Cir. 2001) (en banc) .................................... 18

*Dickenson v. Samples*,
231 P.2d 530 (Cal. Ct. App. 1951).................................... 42

*Duran v. City of Maywood*,
221 F.3d 1127 (9th Cir. 2000) (per curiam).................................. 55

*Erickson v. Pierce Cnty.*,
960 F.2d 801 (9th Cir. 1992)......................................... 54

*Fair v. Bakhtiari*,
125 Cal. Rptr. 3d 765 (Cal. Ct. App. 2011) ........................... 25, 29

*Ferguson v. Yaspan*,
183 Cal. Rptr. 3d 83 (Cal. Ct. App. 2014) .................................. 27

*Flatt v. Superior Court*,
885 P.2d 950 (Cal. 1994)............................................. 33

*Fletcher v. Davis*,
33 Cal. 4th 61 (Cal. 2004) ...................................... 23, 34

*Fletcher v. Davis*,
90 P.3d 1216 (Cal. 2004)............................................. 34

*Fredianelli v. Jenkins*,
931 F. Supp. 2d 1001 (N.D. Cal. 2013) ....................................... 42

*Freeman v. Schack*,
154 Cal. App. 4th 719, 64 Cal. Rptr. 3d 867 (2007)............... 57, 63

*Fremont Reorganizing Corp. v. Faigin*,
131 Cal. Rptr. 3d 478 (Cal. Ct. App. 2011) .................................. 56

*Friends of Earth, Inc. v. Laidlaw Env. Servs., Inc.*,
528 U.S. 167 (2000) ......................................... 45

*Gadda v. Ashcroft*,
377 F.3d 934 (9th Cir. 2004)........................................ 48

*Gantt v. City of Los Angeles*,
717 F.3d 702 (9th Cir. 2013)................................... 55, 63

*Glenn v. Hyundai Motor Am.*,
No. 8:15-CV-2052, 2017 WL 11630379 (C.D. Cal. Dec. 13, 2017) ............................................................................ 33

*Golden West Baseball Co. v. Talley*,
284 Cal. Rptr. 53 (Ct. App. 1991) ................................................. 38

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) ........................................ 18, 26, 37

*Guido v. Koopman*,
2 Cal. Rptr. 2d 437 (Ct. App. 1991) ............................................. 38

*Hagen v. City of Eugene*,
736 F.3d 1251 (9th Cir. 2013) ...................................................... 54

*Hern v. Intermedics, Inc.*,
210 F.3d 383 (9th Cir. 2000) ........................................................ 66

*Hexcel Corp. v. Ineos Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012) ...................................................... 18

*Hoeft v. Hotchkiss*,
194 P. 509 (Cal. Ct. App. 1920) ................................................... 41

*Humetrix, Inc. v. Gemplus S.C.A.*,
268 F.3d 910 (9th Cir. 2001) ........................................................ 37

*Internet Direct Response, Inc. v. Buckley*,
No. 09-CV-1335, 2011 WL 835607 (C.D. Cal. Mar. 7, 2011) ................................................................................ 21, 40

*Jensen v. EXC, Inc.*,
82 F.4th 835 (9th Cir. 2023) .................................................. 55, 56

*Jespersen v. Zubiate-Beauchamp*,
114 Cal. App. 4th 624, 7 Cal. Rptr. 3d 715 (2003) ...................... 57

*In re Kirsh*,
973 F.2d 1454 (9th Cir. 1992) ................................ 29, 30, 38, 39

*Kloke v. Pongratz*,
101 P.2d 522 (Cal. Ct. App. 1940) .............................................. 42

*Knight v. Aqui*,
  966 F. Supp. 2d 989 (N.D. Cal. 2013)............................................. 28

*Kolar v. Donahue, McIntosh & Hammerton*,
  145 Cal. App. 4th 1532, 52 Cal.Rptr.3d 712 (2006)..................... 57

*Levald, Inc. v. City of Palm Desert*,
  998 F.2d 680 (9th Cir. 1993)........................................................... 43

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
  791 F.2d 1356 (9th Cir. 1986)........................................................ 55

*Love v. The Mail on Sunday*,
  489 F.Supp.2d 1100 (C.D. Cal. 2007)........................................... 42

*M/V Am. Queen v. San Diego Marine Constr. Corp.*,
  708 F.2d 1483 (9th Cir. 1983)........................................................ 65

*Mabe v. San Bernardino Cnty.*,
  237 F.3d 1101 (9th Cir. 2001)........................................................ 37

*Mao-Mso Recovery II LLC v. Mercury Gen.*,
  No. 2:17-CV-2525, 2021 WL 6102913 (C.D. Cal.
  Nov. 29, 2021), *aff'd*, No. 21-56395, 2023 WL
  1793469 (9th Cir. Feb. 7, 2023) ................................................... 22

*Mattco Forge, Inc. v. Arthur Young & Co.*,
  5 Cal.App.4th 392, 6 Cal.Rptr.2d 781 (1992) .............................. 57

*Mindy's Cosmetics, Inc. v. Dakar*,
  611 F.3d 590 (9th Cir. 2010) .................................................. 57, 63

*Moncada v. W. Coast Quartz Corp.*,
  782, 164 Cal. Rptr. 3d 601 (Ct. App. 2013)................................. 37

*Nemirofsky v. Seok Ki Kim*,
  523 F. Supp. 2d 998 (N.D. Cal. 2007)........................................... 33

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
  210 F.3d 1099 (9th Cir. 2000)........................................................ 37

*Noble v. Sears, Roebuck & Co.*,
  109 Cal. Rptr. 269 (Cal. Ct. App. 1973) ................................. 28, 30

*Novato Fire Prot. Dist. v. United States*,
  181 F.3d 1135 (9th Cir. 1999).................................................. 37, 44

*Obrey v. Johnson*,
  400 F.3d 691,701 (9th Cir. 2005).................................................... 55

*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss
  & Karma, Inc.*,
  728 P.2d 1202 (Cal. 1986)................................................................ 59

*Park v. Bd. Of Trustees of Cal. State Univ.*,
  393 P.3d 905 (Cal. 2017)...................................................... 59, 60, 62

*Perry v. Newsom*,
  18 F. 4th 622 (9th Cir. 2021) ......................................................... 45

*Pharmacia Corp. v. Alcon Lab'ys, Inc.*,
  201 F.Supp.2d 335 (D.N.J. 2002)................................................... 20

*Rapid Funding Group, Inc. v. Keybank Nat. Ass'n.*,
  No. 07-CV-1348, 2009 WL 2878545 (D. Or. 2009).................... 41

*Responsible Citizens v. Superior Court*,
  20 Cal. Rptr. 2d 756 (Cal. Ct. App. 1993) ................................... 33

*RLI Ins. Co. v. Langan Engineering, Environmental
  Surveying & Landscaping Architecture, D.P.C.*,
  No. 19-17547 (9th Cir. Jan. 25, 2021) (unpublished) .................. 60

*Rock River Communs., Inc. v. Universal Music Grp.,
  Inc.*,
  745 F.3d 343 (9th Cir. 2014) ......................................................... 63

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012).................................................... 67, 68

*Ruvalcaba v. City of Los Angeles*,
  64 F.3d 1323 (9th Cir. 1995)......................................................... 65

*S.E.C. v. Am. Capital Investments, Inc.*,
    99 F.3d 1146 (9th Cir. 1996) ......................................................... 21

*San Francisco Brewing Corp. v. Bowman*,
    343 P.2d 1 (Cal. 1959) .................................................................. 40

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ......................................................... 63

*Schrader v. Roach*,
    No. 01-20-00183-CV, 2022 WL 2203210 (Tex.
    App.—Houston [1st Dist.], Jun. 21, 2022, pet. denied) ............... 46

*In re Segovia*,
    346 F. App'x 156 (9th Cir. 2009) ................................................. 34

*Selling v. Radford*,
    243 U.S. 46 (1917) ....................................................................... 48

*In re Shaver Lakewoods Dev. Inc.*,
    2016 WL 7188660 (B.A.P. 9th Cir. Nov. 29, 2016) .................... 34

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg.
    Co.*,
    425 P.3d 1 (Cal. 2018) ................................................. 23, 25, 35, 68

*Smiley v. Director*,
    984 F.2d 278 (9th Cir. 1993) ......................................................... 33

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ....................................................... 49

*Spokane Indian Tribe v. United States*,
    972 F.2d 1090 (9th Cir. 1992) ................................................. 19, 20

*Stanley v. Richmond*,
    41 Cal. Rptr. 2d 768 (Cal. Ct. App. 1995) ................................... 29

*Thayer v. Kabateck Brown Kellner LLP*,
    143 Cal. Rptr. 3d 17 (Cal. Ct. App. 2012) ................................... 63

*U.S. v. Sine*,
    493 F.3d 1021 (9th Cir. 2007) ....................................................... 66

*United States v. Basye*,
  410 U.S. 441 (1973) ....................................................... 42

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ....................................................... 33

*Weaving v. City of Hillsboro*,
  763 F.3d 1106 (9th Cir. 2014) ...................................... 54

*White v. Western Title Ins. Co.*,
  710 P.2d 309 (Cal. 1985) ........................................ 59, 62

*Wilhelm v. Pray, Price, Williams & Russell*,
  231 Cal. Rptr. 355 (Cal. Ct. App. 1986) ..................... 29

*Wyatt v. Terhune*,
  315 F.3d 1108 (9th Cir. 2003) ...................................... 65

*In re Yagman*,
  38 F.4th 25 (9th Cir. 2022) .......................................... 48

## Statutes

United States Code
  Title 15, Section 1119 .................................................. 52
  Title 15, Section 1121(a) ............................................. 52
  Title 28, Section 1291 .................................................. 52
  Title 28, Section 1331 .................................................. 52
  Title 28, Section 1332 .................................................. 52
  Title 28, Section 2201(a) ............................................. 19

California Civil Code
  Section 1624 ............................................................... 40
  Section 1667 ............................................................... 23
  Section 2224 ............................................................... 39

California Code of Civil Procedure
  Section 338(d) ............................................................ 43
  Section 343 ................................................................. 43
  Section 425.16(b)(1) .................................................... 62

California Corporations Code
    Section 17704.06(e)........................................................ 43
    Section 17707.07(2)(b)................................................... 43

California Probate Code
    Section 16004
    ........................................... 18, 25, 26, 28, 29, 30, 39, 45, 50, 53, 57

## Other Authorities

California Rules of Professional Conduct
    Rule 1-100 ............................................................... 23, 30
    Rule 3-300 ................................................... 23, 25, 34, 64

Federal Rules of Appellate Procedure
    Rule 46.......................................................................... 48

Judicial Council of California Civil Jury Instructions
    (2022 ed.), CACI No. 3430 ........................................... 63

Texas Disciplinary Rules of Professional Conduct
    Pmbl. 15 ........................................................................ 47

Texas Rules Of Disciplinary Procedure
    Section 17.03 ................................................................ 47

# INTRODUCTION

This appeal arises from the district court's final judgment incorporating its summary judgment ruling in favor of Plaintiff Schrader Cellars ("**Cellars**") against Defendant Randy Roach ("**Roach**") and jury verdict on Cellars' breach of fiduciary duty claim. The underlying dispute involves claims by Roach, an attorney, of ownership in the assets and equity of his former client, Cellars, based on an oral agreement he claimed he made with Cellars' founder Fred Schrader, who Roach also represented.

The district court properly granted summary judgment on the parties' competing requests for declaratory relief as to Cellars' ownership. Cellars proved ownership through undisputed written evidence of right, title, and interest to equity and assets in the form of business records and publicly filed documents showing its operations, membership, and trademark registrations since the company was formed over 25 years ago. In contrast, Roach's ownership claims rely on an alleged oral agreement with his clients that is legally unenforceable under California law.

At trial, the district court correctly found that Roach breached his fiduciary duty as a matter of law because he admitted to entering into an oral agreement with his clients without making the disclosures required by California's attorney ethics rules, and failed to rebut the statutory presumption of undue influence. And while the jury found that Cellars was harmed by Roach's breach and that the claim was not

1

time-barred, it found that Roach's affirmative defense of "litigation privilege" applied and thus did not reach the question of damages. While there was no evidence at trial that Cellars' breach of fiduciary duty claim arose out of statements Roach made in litigation, Roach relied on his own unadmitted pleadings from a separate litigation to argue that the defense should apply.

Cellars cross-appeals that error because Roach failed to produce evidence of the defense and because Cellars being put on notice of Roach's breach of fiduciary duty through his statements in another lawsuit cannot as a matter of law immunize Roach's underlying conduct under the litigation privilege. Cellars thus respectfully requests the Court affirm the district court's summary judgment, but reverse the final judgment as to the defense of "privilege," and remand for a new trial limited to Cellars' damages and equitable relief.

## STATEMENT OF THE CASE

## I.    Undisputed Factual Background

### A.    History of Undisputed Ownership of Schrader Cellars

This case concerns title and ownership of Appellee Schrader Cellars, LLC and its assets, including its intellectual property and contractual rights. Fred Schrader formed Cellars as a California limited liability company in 1998. 4-SER-815. Since that time, Cellars has produced, bottled, and sold wines under the "Schrader Cellars" label, including the wine at the center of this dispute, "Schrader Cellars RBS." *See* 4-SER-787 ¶ 17; 5-SER-852; 5-SER-860-84; 3-SER-371; 5-ER-953. Cellars owns registered trademarks for all of its labels, including "RBS," and has continuously used those marks in commerce since the early 2000s. 6-ER-1160-1184.

Cellars' labels earned several 100-point Robert Parker scores and ultimately became the highest-rated Cabernet Sauvignon portfolio in America. From Cellars' founding in 1998 until its sale in 2017, Fred Schrader held 99% of Cellars' shares, and a non-profit, Fairchilds Fine Art, Inc., held the remaining 1%. 4-SER-811-13; 4-SER-817-43; 4-SER-845. On June 16, 2017, Cellars was acquired by Franciscan Vineyards (n/k/a) TPWC, Inc., a subsidiary of Constellation Brands, Inc.—Cellars' current owner. *See* 5-ER-953, ¶ 11. Cellars requested declaratory judgment affirming its ownership to the exclusion of Appellant Robert M. Roach, who claimed he was the rightful owner.

**B.     Roach's Claim Arises Out of an Oral Agreement for Legal Representation**

Roach began acting as Cellars' attorney around the year 2001. At that time Roach was already a close friend and attorney of Cellars' then-owner Fred Schrader. 5-ER-936. Having represented Fred individually since 1997, in 2001 Roach agreed that his legal work for Fred would extend to Fred's businesses, including Cellars. 5-ER-936; 3-SER-390-91; 3-SER-320; 3-SER-311-12. Because Roach never drafted a written engagement agreement, the precise terms of the representation are dependent on Fred and Roach's memory of their oral agreement from over 20 years ago. 3-SER-318-20; *see also* Br. 13.

But certain aspects are not disputed. Roach, an attorney based in Texas, was interested in becoming a member of the prestigious Napa Valley Vintners' Association. 3-SER-301-02; 3-SER-309-10; 3-SER-373-74. Both Roach and Fred acknowledge that their handshake agreement, including the agreement for legal representation, was part of a larger effort for Roach to become involved in the California wine industry. *Id.* Roach would provide legal work "as needed" to Fred and his California wine companies, including Cellars. 3-SER-325-26; *see also* 3-SER-390-92; 3-SER-444. Roach would also contribute up to $150,000 for wine production over a three-year period. 3-SER-390. In exchange, Roach would be repaid any money he contributed with interest, and would receive 15 cases of

valuable Cellars wine per year. 3-SER-276-78; 3-SER-388-90; 3-SER-293. Fred would include Roach's name on one of the Cellars labels. 3-SER-302; 4-SER-601.

Fred and Roach's subsequent conduct was consistent with these undisputed terms. Fred named one of Cellars' wines "RBS," with the "R" standing for Roach, the "B" for Cellars' winemaker Thomas Brown, and the "S" for Fred Schrader.[1] 5-ER-1061; 3-SER-301-02. Between October 2001 and April 2003, Roach sent three checks, made out to "Schrader Cellars," for a total amount of $135,000. 4-SER-587; 4-SER-589; 10-ER-1807. Cellars deposited the checks into its bank account and bought grapes used for wine. 3-SER-279-82.

Cellars repaid Roach's $135,000 contribution, with interest. On December 1, 2005, Cellars paid Roach $100,000. 4-SER-591. On December 13, 2010, Cellars sent Roach another $50,000 check with the notation "final payment loan." 4-SER-736. Roach agreed these payments were full repayment of his prior capital contributions plus interest in the amount of $15,000. 3-SER-347-48; 3-SER-393.

## C. Roach's Legal Work for Fred and Cellars Between 2001 and 2016

It is also undisputed that Roach performed various legal services for both Fred and Cellars from 2001 until 2016 as part of the agreement. *See* 3-SER-416. For example, in January 2003, Roach filed a pro hac vice application to appear on

---

[1] Fred extended such an honor over the years to other individuals such as his wife Carol, who never claimed it meant they owned the wine. 12-ER-2121-22.

Cellars' behalf in the Northern District of California. 3-SER-466; 3-SER-486-89; 9-ER-1764. A month later, Roach attended a mediation in San Francisco "representing [] Cellars" to negotiate a settlement of the dispute. 3-SER-312; 3-SER-455, ¶ 2; 3-SER-545.

In October 2003, Roach defended Fred's third-party deposition in Napa County Superior Court. 5-ER-936; 3-SER-517; 3-SER-527; 3-SER-540-43. In March 2004, Roach assisted Cellars with obtaining a liquor license identifying Cellars as the owner of the Schrader RBS wine. 4-SER-699; 4-SER-702-03. In 2005, Roach advised Fred in retaining California appellate counsel for a partnership dispute. 5-ER-936. In 2009, Roach provided legal advice regarding a trademark dispute Cellars filed in the Northern District of California. *Id.*

Roach's representation continued after he was completely repaid by Cellars in 2010. That year, Roach assisted Fred and Fred's separate company, Boar's View, "in connection with the dissolution of a partnership interest." 5-ER-936-37. In 2012, Roach "assisted Fred in a dispute over a large purchase of Schrader wine by a major collector." *Id*. And in 2016, Roach again advised Fred and Boar's View in connection with a partnership dispute in California. *Id.*; 3-SER-288-89. As Roach and Fred agree, that 2016 representation turned out to be the last, and their attorney-client relationship ended after Roach abruptly withdrew. *Id.*; 6-ER-1195.

Over the years, Roach held himself out as Cellars' "outside general counsel." 3-SER-524; 3-SER-415-16. Roach never sent Fred or Cellars a fee invoice for his legal services. 5-ER-911; 3-SER-285-86; 3-SER-293; 3-SER-311; 3-SER-320-21; 3-SER-352-53; 3-SER-390-91. Roach did receive 15 to 17 cases of the highly acclaimed Schrader Cellars wine per year in exchange for "taking care of all of [Fred's] legal situations." 3-SER-285; 3-SER-325; 3-SER-394-95. When Roach's legal representation ended in 2016, so did the shipments of wine. 3-SER-288-89.

Despite having parted ways over a year earlier, Fred emailed Roach on the day of Cellars' sale, stating: "YO RANDY WELL BIG NEWS HERE! I HAVE SOLD SCHRADER TO CBI THE OTHER OWNER OF TOKALON VINEYARD ....IT'S BEEN A GREAT RUN BUT TIME FOR ME TO RELAX LIFE IS GOOD." 4-SER-675. Roach responded three days later, writing: "Yo Fred Congratulations; that's absolutely incredible news!! So glad you and Carol are being rewarded for the excellence you achieved with Schrader Cellars! Can't wait to hear everything! So when and where is the party???." *Id.* The two did not talk again until 15 months later, after Roach saw reports that Fred had sold Cellars for millions. 3-SER-368. It was then that Roach decided to sue his former best friend and client in his hometown of Houston, Texas.

### D. Roach Asserts His Agreement to Provide Legal Services Conferred Ownership Rights in his Client's Assets.

In September 2018, Roach filed an "Original Petition" in Texas state court, captioned "RR v. FHS." "RR" asserted conversion and related claims based on his claimed ownership interest in an unnamed LLC. 4-SER-8593. In April 2019, Roach amended the lawsuit to name himself as plaintiff and Fred Schrader and Constellation as defendants. 1-ER-1295. In Roach's amended petition, he asserted he was the 50% owner of a company called "Roach Brown Schrader, LLC," or "RBS, LLC," which owned assets included in the Cellars' 2017 sale. 7-ER-1295-97. But RBS LLC was a defunct entity that had been dissolved in 2013 after performing no business. 4-SER-714.

Farella Brown + Martel originally incorporated the entity on December 31, 2002. 10-ER-1803. Roach engaged that firm to do so and represent him individually. Br. 10; 3-SER-404-05; 3-SER-375; 4-SER-738-39; 4-SER-754-60. Farella drafted an operating agreement for the LLC, but it was never signed. 10-ER-1779-96; 10-ER-1797-1801. As Roach later admitted, Fred rejected the agreement. 3-SER-440-41; 3-SER-319-20; 3-SER-343-45; 10-ER-1794.

Yet, on April 1, 2003, Roach filed a statement of information listing himself and Fred as members and Fred as the registered agent. 3-SER-337-39; 3-SER-435-36; 3-SER-438-40; 4-SER-734. Fred was unaware Roach did so. 3-SER-284. The next year Roach used the entity to apply to the Napa Valley Vintners' Association,

stating that the LLC owned a winery called "RBS." 4-SER-677-79. On April 1, 2004, the Association rejected Roach's application because RBS did not qualify as a "separate and distinct brand" from Cellars. 4-SER-712. RBS LLC conducted no further activity, held no votes, generated no income, and filed no tax returns. 3-SER-328; 3-SER-330; 3-SER-364-65; 3-SER-370; 4-SER-724-26.

In November 2013, Fred received from the California Franchise Tax Board a notice of suspension of RBS, LLC for failure to file tax returns. 4-SER-687-89. After receiving the notice, Fred emailed Roach and Thomas Brown and stated that he planned to dissolve the LLC, as it "se[rve]s no purpose now." 4-SER-691-95. While Roach acknowledged he received Fred's email, Roach testified that he intentionally chose not to respond. 3-SER-359-60. On December 19, 2013, Fred filed the notice of dissolution with the California Secretary of State. 4-SER-714.

### E. Roach Changes His Position to Claim Ownership of Cellars Itself.

Roach's ownership theory changed after LLC's dissolution surfaced in discovery. 4-SER-714. Thereafter, on January 24, 2020, Roach filed a Fourth Amended Petition in Texas suggesting for the first time that Roach was entitled to equitable ownership of Cellars itself. 7-ER-1337-38. Roach theorized that when Cellars deposited the checks that he made out to "Schrader Cellars" into its general bank account, Cellars had "commingled" his money, which conferred Roach an ownership interest. *Id.*

In response, Constellation moved to abate the Texas Litigation, asserting Cellars was an indispensable party. 4-SER-555. Roach responded to Constellation's motion stating "Roach hereby disavows any intent to acquire any ownership interest in [ ] Cellars" thus seeking denial of the motion because "Roach is not seeking an interest in Schrader Cellars," and "Schrader Cellars will not be prejudiced by being absent from this case." 11-ER-2153; 12-ER-2229-30; 12-ER-2444; 4-SER-567-68. The Texas court subsequently denied Constellation's motion in November 2020, holding Cellars was "neither a necessary nor indispensable party." 7-ER-1274.

In early 2021, Fred learned that Roach was telling former Cellars employees that Roach would own Cellars. 12-ER-2071. And on January 11, 2021, Roach filed a Fifth Amended Petition in Texas, in which he sought to "set aside, rescind, unwind, and cancel" the Cellars acquisition so that "legal and equitable ownership" of Cellars would be assigned to Roach. 6-ER-1210; 6-ER-1256. Because it had become clear that Roach was disputing Cellars' ownership to Cellars' employees, Cellars filed suit in the Northern District of California on February 26, 2021. As Fred testified at trial, the motive behind the California lawsuit was to clear the cloud over Cellars' title and to protect Fred's legacy as its founder. 12-ER-2071-73; 12-ER-2075-76.

## II. Procedural History

Cellars' First Amended Complaint included claims for declaratory relief, unjust enrichment, and breach of fiduciary duty. 6-ER-1106. Specifically, Cellars

sought declaratory judgment that all right, title, and interest to Cellars' assets were the sole property of Cellars without any liens or encumbrances; that Roach had no rights or title to Cellars' assets; that Roach had no rights to any SCHRADER mark; and that Roach had zero percent membership interest in Cellars. 6-ER-1118-19. Cellars also sought damages for Roach's breach of fiduciary duty in attempting to "acquire an ownership, possessory, and/or pecuniary interest in" Cellars without notifying Cellars, without giving Cellars the opportunity to seek the advice of independent counsel, and without obtaining its written consent. 6-ER-1128-29.

Roach asserted six counterclaims: (i) cancellation of the "RBS" trademark due to "fraud on the United States Patent and Trademark Office," (ii) cancellation of Cellars' other trademarks; (iii) declaratory judgment that Roach possessed ownership rights in RBS and Cellars; (iv) declaratory judgment that Cellars was equitably estopped from denying Roach's ownership in RBS; (v) declaratory judgment that Cellars was equitably estopped from denying Roach's ownership in Cellars; and (vi) equitable accounting. 4-ER-1012-32.

## A. The District Court Grants Cellars' Motion for Summary Judgment regarding Declaratory Relief of Ownership

The parties filed cross-motions for summary judgment. Cellars moved on its declaratory judgment claims and Roach's counterclaims, which were all premised on an alleged oral agreement. As Cellars' summary judgment evidence showed, the only entity that ever produced, marketed, and sold the Schrader RBS wine was

Cellars. 5-ER-953; 3-SER-331-32. Similarly, Cellars was the only entity that ever recognized any income, revenue, or profits related to Schrader RBS wine on its tax returns. 4-SER-724-26; 7-SER-913; 7-SER-929. Cellars also held the contract to purchase the grapes used to make its wine, submitted all federal and state licenses and registrations, and registered, defended, and used the Schrader RBS mark in commerce. 6-ER-1160-1184; 4-SER-766-68; 4-SER-782; 4-SER-784-93; 5-SER-848-58; 5-SER-860-84; 5-SER-885-92. Roach filed a cross motion for summary judgment asserting his version of an oral agreement, which Cellars contested as time-barred and unenforceable under California law.

On December 16, 2022, the district court granted summary judgment declaring that Cellars, not Roach, owned all of the assets at issue. 1-ER-75. The court also held Roach's counterclaims were premised on an oral agreement seeking ownership adverse to a client that violated California law. 1-ER-30. The court also found Cellars presented sufficient evidence of Roach's breach of fiduciary duty, including Cellars' actual injury during the limitations period. 1-ER-106. After further briefing, the court granted Cellars summary judgment on Roach's trademark cancellation counterclaims and denied his motion for reconsideration. 1-ER-62.

### B. Trial Proceeds on Cellars' Breach of Fiduciary Duty Claim

The parties proceeded to a jury trial on Cellars' claim for breach of fiduciary duty. Roach requested an instruction—after the court's deadline—that "[o]ne who

files a lawsuit in a court of law is immune from liability for having done so." 3-ER-335. Cellars objected, 2-SER-187, and the parties submitted additional briefing. 1-ER-60; 10-ER-1859; 2-SER-166. The court's original jury instructions did not include any "privilege" instruction. 1-SER-40.

The day before trial, the court issued Amended Intended Jury Instructions including an instruction titled "Privilege," providing:

> A person who files a lawsuit is immune from liability simply for filing the lawsuit. However, a person is not immune from liability from other actions. You must decide if the gravamen – or heart – of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas lawsuit.

1-SER-35.

Cellars objected on the grounds that no instruction or question was warranted as a matter of law, the instruction misstated the law, and also proposed an alternative instruction. 2-SER-163-64; 11-ER-1883-84. The court overruled Cellars' objections and gave the privilege instruction and question when the trial commenced. 1-ER-55.

## C. The Trial Evidence Established Roach's Unethical Agreement Harmed Cellars

The only fact witnesses at trial were Roach and Fred. *See* 11-ER-2001, 12-ER-2186. Fred testified at trial that Roach represented both him and Cellars, that the annual payment of 15-17 cases of wine was a retainer for Roach's legal services. 11-ER-2064. Fred further testified that Roach's effort to assert his ownership interest led to considerable attorney's fees that Fred agreed to cover for Cellars through a

loan. 11-ER-2130-31. Roach testified that Cellars was his former client, even listing Cellars as a "representative client" on his firm's website. 11-ER-2141-42. When asked why he had previously denied representing Cellars, Roach stated "I don't know." 11-ER-2142. Finally, Cellars presented evidence of its damages, detailing the attorney's fees and expenses incurred to clear title, which Cellars' expert testified were reasonable.

In defense, Roach called one witness, an expert who opined that the absence of a writing did not necessarily harm Cellars. No witness addressed Roach's defense of privilege, nor did Roach's counsel question Fred regarding the subject. After the close of evidence, Cellars filed a motion for judgment as a matter of law on Roach's affirmative defenses, asserting there was no legally sufficient basis for a jury to find for Roach on the defense of "privilege." 2-SER-157-159.

Before closing arguments, Roach's counsel submitted a proposed admitted exhibit list containing exhibits that had not been admitted into the record, including Roach's First Amended Petition in the Texas litigation (Ex. 601), which the court had excluded on Cellars' hearsay objection. 12-ER-2205-06. Roach also included the Texas court order denying Constellation's motion to abate (Ex. 648), and Cellars' First Amended complaint in the instant case. *See* 2-SER-134. Roach asserted the documents were relevant to his statute of limitation defense, and the court agreed to

take judicial notice of the pleadings over Cellars' objection. 13-ER-2364-71. The court then instructed the jury:

> The court has decided to accept as proved the fact that on April 22, 2019, Roach filed the document labeled as Exhibit 601. You must accept this fact as true. You need not accept the facts contained in the petition as true but merely that Roach made those allegations on that date.

1-SER-3; 13-ER-2376-77. Roach's attorneys then pointed to Roach's own pleadings to argue that Cellars' claim was based on Roach's filing of the Texas suit, and thus was privileged. 13-ER-2408-9-10.

### D.    The Jury Returned its Verdict Finding Liability.

On March 10, the jury returned a verdict finding (1) Roach's breach of fiduciary duty was a substantial factor in causing Cellars harm, and (2) Cellars' actual injury occurred within the limitations period. 2-ER-184-85. However, the jury answered "yes" to the special verdict question "[d]o you find that the gravamen—or heart—of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas lawsuit?" *Id*. Accordingly, they jury did not reach the sole remaining issue of damages. *Id*.

Cellars thereafter filed a supplemental motion for judgment as a matter of law again challenging the lack of legally sufficient evidence of any privilege defense and its effect on the concurrent bench trial the court had commenced to determine Cellars' equitable relief. 2-SER-144. The court denied Cellars' motions and ruled

the privilege defense barred Cellars' equitable relief, and entered final judgment. 1-ER-22-23. Cellars filed a renewed motion for judgment as a matter of law as to Roach's defense of "privilege" and for a new trial on the issue of damages and equitable relief. 2-SER-98. Roach also filed a series of post-trial motions. *See* 2-ER-140, 2-ER-150, 2-ER-161. The district court denied both parties' motions. 1-ER-2. On July 7, 2023, Cellars timely filed a notice of cross-appeal. 10-ER-1815.

# SCHRADER CELLARS' ANSWERING BRIEF

## (CASE NO. 23-15862)

## STATEMENT OF ISSUES

1. Did the district court properly determine on summary judgment that Cellars presented undisputed evidence of its record title and ownership of its equity and assets?

2. Did the district court properly determine on summary judgment that an attorney's reliance on an oral agreement for ownership in his client was unenforceable?

## STATUTORY PROVISIONS

The text of the pertinent statutes is set forth in the Statutory Addendum.

## SUMMARY OF ARGUMENT

The district court correctly granted summary judgment in favor of Cellars on the parties' competing requests for declaratory relief regarding ownership and possession of Cellars and its assets. As Cellars' undisputed summary judgment evidence showed, Cellars maintained uninterrupted record title and ownership of its equity and assets. Roach not only failed to contest that evidence, he does not even mention it. Instead, Roach claims he was entitled to ownership of Cellars based on his ever-evolving interpretation of a decades-old oral agreement with his clients.

The district court correctly found that any purported agreement was governed by California Rule of Professional Conduct ("CRPC") 3-300 governing business transactions between attorneys and clients. Roach owed his clients a duty under

CRPC 3-300 in negotiating a transaction that included terms regarding an ownership interest in and legal representation of his clients. There was no genuine issue of material fact that Roach failed to either document the agreement in writing or to advise his clients to seek independent legal advice. Beyond that, Roach made no attempt to carry his burden to demonstrate that the terms were fair and reasonable and disclosed in writing to his clients. Accordingly, the court correctly found California Probate Code § 16004 barred enforcement as a matter of law.

## STANDARD OF REVIEW

This Court reviews "a district court's grant of summary judgment *de novo,* and may affirm on any basis supported by the record." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009) (citation omitted). Viewing the evidence in the light most favorable to the nonmoving party, the Court determines "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (citing *Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc)). "The party opposing summary judgment must direct the court's attention to specific, triable facts." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1059 (9th Cir. 2012) (citation and internal alterations omitted). If the non-movant fails to do so, this Court should affirm. *Gordon*, 575 F.3d at 1058.

# ARGUMENT

## I. The District Court Correctly Found Cellars Presented Record Title and Ownership of its Equity and Assets.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A district court properly grants declaratory relief when doing so resolves a substantial controversy between the parties by declaring their rights under the law. *Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1092 (9th Cir. 1992).

Here, the district court declared:

a. There were no liens or encumbrances on any of Schrader Cellars, LLC's physical assets or intellectual property when Schrader Cellars, LLC became a wholly-owned subsidiary of Franciscan Vineyards (n/k/a) TPWC, Inc.;

b. All right, title, and interest to the claimed assets are the sole property of Plaintiff Schrader Cellars, LLC, including all physical assets, inventory, and intellectual property associated with Schrader Cellars and the SCHRADER marks;

c. Roach has no rights or title to Plaintiff's assets;

d. Roach has no registered or common law rights to any SCHRADER mark, including the Schrader RBS mark; and

e. Roach has zero percent membership interest in Schrader Cellars, LLC.

1-ER-91; 1-ER-104. Roach does not even mention the court's declaration or Cellars' uncontroverted evidence.

From Cellars' incorporation to present, it has maintained record ownership of its shares. 4-SER-815; 4-SER-811-13; 4-SER-817-43; 4-SER-845. Similarly, Cellars' tax returns reflect such membership as well. *See* 7-SER-913; 7-SER-916. Cellars exclusively and consistently paid all taxes associated with the sale and production of its wines. *Id*. Its members received K-1 tax forms for their membership interests every year. 7-SER-924; 7-SER-943-48.

Cellars was also, at all times, the title owner of physical property and the contracting party and the holder of registered licenses for operation, distribution, and sale of its wines. 6-ER-1160-1184; 4-SER-766-70; 4-SER-782; 4-SER-784-93; 5-SER-848-58; 5-SER-855-79; 5-SER-886-92. Cellars also held a written grape purchase contract for its wine production, which was terminated in 2021. 4-SER-784; 7-SER-953. Cellars is the only registered owner of its trademarks, which have never been contested, and Cellars has sold its labels in commerce over the past 22 years while defending against infringers. 6-ER-1160-1184; 4-SER-766-70.

The foregoing records are precisely the types of evidence courts use to determine ownership of corporate equity and assets. *See, e.g., Pharmacia Corp. v. Alcon Lab'ys, Inc*., 201 F.Supp.2d 335, 383 (D.N.J. 2002) ("[T]he very purpose of publication . . . is to allow '[a]ny person who believes that he would be damaged by

the registration of a mark' to oppose it."); *Communist Party v. 522 Valencia, Inc.*, 41 Cal. Rptr. 2d 618, 625 (Cal. Ct. App. 1995) (rejecting claimed owner's declaratory judgment of ownership and constructive trust where "none of the incorporating documents, official records or documentation pertaining to the two corporations indicated that they were founded by the Party or in any way controlled by it, or that the Party owned any of the corporations' assets.").

Rather than addressing Cellars' undisputed evidence of record ownership, Roach instead asserts as the exclusive basis for his contrary interest an oral agreement and his $135,000 "investment" from over 20 years ago. Roach completely ignores that Cellars returned that investment in full, with interest, in 2010. 4-SER-736. And even if the money had not been repaid, Roach's providing funding alone does not support a legal interest in Cellars or its corporate assets absent *some* evidence of legal title. As the court held in *Communist Party v. 522 Valencia, Inc.*,[2] providing funding to a corporation "does not provide sufficient evidence that the party owned or was entitled to possession of all of the corporation's property and assets." 41 Cal. Rptr. 2d at 625; *see also Internet Direct Response, Inc. v. Buckley*, No. 09-CV-1335, 2011 WL 835607, at *8 (C.D. Cal. Mar. 7, 2011) (holding while

---

[2] *See also S.E.C. v. Am. Capital Investments, Inc.*, 99 F.3d 1146 (9th Cir. 1996) ("The party for whom a constructive trust is created either has legal title or was *intended* to have legal title.") (citing *522 Valencia,* 41 Cal. Rptr. 2d at 624).

"in some circumstances profits derived from wrongfully retained property can be subject to a constructive trust[,] [t]hat does not mean that Plaintiff is excused from showing that it has an ownership interest in the property generating the profit.").

Roach presented no evidence of legal title to anything—in fact, he still does not even identify any specific assets of Cellars he claims to own. Roach cannot overcome Cellars' documented ownership as a matter of law. *See 522 Valencia,* 41 Cal. Rptr. 2d at 624-25 ("Rather than arguing that it had actual legal title to the corporations' assets, respondent asserts that '[i]t is reasonable to infer' from evidence in the record that it was *entitled* to ownership of these assets"); *see also Mao-Mso Recovery II LLC v. Mercury Gen*., No. 2:17-CV-2525, 2021 WL 6102913, at *5 (C.D. Cal. Nov. 29, 2021), *aff'd*, No. 21-56395, 2023 WL 1793469 (9th Cir. Feb. 7, 2023) ("Plaintiffs had failed to show their legally protected interest in the J.R. claim because they had failed to show any ownership interest through the assignment chain.").

## II. The District Court Correctly Determined Roach Could Not Prevail on His Claimed Oral Agreement as a Matter of Law.

### A. Roach Does Not Dispute the District Court's Choice of Law Analysis

The district court concluded that Roach's claimed oral agreement for California assets and equity in a California LLC was not enforceable under California law. 1-ER-94-99. The court considered evidence of Roach's

representation of Cellars and Fred in California, noted that CRPC 1-100 governs the activities of lawyers from other jurisdictions "while engaged in the performance of lawyer functions in [California]," and then applied choice-of-law principles, including California's interest in the enforcement of oral agreements and in protecting its citizens in transactions governed by CRPC 3-300. *Id.* (citing *Fletcher v. Davis*, 33 Cal. 4th 61, 67 (Cal. 2004)). Notably, Roach does not contest this choice of law analysis either.

### B.     Roach Admitted He Violated Rule 3-300.

A transaction giving an attorney a pecuniary interest in or adverse to his client is only enforceable under California law if it complies with CRPC 3-300. *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 425 P.3d 1, 9 (Cal. 2018) ("an attorney contract that has as its object conduct constituting a violation of the Rules of Professional Conduct is contrary to the public policy of this state and is therefore unenforceable."); *see also* Cal. Civ. Code § 1667. CRPC 3-300[3] provides that an attorney "shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client," unless three requirements have been satisfied: (1) the transaction, and its terms, must be fair and reasonable to the client, fully disclosed in writing in a manner understood by the client; (2) the client must be advised, in writing, the he or she may

---

[3] Replaced by identical CRPC 1.8.1, effective November 1, 2018.

seek advice of an independent lawyer and he or she must be given reasonable opportunity to seek such advice; and (3) the client must consent to the terms of the transaction in writing.

While Roach asserts he entered into a business transaction with his client, Fred, and that he knowingly acquired an interest either in or adverse to Cellars, Roach admits the only "agreement" he ever had was oral. 3-SER-354; 3-SER-397-98; 3-SER-410-11; 3-SER-317-18; 3-SER-340-42; 3-SER-349. Roach had a draft Operating Agreement prepared for RBS LLC, but he testified Fred rejected it. 3-SER-400-010; 3-SER-319-20; 3-SER-343-44; 10-ER-1794. And while Roach claimed his oral agreement changed many times over many years, he admitted none of the modifications or "novations" were in writing. 3-SER-400-01 (oral partnership); 3-SER-412-14 (oral licensing agreement); 3-SER-319-21; 3-SER-343-45 (oral operating agreement). Roach also admitted that he never advised either Fred or Cellars to seek the advice of an independent lawyer, and certainly never did so in writing. 5-ER-943-44; 3-SER-427-31; 3-SER-334.

While the failure to even meet one requirement of CRPC 3-300 renders the agreement unenforceable, the undisputed facts and Roach's own admissions establish that he failed all three. *BGJ Assocs. v. Wilson*, 7 Cal. Rptr. 3d 140, 146-47 (Cal. Ct. App. 2003) (holding a business transaction with a client by oral agreement violates CRPC's written disclosure requirement).

## C.    Roach Also Violated the California Probate Code.

CRPC 3-300 violations constitute a breach of fiduciary duty under its "statutory counterpart," California Probate Code § 16004, which creates a presumption that a transaction between a trustee and beneficiary whereby the trustee obtains an advantage from the beneficiary is the product of undue influence and a violation of the trustee's fiduciary duties. Cal. Probate Code § 16004. "This presumption is a presumption affecting the burden of proof." *Id*. In the context of Rule 3-300 violations, California courts explain that § 16004 "creates a presumption that transactions between an attorney and client, by which the attorney obtains an advantage, are a breach of the attorney's fiduciary duty and are the product of undue influence." *BGJ*, 7 Cal. Rptr. 3d at 149 ; *see also Fair v. Bakhtiari*, 125 Cal. Rptr. 3d 765, 778 (Cal. Ct. App. 2011).

Once this presumption is created, "the burden of proof is always upon the attorney to show [(1)] that the dealing was fair and just, and [(2)] that the client was fully advised." *Fair v. Bakhtiari*, 125 Cal. Rptr. 3d 765, 778 (Cal. Ct. App. 2011). If the attorney fails to rebut the presumption, the transaction constitutes a breach of the attorney's fiduciary duty and the contract is unenforceable. *Id.* at 777-78.

Roach admitted he violated CRPC 3-300, which on its own renders the agreement unenforceable. *See Sheppard,* 425 P.3d at 9. Roach also breached his fiduciary duty unless he could establish that Cellars and Fred were fully advised, and

the terms of the transaction were fair and just as required by Section 16004 of the Probate Code. Roach did not even attempt to meet his burden, let alone "direct the court's attention to specific, triable facts" as required to avoid summary judgment. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009) (quoting *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001)).

Nor could Roach do so. Even on appeal, Roach does not claim to have ever fully advised Cellars or Fred of the terms in writing or to seek independent counsel. Instead, Roach was the only party with independent counsel, who was advised by Farella about the risks of any deal involving RBS LLC. *Id*.; 3-SER-304-05; 4-SER-738-39; 4-SER-754-60. Roach admitted despite receiving that advice he never transmitted it to his clients, much less suggest they get counsel of their own. 3-SER-354; 5-ER-943-44; 3-SER-429-31; 3-SER-427-28; 3-SER-334.

Roach also never presented any evidence, or even argument, to the district court that the terms of his version of the oral agreement were fair or just to Cellars or Fred. According to Roach, by contributing $135,000 to Cellars, he held the benefits of both a lender and an equity holder. 3-SER-324-26; 3-SER-390. Roach claims he was entitled to full repayment with interest before any equity distributions, akin to a lender. 3-SER-276-78; 3-SER-388-90; 3-SER-293. But Roach also claims and he would also have the right to 50% of the profits of RBS wine in perpetuity,

and 15 to 17 annual cases of an exclusive, cult brand wine that was extremely valuable in the secondary market. 3-SER-388-90; 3-SER-393-97; 4-ER-669.

And while Roach admits his legal services were part of the deal, he claims he had the latitude to decide whether to provide those services or not. 3-SER-391-92. At most, Roach provided capital for purchasing grapes in two given years, whereas Cellars subsequently purchased all grapes as well as bottled, marketed, and sold the wine at its own expense forever since. And while Roach claims his equity in Cellars arose when Cellars deposited the checks he made out to Cellars in its own account, Roach does not identify what Cellars received in return, other than legal services— which he now contests on appeal. 3-SER-425-26; 3-SER-368-69.

Consistently ignoring the substance of the dispute, Roach argues for the first time on appeal that the transaction was fair because it was Fred's idea, although he does not point to what terms he is referencing. Br. 23. Even taking Roach's new self-serving claim as true, the case Roach cites, *Ferguson v. Yaspan*, held that who had the idea for the transaction is not dispositive under CRPC 3-300. 183 Cal. Rptr. 3d 83, 92 (Cal. Ct. App. 2014). Instead, the attorney must also "fully advise[]" his client, including to hire independent counsel with respect to the transaction, which the attorney did there, but Roach admits he did not do here. *Id.* at 87-88.

Roach did not even try in the district court to rebut the presumption of undue influence arising from his admitted violation of CRPC 3-300. And his belated effort

now is not supported by sufficient evidence, even had Roach preserved it. The district court thus properly found Roach's violation of CRPC 3-300 and failure to rebut the presumption of undue influence constituted a breach of fiduciary duty under Section 16004 of the Probate Code.

### D. The Undisputed Evidence at Summary Judgment and Trial Established Roach's Breach of Fiduciary Duty.

California law is clear that a violation of CRPC 3-300 and Section 16004 of the Probate Code is also a breach of fiduciary duty *unless* the attorney rebuts the presumption of undue influence. *See BGJ*, 7 Cal. Rptr. 3d at 149. Accordingly, Roach was not entitled to submit the question of breach of fiduciary duty to the jury. *See Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *see also Knight v. Aqui*, 966 F. Supp. 2d 989, 996-1000 (N.D. Cal. 2013) (determining on summary judgment that an attorney breached her fiduciary duty to her client by unlawfully misappropriating funds and holding that the question of an attorney's breach may be resolved as a matter of law where there is "no reasonable doubt as to whether the attorney's conduct fell below the standard of care").

Roach nevertheless argues the district court "automatically" found he breached his duty by violating the CRPC, which he claims was error. *See* Br. 27. But the California cases Roach cites merely stand for the general proposition that a technical violation of the CRPC alone does not prove a breach of fiduciary duty. *See* Br. 27 (citing *Noble v. Sears, Roebuck & Co.*, 109 Cal. Rptr. 269, 271-72 (Cal. Ct.

App. 1973), *Wilhelm v. Pray, Price, Williams & Russell*, 231 Cal. Rptr. 355, 359 n.5 (Cal. Ct. App. 1986), and *Stanley v. Richmond*, 41 Cal. Rptr. 2d 768, 783 (Cal. Ct. App. 1995)). Roach conspicuously ignores that the cases also make clear that "[t]he scope of an attorney's fiduciary duty may be determined as a matter of law based on the Rules of Professional Conduct which, 'together with statutes and general principles relating to other fiduciary relationships, all help define the duty component of the fiduciary duty which an attorney owes to his [or her] client.'" *Stanley*, 41 Cal. Rptr. 2d at 783. And that is what the district court properly found in applying the statutory framework—because the undisputed evidence established that Cellars was never fully advised and that the terms of the deal were not fair and reasonable, the presumed breach stood under California Probate Code § 16004. *See Fair*, 125 Cal. Rptr. 3d at 777-78.

In relying on *In re Kirsh*, 973 F.2d 1454 (9th Cir. 1992) to the contrary, Roach ignores this Court's key holdings. In *Kirsh*, a divided panel found in favor of the clients, holding that an attorney's loan was discharged in bankruptcy despite the clients' fraud. Yet, Roach cites the *per curiam* for the dicta that a CRPC violation "can be evidence of a breach of fiduciary duty, they do not, standing alone, prove the breach." Br. 27 (citing *Kirsh*, 973 F.2d at 1461).

But the Court did not interpret the civil remedy under Probate Code § 16004, but instead the repealed CRPC 5-101. *David Welch Co. v. Erskine & Tulley*, 250

Cal. Rptr. 339, 342 (Ct. App. 1988) (citing *Noble*, 109 Cal. Rptr. at 272). What's more, the attorney proved the terms "were fair, reasonable, and fully disclosed" to the clients, who consented in writing. 973 F.2d at 1456, 1461.

Unlike the attorney *Kirsh*, Roach not only admitted to violating CRPC 3-300, but he failed to rebut the presumption of undue influence under Probate Code § 16004. Having failed his burden both at summary judgment and at trial, the district court properly instructed the jury that Roach breached his fiduciary duty to Cellars.

### E. Roach's Reinvention of the Attorney-Client Relationship Does Not Undermine the District Court's Judgment.

Ignoring the district court's straightforward analysis, Roach attempts to sidestep his admitted violation of 3-300 by asserting that he never ***intended*** to represent Cellars, only Fred, and his intent is factual. Roach then points to his own failure to document the engagement in writing to dispute whether he was Cellars' attorney. Roach's arguments contradict both California law and the undisputed facts.

First, the CRPC applies to Roach's activities no matter who he claims to have represented at the time. As the district court observed, CRPC 1-100 is explicit that the Rules apply to "lawyers from other jurisdictions who are not members" and "govern the activities of lawyers while engaged in the performance of lawyer functions in this state." CRPC 1-100. Even Roach concedes that he was engaged in such "lawyer functions" at the time of the alleged oral agreement.

Roach testified when entering into the oral agreement, he and Fred "already had a preexisting relationship that was both legal and business." 3-SER-355. When asked if he had a legal relationship with Fred from "the relevant time period, spanning all the way back to 2001," Roach responded "exactly right." 3-SER-356. Roach admitted he had been Fred's lawyer since 1997. 5-ER-936. And Roach's agreement with Fred concerned expanding his legal advice to Fred's business activities including the production of the wine at issue. 5-ER-936; 3-SER-390-91; 3-SER-318-20; 3-SER-311-12; 3-SER-444. Roach thus admits he was "engaged in the performance of lawyers functions" for Fred at the time of the agreement, and thus the district court correctly found the CRPC applied.

Second, Roach also ignores that CRPC 3-300's plain terms apply to his conduct. CRPC 3-300 explicitly forbids "a business transaction with a client" or an attorney "knowingly acquir[ing] an ownership, possessor, security, or other pecuniary interest ***adverse to a client.***" Roach does not contest that at the time of the agreement he was Fred's attorney, the agreement was with his client Fred, and as part of the agreement he sought to obtain an ownership interest in assets adverse to Fred and his business Cellars. By Roach's own admissions at every level, Roach's conduct was governed by 3-300.

Third, Roach's renewed willingness to disclaim he represented Cellars contradicts the undisputed evidence.[4] The factual record is replete with Roach's own admissions that the deal he now seeks to enforce specifically included his representation of Cellars, not just Fred. 5-ER-936; 5-ER-959; 3-SER-319-20. Roach also filed an application for *pro hac vice* admission in the Northern District of California in 2003 attesting that he represented "Schrader Cellars LLC." 3-SER-466; 3-SER-486-89; 9-ER-1764. Roach also appeared at the mediation in the same case in which Cellars, not Fred, was the defendant. 3-SER-312; 3-SER-455, ¶ 2; 3-SER-545. Moreover, Roach frequently held himself out as outside general counsel for Cellars. 3-SER-524; 3-SER-415-17. And at trial, Roach could not explain why he claimed not to represent Cellars, or why, to this day, he still lists Cellars as a client on his website. 11-ER-2141-42.

Fourth, Roach's subjective intent is irrelevant to his legal duties to Cellars. "When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established *prima facie*." *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 980 P.2d 371, 379–80 (Cal. 1999). Moreover, giving legal advice to a principal about conducting a business inures to

---

[4] When Roach filed a declaration claiming that Cellars was not his client, the district court struck the declaration as fraudulent. 1-ER-97. Roach conspicuously does not mention or appeal that decision.

the benefit of the business. *Nemirofsky v. Seok Ki Kim*, 523 F. Supp. 2d 998, 1001-02 (N.D. Cal. 2007); *see also Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981). If the attorney appears in court on a party's behalf, the attorney owes a duty to that party regardless of his intent or loyalties elsewhere. *See Smiley v. Director*, 984 F.2d 278, 282 (9th Cir. 1993). Even the case Roach cites makes clear that whether duties are triggered under the CRPC is a "legal issue." *See Flatt v. Superior Court*, 885 P.2d 950, 953 (Cal. 1994).[5]

Fifth, Roach's admission that his claimed ownership arises out of an agreement for Cellars' legal representation triggers CPRC 3-300.[6] In asserting the terms of the oral agreement, Roach has maintained that "in accordance with his obligations under the agreement and business partnership with Schrader, Roach's

---

[5] *Flatt* did not hold that "the formation of an attorney-client relationship is a question of fact" as Roach claims, but instead held an attorney's duty to an existing client was "inviolate" and the attorney was barred as a matter of law from even giving advice that harmed an existing client's interest. 885 P.2d at 957. And California state courts consistently hold "the existence of an attorney-client relationship involves a question of law." *Glenn v. Hyundai Motor Am.*, No. 8:15-CV-2052, 2017 WL 11630379, at *4 (C.D. Cal. Dec. 13, 2017) (citing *Responsible Citizens v. Superior Court*, 20 Cal. Rptr. 2d 756, 766 (Cal. Ct. App. 1993)).

[6] Rule 3-300's "Discussion" reflects its application to retainer agreements future legal services when part of an agreement such as the one Roach maintains existed here. ("Rule 3-300 is not intended to apply to the agreement by which the member is retained by the client, unless the agreement confers on the member an ownership, possessory, security, or other pecuniary interest adverse to the client…. Rule 3-300 is intended to apply where the member wishes to obtain an interest in client's property in order to secure the amount of the member's past due or future fees.").

law firm of Texas lawyers provided additional valuable legal services in Texas to [Fred] Schrader and Schrader Cellars." 6-ER-1194. Roach also specifically testified that he represented Cellars as an attorney "pursuant to the LLC oral agreement." 3-SER-320.

While Roach maintains that Cellars must have been an existing client prior to the agreement for CRPC 3-300 to apply, the California Supreme Court has rejected that argument. Instead, 3-300 applies to retainer agreements for legal services "where the [attorney] wishes to obtain an interest in client's property.'" *Fletcher v. Davis*, 90 P.3d 1216, 64 (Cal. 2004). This Court has relied on *Fletcher* to invalidate attorney liens in retainer agreements for new clients when they fail to comply with rule 3-300. *See In re Shaver Lakewoods Dev. Inc.*, 2016 WL 7188660, at *5 (B.A.P. 9th Cir. Nov. 29, 2016) ("It is well-established that an attorney who secures payment of fees by taking a lien on the property of a client creates an 'adverse interest' and must comply with the ethical obligations in Rule 3-300."); *In re Segovia*, 346 F. App'x 156, 158 (9th Cir. 2009) (fee agreement in violation of Rule 3-300 was unenforceable).

Sixth, Roach's own admissions conclusively establish that regardless of when he claims to have represented Cellars, Roach indisputably breached duties to Cellars and Fred as existing clients each time the deal purportedly changed. For example, Roach's main theory of entitlement to Cellars' equity is that Cellars "commingled"

Roach's contributions. But it is undisputed that Roach represented Cellars by January 2003, two months before Cellars deposited Roach's March 2003 check. 3-SER-466; 3-SER-486-89; 9-ER-1764. But Roach admits he did not advise Cellars or Fred, even orally, that simply doing so would amount to "commingling." 5-ER-943-44; 3-SER-424-25; 3-SER-429-31.

Nor did Roach abide by CRPC 3-300 in the alleged subsequent "novations" of the deal, such as when Thomas Brown dropped out of the enterprise in March 2003, when Roach's annual wine increased from 15 to 17 cases in 2010, or when Roach and Fred supposedly agreed to reinvest profits back into the LLC. 3-SER-400-01 (oral partnership); 3-SER-412-14 (oral licensing agreement); 3-SER-319-21; 3-SER-343-45 (oral operating agreement). Roach owed duties to Fred and Cellars before, during, and after entering into the ever-changing oral ownership agreement—yet not once did he abide by CRPC 3-300.

Finally, Roach's suggestion that his own failure to obtain a written engagement agreement absolves him of his professional obligations flies in the face of basic ethics principles. *See, e.g.*, *Sheppard*, 425 P.3d at 9 (finding it would be "absurd" for a court to aid an attorney in enforcing a transaction prohibited by the CRPC). The presence of a written engagement agreement is not determinative of whether an attorney-client relationship exists and the undisputed facts and Roach's own admissions are more than sufficient here. *See Beery v. State Bar*, 43 Cal. 3d

802, 811–12, 739 P.2d 1289, 1293 (1987). It was Roach's duty, not his clients', to reduce the terms of his retainer or any other deal to writing and such failure was an indisputable breach.

## III. The District Court Correctly Concluded Roach Could Not Prevail on His Counterclaims.

All Roach's counterclaims sought a declaration Cellars could not establish its equity and assets. And the district court correctly found Roach could not present sufficient evidence in support of those claims as a matter of law. On appeal, Roach attempts to recast his declaratory judgment counterclaims as "non-contract" tort claims for (i) fraud, (ii) breach of fiduciary duties, and (iii) equitable estoppel." Roach asserts summary judgment was improper despite Roach's failure to present evidence in support of the claims in response to Cellars' motion. Br. 50. Roach also appears to challenge the district court's holding on Roach's motion for reconsideration, that Roach could not prevail on the claims even if he had timely tried. While it is difficult to ascertain the exact basis on which Roach seeks reversal, there are numerous paths for affirming.

First, the district court was not required to consider counterclaims that Roach did not plead. *Airwair Int'l LTD v. ITX USA LLC*, No. 19-cv-07641-SI, 2021 U.S. Dist. LEXIS 142908, at *2 (N.D. Cal. July 30, 2021). Roach did not plead claims for fraud, breach of fiduciary duty, or equitable estoppel, he pled declaratory judgment of ownership. Roach seeks to change the nature of those claims now, but

"when a claim is not raised below, it is not considered on appeal." *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1112 (9th Cir. 2001); *see also Crawford v. Lungren*, 96 F.3d 380, 389 n.6 (9th Cir. 1996).

Second, contrary to Roach's mischaracterization, Cellars motion expressly sought summary judgment on all of Roach's counterclaims because he could not prove them. 4-ER-703. Roach had the burden of persuasion and was required to present sufficient competent summary judgment evidence in response. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). A statement in Roach's summary judgment response that "Cellars cites no cases holding that the failure to create a partnership would defeat" his counterclaims is not sufficient to survive summary judgment. *Gordon*, 575 F.3d at 1058.

Third, the district court properly ruled in considering Roach's reconsideration motion that even had Roach pleaded claims for fraud, breach of fiduciary duty, or equitable estoppel (which itself is not an independent cause of action),[7] the outcome was the same. No matter the tort theory Roach termed his claims, he ultimately sought to enforce an oral agreement that is unenforceable as a matter of law. *See* 5-ER-1018-1032; *Novato Fire Prot. Dist. v. United States*, 181 F.3d 1135, 1140 (9th Cir. 1999).

---

[7] *See Moncada v. W. Coast Quartz Corp.*, 782, 164 Cal. Rptr. 3d 601 (Ct. App. 2013); *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 918 (9th Cir. 2001).

Finally, Roach ignores that the district court easily dispensed with Roach's alternative unpled theories on the merits in a written opinion to which he lodges no serious challenge. While Roach points to Cellars' alleged "false promises" regarding Roach's ownership interest and "holding Roach out" as a partner, Roach simply ignores that there must still be an agreement for ownership underlying the purported fraud or breach. It was Roach who had a duty to advise Cellars and Fred about the effect of the business transaction. Roach admitted he failed to do so, and cannot now weaponize his client's alleged representations regarding a transaction he had a duty to explain to them. And as the district court correctly found, Roach could not have reasonably relied on such promises or representation of a non-attorney. 1-ER-66.

Indeed, it is well-settled that "a legal opinion by a layman cannot constitute the basis of recovery for fraud" as a matter of law. *Agnew v. Foell*, 248 P.2d 758, 760 (Ct. App. 1952). Accordingly, California courts frequently find that parties cannot establish the justifiable reliance element of fraud as a matter of law based on alleged reliance on a non-lawyer's legal advice. *See, e.g., Golden West Baseball Co. v. Talley,* 284 Cal. Rptr. 53, 61 (Ct. App. 1991); *Guido v. Koopman,* 2 Cal. Rptr. 2d 437, 440-41 (Ct. App. 1991). Notably missing from Roach's discussion of *Kirsh* is this Court's holding that when a creditor is a practicing attorney, even established fraud will not excuse his failure to follow the formalities that someone with his "knowledge, experience and competence" would have done. *Kirsh*, 973 F.2d at

1461. "We recognize that [attorney] and [client] were very close friends, but that does not excuse [attorney] throwing of all caution to the winds and relying on the [clients'] word alone." *Id.*

In essence, Roach seeks to impose a fraud or equitable exception to Probate Code § 16004 missing from the statute. But the statutory presumption of undue influence is designed to render immaterial the very "he said, he said" dispute Roach asserts here. Recovering without rebutting undue influence as defined by the statute would effectively nullify its demands.

Roach also asserts breaches of duties that do not exist but for Roach's unenforceable agreement. For example, Roach asserts that Fred breached a fiduciary duty, but Fred did not own him one at all, much less without any agreement. Roach similarly asserts a constructive trust, on the assumption of his legal conclusion that "Cellars took Roach's investment money under false pretenses" because it violated the agreement. Br. 55. CRPC 3-300 and Probate Code § 16004 are designed to protect unadvised clients from such creative, *post facto* attorney arguments.

Finally, the absence of an enforceable property interest forecloses imposing any trust under California Civil Code section 2224, which requires "the existence of a *res* (property or some interest in property)." *522 Valencia*, 41 Cal. Rptr. 2d at 623. Roach has not identified any specific property in Cellars' possession to which he is entitled, let alone presented any evidence that he "was the owner with legal title to

the property and assets" of Cellars. *Id.* at 624; *see also Internet Direct Response, Inc. v. Buckley*, No. SA CV 09-1335 ABC, 2011 WL 835607, at \*7–8 (C.D. Cal. Mar. 7, 2011) (rejecting request for constructive trust over sales proceeds and profits from website absent proof of legally enforceable ownership interest). The property Roach identifies as necessitating a constructive trust, Roach's $135,000 investment, was returned with interest over 13 years ago.

## IV. Additional Summary Judgment Grounds Were Fatal to Roach's Claims.

Even if Roach believes he can somehow escape the court's declaratory judgment, he also had no good answers to additional grounds Cellars raised.

### A. The Statute of Frauds Precludes Roach' Oral Agreement.

First, any purported oral agreement is foreclosed under the statute of frauds because it could not be completed within one year and involved assets exceeding $100,000. Cal. Civ. Code § 1624; *see e.g., San Francisco Brewing Corp. v. Bowman*, 343 P.2d 1, 6-7 (Cal. 1959). Roach testified that RBS LLC owned the Schrader RBS wine pursuant to an oral agreement and that Cellars only produced, marketed, and sold Schrader RBS pursuant to a "license" agreement with RBS LLC. 3-SER-331-32; 3-SER-371-72; 3-SER-413-14. Roach also admits that the terms of any oral agreement could not be completed within one year and involved Roach's "three-year funding obligation" for $150,000. 3-SER-351; 5-ER-994 ¶ 10.

**B.    Roach Lacked Evidence of Any Facts Sufficient to Bind Cellars as a Matter of Law.**

Second, Roach's claimed basis for entitlement to "Schrader Cellars RBS" turns on his ownership of RBS LLC, a non-party that was defunct and had no proof of any ownership or agreement with Cellars. Roach's theory at summary judgment nevertheless was RBS LLC somehow formalized his alleged oral partnership with Fred but he never could prove the partnership or LLC had title to anything. Br. 10; 5-ER-992-93.

Further, Roach could not event meet his burden to prove the existence of any alleged partnership, especially considering Fred specifically rejected the draft LLC operating agreement.[8] *Rapid Funding Group, Inc. v. Keybank Nat. Ass'n.*, No. 07-CV-1348, 2009 WL 2878545, *12 (D. Or. 2009); *Hoeft v. Hotchkiss*, 194 P. 509, 510 (Cal. Ct. App. 1920); *see also Allergia, Inc. v. Bouboulis*, No. 14-CV-1566, 2017 WL 2547225, at *14 (S.D. Cal. June 13, 2017). In an attempt to argue Fred somehow owed Roach a fiduciary duty, Roach also claimed zero control over RBS, LLC's management testifying, among other things, that "Fred would have ***exclusive*** control over all day-to-day operations [of the partnership. . .]– ***which I did not have control over***," 3-SER-325-26, and that " Fred had ***exclusive control*** over all facets of that business," 3-SER-350.

---

[8] 3-SER-440-41; 3-SER-319-20; 3-SER-343-45; 10-ER-1794.

Roach's admitted lack of management forecloses a claim of partnership as a matter of law. *Dickenson v. Samples,* 231 P.2d 530, 533 (Cal. Ct. App. 1951) (holding some management "***virtually essential*** to a determination that such a relationship existed") (emphasis added); *see also Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1020 (N.D. Cal. 2013). Roach's "mere 'belief' in a legal partnership and his repeated use of the term 'partnership' cannot substitute for evidence that a legal partnership in fact existed." *Love v. The Mail on Sunday*, 489 F.Supp.2d 1100, 1109 (C.D. Cal. 2007); *Kloke v. Pongratz*, 101 P.2d 522, 526 (Cal. Ct. App. 1940)

Also fatal is Roach's admission that he never reported any income, profits, revenue, or losses related to any alleged ownership interest, and did not receive or file any K-1 statements or Form 1065s related to any alleged partnership or LLC. 3-SER-321; 4-SER-724-26. Roach would have been required to report "***regardless of whether he received any income.***" *United States v. Basye*, 410 U.S. 441, 447–48 (1973).

Finally, Cellars, not RBS LLC, bottled, marketed, and sold Schrader Cellars RBS wine, registered the RBS trademark, and held the contract to purchase grapes including to make Schrader RBS. Meanwhile, RBS LLC is a defunct entity Roach admits never held any votes, conducted any business, generated any income, or filed any tax returns. 3-SER-328; 3-SER-330; 3-SER-364-65; 3-SER-370; 4-SER-724-26. And when Fred notified Roach he intended to dissolve RBS LLC, which the

California Secretary of State already advised it would do, Roach did nothing. 4-SER-691.

### C.     Roach's Claims Are Time-Barred.

Roach could not effectively answer how any claim could survive any statute of limitation, the longest of which was four years. Cal. Code Civ. Proc., §§ 338(d) (three-year limitation for fraud or mistake), 343 (four-year "catch-all" limitation); Cal. Corp. Code §§ 17704.06(e) (four-year limitation for impermissible LLC distributions), 17707.07(2)(b) (four-year limitation after LLC dissolution). Roach claims entitlement to assets when Cellars "took Roach's investment money," and "commingled" it, which would have been complete in 2003. Br. 55; 4-SER-586; 4-SER-589; 10-ER-1807.

Similarly, Roach's claim that the RBS LLC assets were "taken" by Cellars occurred at the earliest around 2001, and at the latest when RBS LLC was dissolved in 2013. Roach was required to assert his ownership claims—whether sounding in tort or equity—by 2017 at the absolute latest. Cal. Code Civ. Proc., §§ 338(d), 343; Cal. Corp. Code §17707.07(2)(b). He filed his counterclaims in 2021. *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993) ("equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy.").

**V.  Roach's New and Waived Red Herrings on Appeal are Also Unavailing.**

Roach raises new arguments challenging summary judgment, none of which were in Roach's response to Cellars' motion. Where a party "has a full and fair opportunity to ventilate its views with respect to an issue" at summary judgment, yet does not raise it, this Court deems it abandoned on appeal. *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826 (9th Cir. 2000). Roach failed to do so here, and the district court did not abuse its discretion in declining to consider Roach's standing, "great deference," *Noerr-Pennington* and privilege arguments afterward. *Novato Fire Prot. Dist. v. United States*, 181 F.3d 1135, 1142 n.6 (9th Cir. 1999). But even a cursory analysis shows the new arguments are meritless.

**A.  Roach's New "Standing" Argument is Baseless.**

Roach collaterally attacks the district court's summary judgment, asserting Cellars lacked Article III standing to assert its claims. Br. at 32. Recasting Cellars' claims as seeking "recission," Roach reasons that only a party to an agreement can rescind it. But as an initial matter, this case arose because Roach alleges Cellars was a party to some oral agreement, which allegedly obligated Cellars to pay back Roach with interest and produce, bottle and market "Schrader Cellars RBS" for RBS LLC. The fact that Roach's allegations turn on an unethical agreement involving Cellars does not deprive Cellars of standing to challenge it.

Further, Roach does not explain which claim lacks standing, only suggesting summary judgment was improper. Br. at 32. Cellars sought and was granted summary judgment on its claim for declaratory relief that it was the sole owner of its equity and assets, for which it has standing. Roach did not even contest that claim, much less show how Cellars lacked a legally protected interest in its own property. Cellars also prevailed in successfully challenging Roach's counterclaims on summary judgment. Again Roach does not explain how Cellars lacked a legally protected interest in defending those counterclaims considering Roach asserted them *against Cellars* to recover Cellars' equity and property.

Roach also does not appear to challenge the jury's finding at trial that his breach of his duty caused "injury" to Cellars. Given this finding of injury-in-fact, to which the Court grants great deference, Cellars had Article III standing. *See Friends of Earth, Inc. v. Laidlaw Env. Servs., Inc.*, 528 U.S. 167, 183 (2000). Further, as discussed above, California Probate Code Section 16004 also granted Cellars a right of action for a presumed breach of fiduciary duty.

Finally, this Court should see through Roach's attempt to recast his merits attack as one of standing to get around his clear waiver of the issue by not raising it below. "Whether the elements of breach of contract, including the existence of a contract, are satisfied goes to the merits, not to a court's power to resolve the controversy." *Perry v. Newsom*, 18 F. 4th 622, 641 n.5 (9th Cir. 2021) (quotations

omitted and alterations adopted) (citation omitted)); *cf. Benipayo v. Volkswagen Grp. Of Am., Inc.*, 975 F.3d 770, 776 n.4 (9th Cir. 2020).

**B.     The Texas State Bar Did Not "Exonerate Roach."**

Roach's next new request is that this Court find that the failure of the Texas State Bar to sanction him on a complaint by Fred somehow granted him immunity to assert agreements barred by California law. Roach's position grossly misstates both the facts and the law.

### 1.     Roach's conduct was never adjudicated in Texas.

The statement "Roach was fully vindicated in Texas" is wrong on many levels. First, the only court that has ever adjudicated the enforceability of Roach's alleged oral agreement is the district court below. When Roach brought a similar action against Fred, the Texas appellate court ruled the case belonged in California. *See Schrader v. Roach*, No. 01-20-00183-CV, 2022 WL 2203210, at *1 (Tex. App.—Houston [1st Dist.], Jun. 21, 2022, pet. denied). This case represents Cellars' only bite at the apple on this issue, and to suggest it was somewhere resolved elsewhere when Roach actively opposed Cellars' joinder is baffling.

Second, the Texas State Bar's refusal to institute pursue a grievance against Roach filed by Fred has no bearing on the issues here. There was no trial or hearing even on that request to prosecute, much less any legal determination that adjudicated any rights of Cellars. The Texas State Bar cannot prosecute civil liability, which is

why the Texas Rules of Disciplinary Procedure state "[n]either the Complainant nor the Respondent is affected by the doctrines of res judicata or estoppel by judgment from any Disciplinary Action." Tex. R. of Disc. P. § 17.03. Accordingly, even a Texas court would be required to reject Roach's argument, given "the dismissal of a grievance does not preclude the complaining witness from bringing a legal-malpractice or breach-of-fiduciary-duty claim against the attorney." *Charles v. Diggs*, No. 14-19-00725-CV, 2020 WL 6326422, at *1-3 (Tex. App. Oct. 29, 2020). The Texas State Bar "has jurisdiction only over disciplinary and disability determinations and not over claims of civil liability." *Id.*

"Further still, the Texas Disciplinary Rules of Professional Conduct 'do not undertake to define standards of civil liability of lawyers for professional conduct.'" *Id.* (quoting Tex. Disc. R. of Professional Conduct, Pmbl. 15). If the State Bar's decision is irrelevant to Roach's civil liability in Texas, its relevance under California law is entirely unclear. Regardless, Roach does not challenge on appeal the district court's finding that California law governed Roach's duties. This alone resolves the issue.

## 2. Roach's "great deference" standard is a great stretch.

Ignoring Texas law, Roach asserts California law should not "override the 'great deference' due to the Texas disciplinary proceedings," bars often impose when another bar deems an attorney unfit to practice. Roach's claimed support is

*Gadda v. Ashcroft*, which held the federal bar may impose reciprocal discipline on an attorney based on another bar's discipline. 377 F.3d 934, 939 (9th Cir. 2004). Notably this Court disbarred Gadda from practice in this Circuit under Federal Rule of Appellate Procedure 46, which provides "suspension or disbarment if the member either (1) 'has been suspended or disbarred from practice in any other court'; or (2) 'is guilty of conduct unbecoming a member of the court's bar.'" *Id.* at 943. Gadda also could not prove by clear and convincing evidence a "*Selling* condition" protecting him from reciprocal discipline, namely "(1) a lack of due process; (2) insufficient proof of attorney misconduct; or (3) 'some other grave reason exist[s] that should prevent the court from recognizing the state court's determination.'" *Id.* (citing *Selling v. Radford*, 243 U.S. 46, 51, (1917)).

In this case, Roach turns reciprocal discipline on its head arguing if another state bar declines to suspend or disbar him, that decision is binding elsewhere. But no authority exists for this turnabout even on issues of suspension or disbarment, as just because one state extends a privilege to practice does not mean another state must. And the cases Roach cites support independent bar determinations separate from any reciprocal discipline standard. *See, e.g., id.* (noting the Court's "independent authority to suspend or disbar" Gadda); *In re Yagman*, 38 F.4th 25, 32 (9th Cir. 2022) (holding New York's "independent, non-reciprocal reasons for imposing discipline" rendered California reinstatement irrelevant).

Roach cites no authority that a civil determination regarding California's CRPC, much less its Probate Code, "defers" to an out-of-state regulator's declination to pursue an attorney ethics violation. Roach's melodramatic analogy to "quasi-criminal" allegations only proves this point, as even a criminal acquittal does not affect subsequent civil claims. Yet, to dispose of Cellars' rights under California law would not only distort the separate function of attorney discipline and preclude Cellars from vindicating its tort injuries. The Court should disregard Roach's invitation to adopt a new standard that would prejudice the rights of clients to enforce civil violations of California law.

### C. Roach's *Noerr-Pennington* and Privilege Defenses are Baseless.

Finally, Roach argues Cellars' claims on summary judgment should have been barred by a *Noerr-Pennington* and privilege defense Roach failed to preserve at that time. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("As a general rule, we will not consider arguments that are raised for the first time on appeal."); *BankAmerica*, 206 F.3d at 826. Roach's only "evidence" of those defenses is the inference that Cellars brought this case to litigate Roach's ownership claim after learning of it from the Texas case. But learning on the existence of either a dispute or tortious conduct from another pleading is insufficient to prove either privilege or infringement of a First Amendment right as a matter of law. *See, e.g.*, *City of Cotati v. Cashman*, 52 P.3d 695, 702-03 (Cal. 2002).

In *City of Cotati*, the defendant asserted that a "state court action for declaratory relief respecting the constitutionality of a mobile home park rent stabilization ordinance, filed in response to a federal court declaratory relief action brought by park owners respecting the same ordinance" triggered the anti-SLAPP Act based on the defendants' petitioning. *City of Cotati*, 52 P.3d at 697. The plaintiff "concede[d] that its purpose in filing the state court action was to gain a more favorable forum in which to litigate the constitutionality of its mobile home park rent stabilization ordinance." *Id.* at 698. But in reversing, the California Supreme Court explained "California courts rightly have rejected the notion 'that a lawsuit is adequately shown to be one 'arising from' an act in furtherance of the rights of petition or free speech as long as suit was brought after the defendant engaged in such an act, whether or not the purported basis for the suit is that act itself.'" *Id.* at 700 (quoting *ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 635 (Cal. Ct. App. 2001)). Learning of a dispute cannot trigger the anti-SLAPP act, otherwise the "absurd result," "would in effect render all cross-actions potential SLAPP's." *Id.* at 700.

In this instance, Roach ignores that the actionable conduct forming the basis of the summary judgment are his violations of CRPC 3-300 and Section 16004 of the Probate Code, not his subsequent revealing of those violations in another suit. Even if Cellars only became aware of the need to clear the cloud Roach created over

its title after Roach filed that lawsuit (and based on private statements Roach was making outside of the lawsuit) his underlying conduct is not immune under the First Amendment or California privilege. *See, e.g., City of Cotati v. Cashman*, 52 P.3d 695, 702-03 (Cal. 2002).

As the Supreme Court has held, the First Amendment protections of the *Noerr-Pennington* doctrine only protect activity that is "genuinely intended to influence government action," but does not immunize conduct "simply because they have a political [or petitioning] impact." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 503, 507 (1988). Here, Cellars' claim is premised on Roach's unethical self-dealing in entering into an agreement with his client without making the required disclosures—facts that were undisputed. That Roach ultimately filed a lawsuit referencing the agreement does not retroactively immunize his earlier breach. As the Supreme Court has cautioned, if all such conduct that ultimately resulted in petitioning were immunized, an absolutist view of the doctrine would effectively eliminate the enforcement of laws in court. *See id.* at 503.

## CONCLUSION

The district court's summary judgment ruling should be affirmed.

## CROSS-APPELLANT'S OPENING BRIEF

## (CASE NO. 23-15990)

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1332, and 15 U.S.C. §§ 1119, 1121(a). There was complete diversity of parties, and the amount in controversy exceeded $75,000. On March 13, 2023, the district court entered a final judgment that disposed of all parties' claims. 1-ER-22. This Court has jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

**First,** did Roach present legally sufficient evidence of immunity under the California statutory litigation privilege, where Roach's breach concerned his failure to abide by the California Professional Responsibility Code and the Probate Code in entering into an oral agreement with his clients?

**Second,** did the jury instruction and verdict question accurately reflect the California litigation privilege by permitting a finding that an attorney's breach may be privileged where the underlying conduct is referenced in another lawsuit?

**Third**, did the district court err in permitting Roach to rely on his own hearsay in pleadings in another lawsuit to argue Cellars sought recovery for his actions in that lawsuit?

**Fourth,** does the jury's finding that the "gravamen" of Cellars' claim for breach of fiduciary duty is "based on Roach's filing of the Texas lawsuit" preclude equitable disgorgement of ill-gotten profits earned years before the Texas lawsuit was even filed?

## SUMMARY OF ARGUMENT

As the district court correctly determined below, Roach breached his fiduciary duty to Cellars in entering into an engagement agreement to represent Cellars that included, according to Roach, an interest adverse to Cellars' property and interest that Roach failed to show was fair and reasonable and followed the demands of Section 16004 of the California Probate Code. And the jury correctly found that Roach's breach caused actual injury to Cellars by necessitating Cellars' need to clear title to its equity and assets, including to defend against Roach's claims to the contrary in the instant case. But the district court erred when permitting Roach to argue that the very breach Roach committed as a matter of law could be excused by the California litigation privilege, and in instructing the jury that Roach's mere filing of a lawsuit in Texas was a sufficient basis to do so.

California law is clear that the litigation privilege does not extend to private tortious conduct even when the plaintiff learns of the conduct from another suit. And courts applying that law, including this Court, have observed that permitting an attorney to assert the litigation privilege based on such knowledge could preclude

any legal malpractice action. To allow the verdict to stand when clear evidence exists that Roach breached his fiduciary duty to Cellars and caused Cellars harm, irrespective of his Texas suit against other parties, would threaten future protection of clients from malpractice and immunize otherwise unethical conduct.

Finally, even if the jury could have concluded that Cellars sought their relief connected to his filing of litigation elsewhere, no evidence supports depriving Cellars' recovery of equitable relief, including disgorgement of Roach's receipt of wine as legal payment long before Roach's suit was ever filed.

## STANDARD OF REVIEW

## I.    Motion for Judgment as a Matter of Law

This Court reviews *de novo* a district court's denial of a motion for judgment as a matter of law "to determine whether substantial evidence supported the prevailing party's claims." *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (citing *Erickson v. Pierce Cnty.*, 960 F.2d 801, 804 (9th Cir. 1992)); *see also Hagen v. City of Eugene*, 736 F.3d 1251, 1256 (9th Cir. 2013). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Weaving*, 763 F.3d at 1111 (citation omitted). (citation omitted). "It is error to deny a judgment as a matter of law when it is clear that the evidence and its inferences cannot reasonably support a judgment in favor of the opposing party." *Id*. (citation and internal alterations omitted).

## II.    Erroneous Jury Instructions

Questions of law are reviewed *de novo*. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986). Accordingly, a district court's formulation of the jury instructions is reviewed *de novo* if "the instructions are challenged as a misstatement of the law." *Gantt v. City of Los Angeles*, 717 F.3d 702, 706 (9th Cir. 2013) (quoting *Duran v. City of Maywood*, 221 F.3d 1127, 1130 (9th Cir. 2000) (per curiam)). Jury instructions "must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading.'" *Id.* An error in the jury instructions "***requires reversal*** unless the error is more probably than not harmless." *Id.* at 707 (quoting *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009)) (emphasis added). This Court presumes prejudice resulting from trial errors, and thus "the burden shifts to the defendant to demonstrate that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Id.* (quoting *Clem*, 566 F.3d at 1182).

## III.    Evidentiary Rulings

A district court's evidentiary rulings are reviewed for abuse of discretion. *Jensen v. EXC, Inc.*, 82 F.4th 835, 842 (9th Cir. 2023). "When reviewing the effect of erroneous evidentiary rulings," this Court "begin[s] with a presumption of prejudice." *Id.* at 852 (quoting *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005)) (quotation marks and internal alterations omitted). The burden is on the party

benefitting from the error "to establish that 'it is more probable than not that the error did not materially affect the verdict.'" *Id.* (citation omitted).

## ARGUMENT

### I.    Roach Presented Legally Insufficient Evidence of Privilege.

The applicability of California's litigation privilege is a question of law that this Court reviews *de novo*. *Action Apartment*, 163 P.3d at 103; *In re Cedar Funding, Inc.*, 419 B.R. 807, 816 (B.A.P. 9th Cir. 2009). To prove entitlement to the statutory immunity,[9] Roach had to show his liability for breach of fiduciary duty rested on a statement "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action.'" *Fremont Reorganizing Corp. v. Faigin*, 131 Cal. Rptr. 3d 478, 493–95 (Cal. Ct. App. 2011) (quoting *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 163 P.3d 89, 95 (Cal. 2007)) (alterations omitted). Roach did not introduce any such evidence at trial. Instead, Roach's attorneys argued to the jury that because Roach's filing of the Texas suit showed when Cellars was on notice of Roach's breach, Cellars should have relied on Roach's filing of the Texas suit as the basis for its claim. Roach's argument is legally insufficient as a matter of law to prove privilege.

---

[9] The district court recognized this distinction, holding in a pretrial order that the California litigation privilege is "an immunity from suit," rather than "an affirmative defense to liability" for the jury to consider. 1-ER-60.

## A. Cellars' Claim Was Premised on Roach's Failure to Properly Document or Advise Cellars in Entering Transaction.

California courts reject attorneys' "attempt[s] to turn garden-variety attorney malpractice into a constitutional right." *Freeman v. Schack*, 154 Cal. App. 4th 719, 730–32, 64 Cal. Rptr. 3d 867, 876–77 (2007) (citing *Jespersen*, 114 Cal. App. 4th 624, 632, 7 Cal. Rptr. 3d 715 (2003)). As this Court has observed, "the litigation privilege does not protect an attorney from suit by a former client, because if it did, 'no malpractice suit could be brought.'" *Mindy's Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 600 (9th Cir. 2010) (quoting *Kolar v. Donahue, McIntosh & Hammerton*, 145 Cal. App. 4th 1532, 1541, 52 Cal.Rptr.3d 712 (2006) ("We perceive no sound reason why litigators should be exempted from malpractice liability, and therefore decline to extend the litigation privilege's protection to [such a malpractice] case")); s*ee also Mattco Forge, Inc. v. Arthur Young & Co.*, 5 Cal.App.4th 392, 406, 6 Cal.Rptr.2d 781 (1992) ("if [the litigation privilege] protected an attorney from any suit by a former client, no malpractice suit could be brought").

As discussed at length in response to Roach's appeal, Cellars' fiduciary duty claim arose out of Roach's assertion of a 20 year old oral agreement whereby Roach supposedly acquired of an ownership interest in Cellars or its assets without proper disclosure in violation of CRPC 3-300 and California Probate Code § 16004. All of the evidence presented at trial established that Roach's breach of fiduciary duty harmed Cellars by putting a cloud over its title that a prudent business would need

to remove. On direct examination, Fred testified that Cellars decision to file suit was based on concerns raised to him by his former wife Carol Schrader and his former winemaker Thomas Brown. 11-ER-2071. Roach's attorneys did not even cross-examine him on the subject.

Roach's testimony only confirmed that the Texas suit did not form the basis of Cellars' claims. Roach admitted that his filing of the original petition in the Texas suit did not put Cellars on notice that it should have sued. 11-ER-2149. Roach further testified that he frequently told people about his equitable ownership interest in Cellars "over the years," which had nothing to do with the Texas lawsuit. 11-ER-2151; *see also* 12-ER-2161. Finally, the injury Cellars claimed were the costs of having to investigate the matter and act to seek relief in the district court. Cellars claimed no injury and sought no recovery for Roach's conduct in the Texas suit.

### B. Roach's Argument About How Cellars Learned of His Breach is Legally Insufficient as a Matter of Law.

Instead of offering evidence supporting a finding of privilege, Roach's attorneys seized on Roach's pleadings from a Texas lawsuit, which had only been admitted as relevant to Roach's statute of limitations defense. Nonetheless, Roach's counsel argued to the jury that because Cellars should have been on notice of its claims based on Roach's pleadings in his Texas lawsuit, the jury could conclude that Cellars' breach of fiduciary duty was based on Roach's filing of the Texas lawsuit. And in confusing the issues of litigation and First Amendment immunity, Roach's

attorney argued that Cellars' awareness of those pleadings was enough to find privilege. 13-ER-2409-10. Roach's argument, which apparently the jury believed, is insufficient to sustain privilege as a matter of law.

The California Supreme Court has long observed "a careful distinction between a cause of action based squarely on a privileged communication [,] and one based upon an underlying course of conduct evidenced by the communication." *Park v. Bd. Of Trustees of Cal. State Univ.*, 393 P.3d 905, 909 (Cal. 2017) (quoting *White v. Western Title Ins. Co.*, 710 P.2d 309, 318 (Cal. 1985)). Thus, the litigation privilege does not bar a claim for a defendant's breach of duty simply because a plaintiff learns of that breach through the filing of a separate lawsuit. *See, e.g.*, *White*, 710 P.2d at 318 (holding that litigation privilege could not bar relying on litigation communications to "show that defendant was not evaluating and seeking to resolve [insured's] claim fairly and in good faith").

It is well-settled that a plaintiff may even point to a party's statements in litigation as evidence of intent when the underlying conduct itself is actionable. *See, e.g., Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 728 P.2d 1202, 1208-09 (Cal. 1986) ("when allegations of misconduct properly put an individual's intent at issue in a civil action, statements made during the course of a judicial proceeding may be used for evidentiary purposes in determining whether the individual acted with the requisite intent.") (citing *White*, 710 P.2d at 318). Thus,

reference to pleadings and statement in litigation as evidence of intent is not even sufficient to trigger the broader anti-SLAPP Act, much less the litigation privilege. *See Park*, 393 P.3d at 912 (holding denial professor of tenure did not trigger anti-SLAPP Act even though protected communications evidence of animus); *City of Cotati v. Cashman*, 52 P.3d 695, 702-03 (Cal. 2002) (holding reliance on another suit to show ripe dispute not sufficient to prove privilege).

Instead, the court must look to the actual underlying controversy of both actions. In this case, the underlying controversy is Roach's failure to obtain in writing the terms of the disputed business transaction. A reference in Cellars' complaint in Texas is not sufficient, as "merely ... seeking a resolution of the controversy" underlying both lawsuits does not concern protected activity. *See City of Cotati*, 52 P.3d at 703. Cellars' "references" to Roach's suit in Texas is insufficient as a matter of law to find privilege, as Cellars' claim is based on Roach's preexisting conduct and the Texas suit at most only reveals "evidence related to liability" for his breach of fiduciary duty. *See, e.g.*, *RLI Ins. Co. v. Langan Engineering, Environmental Surveying & Landscaping Architecture, D.P.C.*, No. 19-17547 (9th Cir. Jan. 25, 2021) (unpublished) (quoting *Park*, 2 Cal. 5th at 1065; *City of Cotati*, 52 P.3d at 700)).

## II. The Privilege Instruction Inaccurately Stated the Law.

Even if the Court disagreed and found there was sufficient evidence from which a jury could find Roach's conduct was immune from liability under the litigation privilege, the district court's charge inaccurately instructed the jury as to the law. The court gave the following instruction over Cellars' objection:

> A person who files a lawsuit is immune from liability simply for filing the lawsuit. However, a person is not immune from liability from other actions. You must decide if the gravamen – or heart – of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas lawsuit.

1-ER-55. The court also asked the jury "Do you find that the gravamen – or heart – of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas lawsuit?" 2-ER-184.

### A. The Instruction Permitted Roach to Immunize His Past Tortious Conduct by Referencing it in a Pleading.

As Cellars made clear in its objections to both the posed question and instruction, asking whether Cellars claim was based on Roach's filing of the Texas lawsuit could lead a reasonably jury to improperly conclude that simply finding out about an attorney's breach from another lawsuit was privileged. After all, Roach was also arguing that Cellars' claim was time barred because Roach's suit put Cellars on notice of his breach, and the jury might determine that if that were true, Cellars in fact relied on the Texas suit in choosing to timely file its claim. Cellars thus objected to both the question and instruction, or in the alternative requested clarification in

both so the jury should not so find if Cellars' claim was based on "breach of fiduciary duty in entering into an oral agreement with his former client Cellars without making the required disclosures." 2-SER-164.

Nevertheless, the court gave both despite the California Supreme Court's direction that the privilege does not immunizing conduct merely because the plaintiff learned it from another suit and filed an action accordingly. *See, e.g.*, *Park*, 393 P.3d at 909; *City of Cotati*, 52 P.3d at 702-03; *White*, 710 P.2d at 318.

### B.    The Instruction Tracked the Inapplicable Anti-SLAPP Standard.

The district court's instruction and jury question did not derive from the privilege statute or California case law. Instead, the district court appears to have borrowed from the standard for expedited motions to strike under California's anti-SLAPP statute.[10] *See* Cal. Code. Civ. P. § 425.16(b)(1).

The California anti-SLAPP statute provides for expedited dismissal of actions at the pleading stage, and asks whether (1) a cause of action implicates certain conduct defined under the anti-SLAPP act, and if so, (2) "the plaintiff has

---

[10] *Compare* 1-ER-55 (instructing jury to "decide if the gravamen – or heart – of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas lawsuit."); *with Chodos v. Cole*, 148 Cal. Rptr. 3d 451, 460 (Cal. Ct. App. 2012) ("In determining whether the anti-SLAPP statute applies, the court must focus on the act which defines the "principal thrust or gravamen " of the cause of action that is the basis of the cause of action.") (citation omitted); *see also Club Members for an Honest Election v. Sierra Club*, 196 P.3d 1094 (Cal. 2008) ( "the 'principal thrust or gravamen' test has been used to determine whether an action fits within the scope of the anti-SLAPP protection provided by section 425.16.").

demonstrated a probability of prevailing on the claim." *Thayer v. Kabateck Brown Kellner LLP*, 143 Cal. Rptr. 3d 17, 26 (Cal. Ct. App. 2012). Thus, conduct that triggers an analysis under the California anti-SLAPP act does not confer immunity, but only requires that a plaintiff can establish a prima facie case of its claims—as the district court and jury found that Cellars did for its breach of fiduciary duty claim. *Mindy's Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 600 (2010). And while the jury's finding would have permitted Cellars' claim to proceed under the anti-SLAPP Act, that was not at issue here because Roach did not bring an anti-SLAPP motion, which must be filed by 30 days after the close of discovery. *Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016). Accordingly, the district court erred in instructing the jury as to the anti-SLAPP statute, which is not proper for the jury as a matter of law.[11]

Because the given instruction misstated the law, the Court should reverse and remand for new trial. *See Freeman*, 410 F.3d at 1184-85; *Gantt*, 717 F.3d at 709.

---

[11] The district court's instruction also bears no resemblance to the *Noerr-Pennington* defense that Roach asserts in his opening brief. *See, e.g.,* Judicial Council of California Civil Jury Instructions (2022 ed.), CACI No. 3430, "Noerr-Pennington" Doctrine (requiring findings on whether petitioning activity was "undertaken without regard to the merits," and intended to harm plaintiff "rather than to obtain a successful outcome."). Had Roach requested that instruction, Cellars would have at a minimum been able to argue the sham exception. *See Rock River Communs., Inc. v. Universal Music Grp., Inc*., 745 F.3d 343, 352 (9th Cir. 2014);

### C. The Undisputed Facts in Evidence Foreclosed the Defense Even as Charged.

Even if the given instruction were legally sound, the district court erred in submitting the defense to the jury because there was no evidence in the record that the "gravamen" of Cellars' breach of fiduciary duty claim was Roach's filing of the Texas litigation. Rather, only evidence on the subject at trial confirmed that Cellars' lawsuit was not based on the filing of the Texas litigation. Moreover, the only remedy Cellars sought from the jury were expenses in the California case, specifically excluding any supposed "damage" the Texas case could have caused.

The only relevance of the Texas litigation was ***Roach's*** statute of limitations defense—on which Cellars prevailed. Roach unilaterally injected his own litigation conduct into the case at trial by seeking to admit his own Texas pleading allegations—over Cellars' objections—and then argued to the jury that his free speech was under attack. Because there was no evidence in the record that Cellars sought liability or damages based on Roach's Texas suit, and the only tortious conduct was Roach's failure to follow the requirements of Rule 3-300 years prior to any lawsuit, the jury's finding on an erroneous instruction cannot stand. Accordingly, there was no factual basis for the jury to answer yes to the question, and thus no legally sufficient basis for the district court to rely on that answer in determining the legal question of privilege. At bottom, the instruction and question should have never been posed to the jury.

**III.  Cellars Was Substantially Prejudiced and Unfairly Surprised by the Submission of Unadmitted Hearsay Pleadings to the Jury.**

Cellars was substantially prejudiced by the district court's permitting the jury to consider Roach's pleadings from the Texas litigation as evidence. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1325 (9th Cir. 1995). Despite having excluded those pleadings as inadmissible hearsay during the presentation of evidence, the district court reversed course after the close of evidence, and, moments before closing argument, took judicial notice of the fact that Roach's Texas petition was filed. While the court stated it was taking judicial notice of the pleadings as relevant to whether Cellars was on notice of Roach's breach of fiduciary duty for statute of limitations purposes, the court abused its discretion in submitting the pleadings themselves to the jury to consider during the deliberation and specially instructing the jury on those pleadings.

"[A] court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983); *see also Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003); *City of Wichita v. United States Gypsum Co.*, 72 F.3d 1491, 1496 (10th Cir. 1996) (district court erred by taking judicial notice of and instructing jury regarding OSHA regulations after close of evidence, where plaintiff was prejudiced without opportunity to cross-examine on admitted evidence and

court improperly emphasized evidence in instructions). Here, the district court's limiting instructions only "exacerbated the prejudicial effects" that inadmissible evidence, which "left with the jury the impression that evidence had been purposefully kept from it." *Hern v. Intermedics, Inc.*, 210 F.3d 383 (9th Cir. 2000).

Cellars was also unfairly surprised by the last-minute admission of Roach's hearsay, where Cellars had no notice that it would be considered by the jury until after the close of evidence and no opportunity to present controverting evidence or rebut counsel's prejudicial arguments in closing.[12] Compounding this error is the fact that verdict question regarding the "*filing*" of the Texas lawsuit could, as worded, only possibly implicate Roach's ***original*** petition that initiated the Texas suit, which was not itself admitted into evidence. The fact that the First Amended Petition was filed could have been "proved through less prejudicial means." *U.S. v. Sine*, 493 F.3d 1021, 1035 (9th Cir. 2007). Because an alternative instruction regarding the fact that those hearsay pleadings were filed without admitting the documents to the jury would "have substantially the same or greater probative value but a lower danger of unfair prejudice," a new trial is warranted on this basis. *Id.* (citation omitted).

---

[12] *See, e.g.,* 13-ER-2408-9 ("we're going to look at first Exhibit 601, which is the complaint, the first amended complaint, in Texas . . . And why do we know that they could have joined the action? Well, because we know what the [Texas] court told them. . ."); *see also* 13-ER-2409-10.

## IV. The Jury's Finding Does Not Preclude Equitable Relief.

Despite the jury's finding that Cellars had established breach of fiduciary duty and overcome any statute of limitations bar, the district court declined to proceed with the ongoing bench trial portion to determine whether Cellars is entitled to equitable disgorgement in the form of the substantial value of the wine paid to Roach as part of the unenforceable agreement. However, the jury's finding of "privilege" could not legally support the district court's refusal to consider Cellars' equitable recovery for the reasons discussed above. Moreover, even taking as true that the relief requested from the jury for Roach's breach of fiduciary duty could somehow be deemed "based on Roach's filing of the Texas lawsuit," the disgorgement sought exclusively concerned benefits received by Roach pursuant to an unenforceable agreement entered years prior to filing the Texas suit. Where the equitable remedy of disgorgement is appropriate irrespective of actual damages, the district court had "broad equitable power" to "require [Roach] to disgorge fees already received" based on his fiduciary duty violation. *Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012).

In denying Cellars' renewed motion for judgment as a matter of law, the district court reasoned that, the only way the jury's privilege finding would not preclude Cellars' request for disgorgement would be pursuant to "a separate claim for breach of fiduciary duty based solely on the taking of fees or obtaining benefits

in the form of wine under the agreement made in breach of Roach's fiduciary duty." 1-ER-13. It thus held that any equitable relief was inappropriate on the alternative basis that "such separate claim would be barred by the statute of limitations." *Id.*

First, this holding conflicts with the policy underlying equitable disgorgement that prevents a wrongdoer from retaining a profit from his own misconduct. *See Cnty. of San Bernardino v. Walsh*, 69 Cal. Rptr. 3d 848, 855–56 (Cal. Ct. App. 2007), *as modified on denial of reh'g* (Jan. 25, 2008), *as modified* (Jan. 28, 2008) (("[T]he public policy of this state does not permit one to 'take advantage of his own wrong' regardless of whether the other party suffers actual damage.") (citation omitted). Such a policy makes sense, "the harm resulting from a violation of the duty of being intangible and difficult to quantify." *Sheppard*, 425 P.3d at 24.

Second, the district court's "separate claim" reasoning disregards its prior determination that any equitable relief stems from the same breach of fiduciary claim, 3-ER-367-68, which the jury specifically found was not time-barred because Cellars did not incur actual injury—i.e., damages—from Roach's breach until within the limitations period, 2-ER-184. Accordingly, to the extent the district court conflated the equitable remedy of disgorgement with actual damages, the jury's finding that any damages claim was not time-barred should have also applied to Cellars' equitable relief.

## CONCLUSION

The district court's final judgment should be reversed inasmuch as it incorporates the jury's verdict on privilege and remanded to the district court for a new trial limited to the damages and equitable relief to which Cellars is entitled for Roach's breach of fiduciary duty.

Dated: December 18, 2023

Respectfully submitted,

_/s/ Casey Low_
Casey Low
PILLSBURY WINTHROP
SHAW PITTMAN LLP
401 Congress Ave
Suite 1700
Austin, TX 78701

_Counsel for Plaintiff Appellee/Cross-Appellant Schrader Cellars, LLC_

## STATEMENT OF RELATED CASES

There are no other cases pending in this Court that are related to these consolidated cases under Circuit Rule 28-2.6.

Dated: December 18, 2023    PILLSBURY WINTHROP
                                SHAW PITTMAN, LLP


                                /s/ Casey Low
                                Casey Low

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, I certify that

the foregoing brief is in 14-point, proportionally spaced Times New Roman type and

contains 16,064 words excluding the items exempted by Fed. R. App. P. 32(f).

Dated: December 18, 2023        PILLSBURY WINTHROP
SHAW PITTMAN, LLP

/s/ Casey Low
Casey Low

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2023, I caused the foregoing Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I further certify that all participants in this appeal are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: December 18, 2023       PILLSBURY WINTHROP
                                  SHAW PITTMAN, LLP


                                  /s/ Casey Low
                                  Casey Low

# STATUTORY ADDENDUM

Except for the following, all pertinent statutory authorities are contained in the brief or addendum of the Opening Brief of Appellant, Robert M. (Randy) Roach, Jr.:

**TABLE OF CONTENTS FOR STATUTORY ADDENDUM**

| Citation | Addendum Page |
|---|---|
| Cal. Civ. Code § 47(b) | 3 |
| Cal. Civ. Code § 1667 | 5 |
| Cal. Civ. Code § 1624 | 6 |
| Cal. Code Civ. Proc., § 338(d) | 10 |
| Cal. Code Civ. Proc., § 343 | 11 |
| Cal. Code. Civ. P. § 425.16(b)(1) | 12 |
| Cal. Corp. Code § 17704.06 | 13 |
| Cal. Corp. Code § 17707.07(2)(b) | 14 |
| Cal. R. Prof'l Conduct 1-100 | 15 |
| Cal. R. Prof'l Conduct 3-300 | 16 |
| Tex. R. of Disc. P. § 17.03 | 17 |
| Tex. Disc. R. of Professional Conduct, Pmbl. 15 | 18 |

# CAL. CIV. CODE § 47(b):

In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows:

(1) An allegation or averment contained in any pleading or affidavit filed in an action for marital dissolution or legal separation made of or concerning a person by or against whom no affirmative relief is prayed in the action shall not be a privileged publication or broadcast as to the person making the allegation or averment within the meaning of this section unless the pleading is verified or affidavit sworn to, and is made without malice, by one having reasonable and probable cause for believing the truth of the allegation or averment and unless the allegation or averment is material and relevant to the issues in the action.

(2) This subdivision does not make privileged any communication made in furtherance of an act of intentional destruction or alteration of physical evidence undertaken for the purpose of depriving a party to litigation of the use of that evidence, whether or not the content of the communication is the subject of a subsequent publication or broadcast which is privileged pursuant to this section. As used in this paragraph, "physical evidence" means evidence specified in Section 250 of the Evidence Code or evidence that is property of any type specified in Chapter 14 (commencing with Section 2031.010) of Title 4 of Part 4 of the Code of Civil Procedure.

(3) This subdivision does not make privileged any communication made in a judicial proceeding knowingly concealing the existence of an insurance policy or policies.

(4) A recorded lis pendens is not a privileged publication unless it identifies an action previously filed with a court of competent jurisdiction which affects the title or right of possession of real property, as authorized or required by law.

(5) This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false

report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report.

**CAL. CIV. CODE § 1667**

That is not lawful which is:

      1. Contrary to an express provision of law;

      2. Contrary to the policy of express law, though not expressly prohibited; or,

      3. Otherwise contrary to good morals.

# CAL. CIV. CODE § 1624

(a) The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent:

> (1) An agreement that by its terms is not to be performed within a year from the making thereof.

> (2) A special promise to answer for the debt, default, or miscarriage of another, except in the cases provided for in Section 2794.

> (3) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; such an agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent is in writing, subscribed by the party sought to be charged.

> (4) An agreement authorizing or employing an agent, broker, or any other person to purchase or sell real estate, or to lease real estate for a longer period than one year, or to procure, introduce, or find a purchaser or seller of real estate or a lessee or lessor of real estate where the lease is for a longer period than one year, for compensation or a commission.

> (5) An agreement that by its terms is not to be performed during the lifetime of the promisor.

> (6) An agreement by a purchaser of real property to pay an indebtedness secured by a mortgage or deed of trust upon the property purchased, unless assumption of the indebtedness by the purchaser is specifically provided for in the conveyance of the property.

> (7) A contract, promise, undertaking, or commitment to loan money or to grant or extend credit, in an amount greater than one hundred thousand dollars ($100,000), not primarily for personal, family, or household purposes, made by a person engaged in the business of lending or arranging for the lending of money or extending credit. For purposes of this section, a contract, promise, undertaking, or commitment to loan money secured solely by residential property consisting of one to four dwelling units shall be deemed to be for personal, family, or household purposes.

(b) Notwithstanding paragraph (1) of subdivision (a):

(1) An agreement or contract that is valid in other respects and is otherwise enforceable is not invalid for lack of a note, memorandum, or other writing and is enforceable by way of action or defense, provided that the agreement or contract is a qualified financial contract as defined in paragraph (2) and one of the following apply:

(A) There is, as provided in paragraph (3), sufficient evidence to indicate that a contract has been made.

(B) The parties thereto by means of a prior or subsequent written contract, have agreed to be bound by the terms of the qualified financial contract from the time they reached agreement (by telephone, by exchange of electronic messages, or otherwise) on those terms.

(2) For purposes of this subdivision, a "qualified financial contract" means an agreement as to which each party thereto is other than a natural person and that is any of the following:

(A) For the purchase and sale of foreign exchange, foreign currency, bullion, coin, or precious metals on a forward, spot, next-day value or other basis.

(B) A contract (other than a contract for the purchase of a commodity for future delivery on, or subject to the rules of, a contract market or board of trade) for the purchase, sale, or transfer of any commodity or any similar good, article, service, right, or interest that is presently or in the future becomes the subject of a dealing in the forward contract trade, or any product or byproduct thereof, with a maturity date more than two days after the date the contract is entered into.

(C) For the purchase and sale of currency, or interbank deposits denominated in United States dollars.

(D) For a currency option, currency swap, or cross-currency rate swap.

(E) For a commodity swap or a commodity option (other than an option contract traded on, or subject to the rules of, a contract market or board of trade).

(F) For a rate swap, basis swap, forward rate transaction, or an interest rate option.

(G) For a security-index swap or option, or a security or securities price swap or option.

(H) An agreement that involves any other similar transaction relating to a price or index (including, without limitation, any transaction or agreement involving any combination of the foregoing, any cap, floor, collar, or similar transaction with respect to a rate, commodity price, commodity index, security or securities price, security index, other price index, or loan price).

(I) An option with respect to any of the foregoing.

(3) There is sufficient evidence that a contract has been made in any of the following circumstances:

(A) There is evidence of an electronic communication (including, without limitation, the recording of a telephone call or the tangible written text produced by computer retrieval), admissible in evidence under the laws of this state, sufficient to indicate that in the communication a contract was made between the parties.

(B) A confirmation in writing sufficient to indicate that a contract has been made between the parties and sufficient against the sender is received by the party against whom enforcement is sought no later than the fifth business day after the contract is made (or any other period of time that the parties may agree in writing) and the sender does not receive, on or before the third business day after receipt (or the other period of time that the parties may agree in writing), written objection to a material term of the confirmation. For purposes of this subparagraph, a confirmation or an objection thereto is received at the time there has been an actual receipt by an individual responsible for the transaction or, if earlier, at the time there has been constructive receipt, which is the time actual receipt by that individual would have occurred if the receiving party, as an organization, had exercised reasonable diligence. For the purposes of this subparagraph, a "business day" is a day on which both parties are open and transacting business of the kind involved in that qualified financial contract that is the subject of confirmation.

(C) The party against whom enforcement is sought admits in its pleading, testimony, or otherwise in court that a contract was made.

(D) There is a note, memorandum, or other writing sufficient to indicate that a contract has been made, signed by the party against whom enforcement is sought or by its authorized agent or broker.

For purposes of this paragraph, evidence of an electronic communication indicating the making in that communication of a contract, or a confirmation, admission, note, memorandum, or writing is not insufficient because it omits or incorrectly states one or more material terms agreed upon, as long as the evidence provides a reasonable basis for concluding that a contract was made.

(4) For purposes of this subdivision, the tangible written text produced by telex, telefacsimile, computer retrieval, or other process by which electronic signals are transmitted by telephone or otherwise shall constitute a writing, and any symbol executed or adopted by a party with the present intention to authenticate a writing shall constitute a signing. The confirmation and notice of objection referred to in subparagraph (B) of paragraph (3) may be communicated by means of telex, telefacsimile, computer, or other similar process by which electronic signals are transmitted by telephone or otherwise, provided that a party claiming to have communicated in that manner shall, unless the parties have otherwise agreed in writing, have the burden of establishing actual or constructive receipt by the other party as set forth in subparagraph (B) of paragraph (3).

(c) This section does not apply to leases subject to Division 10 (commencing with Section 10101) of the Commercial Code.

(d) An electronic message of an ephemeral nature that is not designed to be retained or to create a permanent record, including, but not limited to, a text message or instant message format communication, is insufficient under this title to constitute a contract to convey real property, in the absence of a written confirmation that conforms to the requirements of subparagraph (B) of paragraph (3) of subdivision (b).

## Cal. Code Civ. Proc. § 338(d)

An action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.

**CAL. CODE CIV. PROC. § 343**

An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued.

## Cal. Code Civ. Proc. § 425.16(b)

(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

(2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3) If the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.

(a) Except as otherwise provided in subdivision (b), if a member of a member-managed limited liability company or manager of a manager-managed limited liability company consents to a distribution made in violation of Section 17704.05, the member or manager is personally liable to the limited liability company for the amount of the distribution that exceeds the amount that could have been distributed without the violation of Section 17704.05.

(b) To the extent the operating agreement of a member-managed limited liability company expressly relieves a member of the authority and responsibility to consent to distributions and imposes that authority and responsibility on one or more other members, the liability stated in subdivision (a) applies to the other members and not the member that the operating agreement relieves of authority and responsibility.

(c) A person that receives a distribution knowing that the distribution to that person was made in violation of Section 17704.05 is personally liable to the limited liability company but only to the extent that the distribution received by the person exceeded the amount that could have been properly paid under Section 17704.05.

(d) A person against which an action is commenced because the person is liable under subdivision (a) may do all of the following:

> (1) Implead any other person that is subject to liability under subdivision (a) and seek to compel contribution from the person.

> (2) Implead any person that received a distribution in violation of subdivision (c) and seek to compel contribution from the person in the amount the person received in violation of subdivision (c).

(e) ***An action under this section is barred if not commenced within four years after the distribution.***

**Cal. Corp. Code § 17707.07**

(a) (1) Causes of action against a dissolved limited liability company, whether arising before or after the dissolution of the limited liability company, may be enforced against any of the following:

(A) Against the dissolved limited liability company to the extent of its undistributed assets, including, without limitation, any insurance assets held by the limited liability company that may be available to satisfy claims.

(B) If any of the assets of the dissolved limited liability company have been distributed to members, against members of the dissolved limited liability company to the extent of the limited liability company assets distributed to them upon dissolution of the limited liability company.

Any member compelled to return distributed assets in an amount that exceeds the sum of the member's pro rata share of the claim and the amount for which the member could otherwise be held liable under Section 17704.05 or 17704.06 may seek contribution for the excess from any other member or manager, up to the sum of that other person's pro rata share of the claim and that other person's liabilities under Section 17704.05 or 17704.06.

(2) Except as set forth in subdivision (c), all causes of action against a member of a dissolved limited liability company arising under this section are extinguished unless the claimant commences a proceeding to enforce the cause of action against that member of a dissolved limited liability company prior to the earlier of the following:

(A) The expiration of the statute of limitations applicable to the cause of action.

(B) *Four years after the effective date of the dissolution of the limited liability company*.

. . .

**CAL. R. Prof'l Conduct 1-100**

(A) Purpose and Function.

> The following rules are intended to regulate professional conduct of members of the State Bar through discipline. They have been adopted by the Board of Governors of the State Bar of California and approved by the Supreme Court of California pursuant to Business and professions Code sections 6076 and 6077 to protect the public and to promote respect and confidence in the legal profession. These rules together with any standards adopted by the Board of Governors pursuant to these rules shall be binding upon all members of the State Bar.

> For a willful breach of any of these rules, the Board of Governors has the power to discipline members as provided by law.

> The prohibition of certain conduct in these rules is not exclusive. Members are also bound by applicable law including the State Bar Act (Bus. & prof. Code, §6000 et seq.) and opinions of California courts. Although not binding, opinions of ethics committees in California should be consulted by members for guidance on proper professional conduct. Ethics opinions and rules and standards promulgated by other jurisdictions and bar associations may also be considered.

> These rules are not intended to create new civil causes of action. Nothing in these rules shall be deemed to create, augment, diminish, or eliminate any substantive legal duty of lawyers or the non-disciplinary consequences of violating such a duty.

(D) Geographic Scope of Rules [. . .]

> (2) As to lawyers from other jurisdictions who are not members:

> ***These rules shall also govern the activities of lawyers while engaged in the performance of lawyer functions in this state***; but nothing contained in these rules shall be deemed to authorize the performance of such functions by such persons in this state except as otherwise permitted by law.

**Cal. R. Prof'l Conduct 3-300**

A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied:

(A) The transaction, and its terms, must be fair and reasonable to the client, fully disclosed in writing in a manner understood by the client; and

(B) The client must be advised, in writing, the he or she may seek advice of an independent lawyer and he or she must be given reasonable opportunity to seek such advice; and

(C) The client must consent to the terms of the transaction in writing.

**Tex. R. of Disc. P. § 17.03. Effect on Related Litigation.**

Neither the Complainant nor the Respondent is affected by the doctrines of res judicata or estoppel by judgment from any Disciplinary Action.

**Tex. Disc. R. of Professional Conduct, Pmbl. 15**

These rules do not undertake to define standards of civil liability of lawyers for professional conduct. Violation of a rule does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached. Likewise, these rules are not designed to be standards for procedural decisions. Furthermore, the purpose of these rules can be abused when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.