Nos. 23-15862 & 23-15990

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SCHRADER CELLARS, LLC,
*Plaintiff, Counter-Defendant – Appellee, Cross-Appellant,*

v.

ROBERT M. ROACH, Jr.,
*Defendant, Counter-Claimant – Appellant, Cross-Appellee,*

On Appeal from the United States District Court
for the Northern District of California
No. 3:21-cv-01431-SK
Honorable Sallie Kim, Presiding

## REPLY AND ANSWERING BRIEF FOR
## APPELLANT, ROBERT M. (RANDY) ROACH, Jr.

William J. Boyce
Robert B. Dubose
ALEXANDER DUBOSE & JEFFERSON LLP
1844 Harvard Street
Houston, Texas 77008
(713) 523-2358
bboyce@adjtlaw.com
rdubose@adjtlaw.com

Manuel López
ROACH NEWTON, LLP
One Westchase Center
10777 Westheimer Rd., Suite 1100
Houston, Texas 77042
(713) 652-5717
MLopez@roachnewton.com

*Attorneys for Appellant,*
*Robert M. (Randy) Roach, Jr.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ v

ROACH'S REPLY BRIEF ..................................................................................................1

ARGUMENT.......................................................................................................................2

I.      Cellars failed to refute the existence of material fact issues that required
        a trial  . ................................................................................................................. 2

        A.      Roach raised fact issues as to whether Roach represented Cellars
                while simultaneously claiming an interest in Cellars.......................... 2

        B.      Roach raised fact issues as to whether the RBS transaction was
                fair   ...........................................................................................................10

        C.      Roach raised fact issues regarding whether he breached his
                fiduciary duties. ...............................................................................13

        D.      Cellars cannot invoke Rule 3-300 because Roach did not claim
                an interest in Cellars. ...................................................................14

        E.      The *Noerr-Pennington* doctrine and the litigation privilege
                justify rendering judgment for Roach on Cellars' declaratory-
                judgment claim. .............................................................................15

II.     Cellars failed to demonstrate its standing to rescind a contract to which
        it is not a party. ..........................................................................................16

III.    Cellars cannot justify its attempt to re-litigate ethics allegations that
        were authoritatively rejected in Texas.......................................................19

        A.      Cellars did not contest that this Court's jurisprudence gives
                Texas primary responsibility to adjudicate Cellars' ethics
                allegations...........................................................................................19

        B.      This Court should reject Cellars' attempts to justify re-litigating
                rejected ethics allegations. .............................................................20

IV.  Cellars failed to defend the district court's illogical dismissal of Roach's non-contract counterclaims based on its decision to void a contract. .................................................................................................23

V.  Cellars' alleged evidence of its "record title" does not defeat Roach's equitable counterclaims or affirmative defenses.........................................27

    A.  Superficial compliance with corporate formalities does not excuse Cellars' inequitable conduct. ..................................................27

    B.  Roach had record title to the investment of his capital contribution and sweat equity. ............................................................28

VI.  Cellars' alternative grounds for affirmance lack merit and would not moot Roach's appeal.......................................................................31

    A.  The statute of frauds does not apply..................................................31

    B.  Roach provided evidence of a partnership and its ownership of RBS ....................................................................................................32

    C.  Fact questions prohibit summary judgment on the basis of limitations......................................................................................34

CONCLUSION ..............................................................................................36

ROACH'S ANSWERING BRIEF .................................................................37

STATEMENT OF THE ISSUES ....................................................................37

STATUTORY PROVISIONS.........................................................................37

SUMMARY OF ARGUMENT ......................................................................38

STATEMENT OF THE CASE .......................................................................39

STANDARD OF REVIEW ............................................................................40

ARGUMENT..................................................................................................41

I.  Roach presented substantial evidence of privilege. .....................................41

    A.  The purpose of both the *Noerr-Pennington* doctrine and the litigation privilege is to prevent retaliatory lawsuits. .........................42

    B.    Substantial evidence demonstrated that Cellars filed this lawsuit in retaliation for Roach's Texas lawsuit. ...........................................43

    C.    Alternatively, the litigation privilege applies as a matter of law. ........46

    D.    Cellars did not sue Roach for a "course of conduct" but rather in retaliation for the Texas litigation. ...................................................47

    E.    The litigation privilege protects attorneys. .......................................49

II.    The privilege instruction accurately stated the law. ....................................50

    A.    The jury instruction did not cause any confusion. ............................51

    B.    The jury instruction did not inappropriately borrow language from California's anti-SLAPP statute.................................................51

    C.    Any error was harmless...................................................................52

    D.    There was legally sufficient evidence to submit the privilege defense to the jury...........................................................................53

III.    The district court did not abuse its discretion in allowing the jury to see Texas pleadings. .......................................................................................53

    A.    Cellars failed to show an abuse of discretion....................................54

    B.    Any error was harmless...................................................................55

IV.    Cellars cannot recover equitable relief. ......................................................56

V.    This Court should reject Cellars' unsupported request to remand for a partial trial only............................................................................................58

VI.    There are sound alternative grounds for dismissing Cellars' fiduciary-duty claim. ...................................................................................................58

    A.    Cellars failed to prove damages. .....................................................58

    B.    Pursuant to the American Rule, California does not permit parties to claim attorneys' fees as damages. .................................................61

    C.    Cellars' claim was time-barred.......................................................62

CONCLUSION ................................................................................64

CERTIFICATE OF COMPLIANCE.....................................................66

CERTIFICATE OF SERVICE............................................................68

STATUTORY ADDENDUM..............................................................69

# TABLE OF AUTHORITIES

## Cases

*A.D. v. California Highway Patrol*,
  712 F.3d 446 (9th Cir. 2013) .............................................................. 41, 48

*Action Apartment Assn., Inc. v. City of Santa Monica*,
  163 P.3d 89 (2007) ................................................................. 42, 43, 46, 52

*Adarand Constructors, Inc. v. Mineta*,
  534 U.S. 103 (2001) ............................................................................... 16

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) ............................................................................... 42

*American Title Ins. Co. v. Lacelaw Corp.*,
  861 F.2d 224 (9th Cir. 1988) ................................................................. 47

*Applied Med. Distribution Corp. v. Surgical Co. BV*,
  587 F.3d 909 (9th Cir. 2009) ................................................................. 20

*Bagdon v. Bridgestone/Firestone, Inc.*,
  916 F.2d 379 (7th Cir. 1990) ................................................................. 34

*Bank of California v. Connolly*,
  111 Cal. Rptr. 468 (Cal. Ct. App. 1973) ................................................ 32

*BGJ Associates, LLC v. Wilson*,
  7 Cal. Rptr. 3d 140 (Cal. Ct. App. 2003) ............................................... 14

*Bowles v. City of Porterville*,
  571 Fed. Appx. 538 (9th Cir. 2014) ....................................................... 44

*Boyd v. City & Cnty. of San Francisco*,
  576 F.3d 938 (9th Cir. 2009) ........................................................... 55, 56

*BP Chemicals Ltd. v. Jiangsu Sopo Corp.*,
  285 F.3d 677 (8th Cir. 2002) ................................................................. 25

*Brewer Env't Indus., LLC v. Matson Terminals, Inc.*,
  2011 WL 1637323 (D. Haw. Apr. 28, 2011) .......................................... 58

*Brown v. New York Life Ins. Co.*,
152 F.2d 246 (9th Cir. 1945) .....................................................................29

*Canatella v. California*,
404 F.3d 1106 (9th Cir. 2005) ..................................................................20

*Cascade Health Sols. v. PeaceHealth*,
515 F.3d 883 (9th Cir. 2008) ....................................................................41

*City of Cotati v. Cashman*,
52 P.3d 695 (Cal. 2002) ...........................................................................15

*Claudine v. West*,
241 P.2d 580 (Cal. Ct. App. 1952) ..........................................................28

*Cobb v. McDonald-Weist Logging Co.*,
278 F. 165 (9th Cir. 1921) ...................................................................9, 28

*Communist Party v. 522 Valencia, Inc.*,
41 Cal. Rptr. 2d 618 (Cal. Ct. App. 1995) ...............................................30

*Cornwell v. City of Riverside*,
896 F.2d 398 (9th Cir. 1990) ....................................................................23

*Dahan v. Sussman Shank, LLP*,
2017 WL 2713737 (C.D. Cal. Feb. 7, 2017) ............................................. 4

*David Welch Co. v. Erskine & Tulley*,
250 Cal. Rptr. 339 (Cal. Ct. App. 1988) ..................................................14

*Epstein v. Stahl*,
1 Cal. Rptr. 143 (Cal. Ct. App. 1959) .................................................28, 29

*Escriba v. Foster Poultry Farms, Inc.*,
743 F.3d 1236 (9th Cir. 2014) ..................................................................55

*Evans v. Eckelman*,
265 Cal. Rptr. 605 (Cal. Ct. App. 1990) ..................................................35

*Faberge, Inc. v. Saxony Prod., Inc.*,
605 F.2d 426 (9th Cir. 1979) ....................................................................57

*Fair v. Bakhtiari*,
125 Cal. Rptr. 3d 765 (Cal. Ct. App. 2011) .................................................14

*Ferguson v. Yaspan*,
183 Cal. Rptr. 3d 83 (Cal. Ct. App. 2014) .............................................4, 12

*Flatt v. Superior Ct.*,
885 P.2d 950 (Cal. 1994) ............................................................... 4

*Fletcher v. Davis*,
90 P.3d 1216 (Cal. 2004) ............................................................... 8

*Fossen v. Blue Cross & Blue Shield of Montana, Inc.*,
660 F.3d 1102 (9th Cir. 2011).................................................23

*Freitag v. California Dept. of Corr.*,
289 Fed. Appx. 146 (9th Cir. 2008) ........................................53

*Gadda v. Ashcroft*,
377 F.3d 934 (9th Cir. 2004)..........................................19, 23

*Gasoline Prod. Co. v. Champlin Ref. Co.*,
283 U.S. 494 (1931)..........................................................58

*Gasperini v. Center for Humanities*,
518 U.S. 415 (1996)..........................................................23

*Gen-Probe, Inc. v. Amoco Corp.*,
926 F. Supp. 948 (S.D. Cal. 1996) ..........................................52

*Graham-Sult v. Clainos*,
756 F.3d 724 (9th Cir. 2014).................................................49

*Gray v. Don Miller & Assocs., Inc.*,
674 P.2d 253 (Cal. 1984) ..........................................................61

*Greene v. Brooks*,
45 Cal. Rptr. 99 (Cal. Ct. App. 1965).................................32, 33

*Haney v. Aramark Unif. Servs., Inc.*,
17 Cal. Rptr. 3d 336 (Cal. Ct. App. 2004)............................26, 27

*Harper v. City of Los Angeles*,
533 F.3d 1010 (9th Cir. 2008)............................................................39, 41

*Hobbs v. Bateman Eichler, Hill Richards, Inc.*,
210 Cal. Rptr. 387 (Cal. Ct. App. 1985)....................................................35

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
527 F. Supp. 2d 1084 (N.D. Cal. 2007)....................................................61

*In Matter of Applicant A*,
3 Cal. State Bar Ct. Rptr. 318, 1995 WL 322593
(Cal. Bar Ct. May 24, 1995)...............................................................21, 22

*In re Allen*,
5 Cal. State Bar Ct. Rptr. 198, 2010 WL 4812781
(Cal. Bar Ct. Nov. 19, 2010) ................................................................4, 6

*In re Brocade Communications Sys., Inc. Derivative Litig.*,
615 F. Supp. 2d 1018 (N.D. Cal. 2009)....................................................35

*In re Kirsh*,
973 F.2d 1454 (9th Cir. 1992)............................................................10, 13

*In re Ruffalo*,
390 U.S. 544 (1968).............................................................................21

*In re Yan*,
381 B.R. 747 (N.D. Cal. 2007)...............................................................31

*Internet Direct Response, Inc. v. Buckley*,
2011 WL 835607 (C.D. Cal. Mar. 7, 2011)...............................................29

*Jodo Shu Betsuin v. Jodoshu N. Am. Buddhist Missions*,
2007 WL 2773937 (Cal. Ct. App. Sept. 25, 2007).....................................31

*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*,
958 P.2d 1062 (Cal. 1998) ........................................................62, 63, 64

*Kashian v. Harriman*,
120 Cal. Rptr. 2d 576 (Cal. Ct. App. 2002).........................................46, 50

*Kolar v. Donahue, McIntosh & Hammerton*,
52 Cal. Rptr. 3d 712 (Cal. Ct. App. 2006)................................................50

*Landgraf v. USI Film Prod.*,
    511 U.S. 244 (1994)................................................................ 9

*Lefner v. State Bar*,
    410 P.2d 832 (Cal. 1966) ........................................................21

*Longenecker v. Gen. Motors Corp.*,
    594 F.2d 1283 (9th Cir. 1979)..................................................54

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................16

*Mapuatuli v. Sessions*,
    714 Fed. Appx. 730 (9th Cir. 2018) ...................................35, 57

*May v. Sasser*,
    666 Fed. Appx. 796 (11th Cir. 2016) ......................................25

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982)................................................................21

*Monarco v. Lo Greco*,
    220 P.2d 737 (1950)................................................................32

*Morales v. Coop. of Am. Physicians, Inc.*,
    180 F.3d 1060 (9th Cir. 1999)..................................................42

*Musaelian v. Adams*,
    198 P.3d 560 (Cal. 2009) ........................................................60

*Nickel v. Bank of Am. Nat. Tr. & Sav. Ass'n*,
    290 F.3d 1134 (9th Cir. 2002)..................................................29

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*,
    210 F.3d 1099 (9th Cir. 2000)..................................................24

*Novato Fire Prot. Dist. v. United States*,
    181 F.3d 1135 (9th Cir. 1999)..................................................25

*Oasis West Realty, LLC v. Goldman*,
    250 P.3d 1115 (Cal. 2011) ......................................................61

*Ramalingam v. Thompson*,
    60 Cal. Rptr. 3d 11 (Cal. Ct. App. 2007) ....................................................52

*Reeves v. Sanderson Plumbing Prod., Inc.*,
    530 U.S. 133 (2000) .....................................................................................45

*Republic Supply Co. of California v. Richfield Oil Co. of California*,
    79 F.2d 375 (9th Cir. 1935) .........................................................................30

*Ringgold Corp. v. Worrall*,
    880 F.2d 1138 (9th Cir. 1989) ....................................................................12

*Rubin v. Green*,
    847 P.2d 1044 (1993) ................................................................16, 42, 43, 52

*S.E.C. v. Clark*,
    915 F.2d 439 (9th Cir. 1990) ......................................................................41

*Safine v. Sinnott*,
    19 Cal. Rptr. 2d 52 (Cal. Ct. App. 1993) ...................................................64

*Schauer v. Mandarin Gems of Cal., Inc.*,
    23 Cal. Rptr. 3d 233 (Cal. Ct. App. 2005) ....................................16, 18, 19

*Sentience Studio LLC v. Sec. Ins. Co. of Hartford*,
    231 Fed. Appx. 583 (9th Cir. 2007) ...........................................................19

*Silberg v. Anderson*,
    786 P.2d 365 (Cal. 1990) ...........................................................................42

*Singleton v. Fuller*,
    259 P.2d 687 (Cal. Ct. App. 1953) .............................................................33

*Small v. Fritz Companies, Inc.*,
    65 P.3d 1255 (2003) ...................................................................................26

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) .................................................................42, 43

*Staley v. Gilead Sciences, Inc.*,
    2022 WL 1158006 (N.D. Cal. Apr. 19, 2022) ............................................60

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    988 F.3d 690 (4th Cir. 2021)....................................................................25

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
    808 Fed. Appx. 459 (9th Cir. 2020) ........................................................57

*Tenzer v. Superscope, Inc.*,
    702 P.2d 212 (Cal. 1985) ...................................................... 26, 27, 31, 32

*Thayer v. Kabateck Brown Kellner LLP*,
    143 Cal. Rptr. 3d 17 (Cal. Ct. App. 2012).................................................50

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)..............................................................................17, 18

*United States v. Black*,
    482 F.3d 1035 (9th Cir. 2007)...................................................................54

*United States v. Raygoza-Garcia*,
    902 F.3d 994 (9th Cir. 2018).....................................................................54

*United States v. Solomon*,
    825 F.2d 1292 (9th Cir. 1987)...................................................................41

*United States v. Wilmer*,
    799 F.2d 495 (9th Cir. 1986).....................................................................45

*Ward v. Westinghouse Canada, Inc.*,
    32 F.3d 1405 (9th Cir. 1994).....................................................................35

*Weiner v. Fleischman*,
    816 P.2d 892 (1991)..................................................................................31

*Zenith Ins. Co. v. O'Connor*,
    55 Cal. Rptr. 3d 911 (Cal. Ct. App. 2007)................................................. 5

**Statutes**

28 U.S.C. § 2106...................................................................................15, 31

CAL. CIV. CODE § 47 ....................................................................................42

CAL. CIV. PROC. CODE § 1021 ................................................................61, 62

C̲ᴀʟ. C̲ɪᴠ. P̲ʀᴏᴄ. C̲ᴏᴅᴇ § 340.6 ........................................................62, 64

C̲ᴀʟ. C̲ᴏʀᴘ. C̲ᴏᴅᴇ § 16101 ............................................................31, 33

C̲ᴀʟ. C̲ᴏʀᴘ. C̲ᴏᴅᴇ § 17701.04 ............................................................ 5

C̲ᴀʟ. E̲ᴠɪᴅ. C̲ᴏᴅᴇ § 623 ......................................................................30

C̲ᴀʟ. P̲ʀᴏʙ. C̲ᴏᴅᴇ § 16004 ......................................................1, 10, 13

**Other Authorities**

C̲ᴀʟ. R̲. P̲ʀᴏꜰ. C̲ᴏɴᴅᴜᴄᴛ, Rule 1.8.1......................................................... 4

C̲ᴀʟ. R̲. P̲ʀᴏꜰ. C̲ᴏɴᴅᴜᴄᴛ, Rule 3-300 ...........................................passim

F̲ᴇᴅ. R̲. C̲ɪᴠ. P̲. 61........................................................................52

F̲ᴇᴅ. R̲. E̲ᴠɪᴅ. 201........................................................................54

T̲ᴇx. R̲. D̲ɪsᴄ. P̲ʀᴏᴄᴇᴅᴜʀᴇ 17.03 ........................................................22

# ROACH'S REPLY BRIEF

## (CASE NO. 23-15862)

Cellars primarily defends the summary judgment by asserting that it had "record title" to RBS and the other wines, even to the point of implying that this was the basis for the summary judgment. Cellars never shows, however, how compliance with inapposite tax and reporting laws could either (1) defeat Roach's tort-based and equitable counterclaims or (2) justify the district court's declaratory judgment.

It does neither. Roach's equitable counterclaims and defenses were based on Cellars' fraud, breach of fiduciary duties, and inequitable conduct. The tortious conduct was thoroughly documented. Under the summary-judgment standard of review, the district court was required to take as true that Fred fraudulently induced Roach to invest all the cash necessary to launch RBS. Fred and Roach even created RBS, LLC to formalize their co-equal ownership of RBS. Cellars, however, kept Roach's capital contribution for itself for nearly 10 years. Under this Court's precedent in *Nickel*, that permitted Roach to seek equitable remedies. Given the evidence of Cellars' misconduct, Cellars cannot justify the summary judgment ruling merely because it paid its taxes.

The actual basis for the summary judgment ruling was the district court's application of Rule 3-300 and Section 16004 as a silver bullet to void the RBS

agreement. Cellars' Response contests little of Roach's evidence that required a trial of Roach's alleged violations and of Cellars' extraordinary misconduct. Nor does Cellars establish its standing to void the RBS agreement or why it should be allowed to re-litigate ethics allegations that had been fully adjudicated in Texas. Cellars also failed to justify the district court's illogical dismissal of Roach's non-contract counterclaims on the basis of voiding a contract. The summary judgment should be reversed.

## ARGUMENT

### I. Cellars failed to refute the existence of material fact issues that required a trial.

Roach pointed to three overarching fact issues that required a jury trial. Roach's Brief at 17-29. To avoid these fact issues, Cellars improperly construes the facts and inferences in its favor.

#### A. Roach raised fact issues as to whether Roach represented Cellars while simultaneously claiming an interest in Cellars.

The first fact issue is whether Roach represented Cellars at the relevant time. Cellars never disputes that there is sufficient summary-judgment evidence — construed in Roach's favor — to establish the following facts:

- In 2001, Roach and Fred entered into the RBS agreement. 4-ER-671 ¶15; 10-ER-1809; 10-ER-1742.

- In 2001 and before, Roach had never represented Cellars. 5-ER-893-94; 5-ER-912-13.

- In 1997 or 1998, Roach provided the only legal advice to Fred before the 2001 RBS agreement — which was provided over a 3-day period regarding a divorce question having nothing to do with Cellars. 4-ER-667-68 ¶5; 4-ER-682-83 ¶41; *cf.* FER-37 (Trial Exhibit 111); 11-ER-2111-21 (confirming that Exhibit 111 described all of the legal matters involving Roach).

- Roach first assisted Cellars in 2003 and next in 2009. 4-ER-667-68 ¶5; 4-ER-682-83 ¶41.

- Pursuant to the 2001 RBS agreement, Fred was the intended client. 4-ER-682-84 ¶¶39-42; 5-ER-893-94; 5-ER-845.

- At all relevant times, Roach only claimed an ownership interest in RBS, not in Cellars. 10-ER-1806.

- In 2004, Cellars denied that it owned RBS. 10-ER-1752.

- Roach did not enter into a business relationship with Cellars. 4-ER-676 ¶25.

These facts establish the following timeline:

| | |
|---|---|
| **1997:** | **Roach provides the only legal advice to Fred before the 2001 RBS agreement.** |
| | **The advice ends after 3 days.** |
| **2001:** | **Fred induces Roach to enter into the RBS agreement.** |
| | **Roach provides no legal advice to either Fred or Cellars.** |
| **2003:** | **Roach represents Cellars for the first time.** |
| **2009:** | **Roach represents Cellars for the second time.** |
| **2021:** | **Roach first claims an interest in Cellars, in the Texas litigation.** |

Under the California Rules, the critical date is 2001. That is when Roach entered into a business transaction with Fred to acquire an interest in the separate RBS wine project. According to the commentary to the current version of Rule 3-

3

300, "Fairness and reasonableness … are measured at the time of the transaction or acquisition based on the facts that then exist." Comment, CAL. RULES PROF. CONDUCT, Rule 1.8.1; *see also Ferguson v. Yaspan*, 183 Cal. Rptr. 3d 83, 92-93 (Cal. Ct. App. 2014) (describing this rule as "blackletter law").

Conversely, the years 1997, 2003, and 2009 are irrelevant because Roach neither entered into a business transaction with Cellars nor sought any interest in Cellars in those years. *See In re Allen*, 5 Cal. State Bar Ct. Rptr. 198, 205, 2010 WL 4812781, at *5 (Cal. Bar Ct. Nov. 19, 2010) (holding that it is an "essential element" of Rule 3-300 that the parties had an attorney-client relationship "**at the time of**" the transaction at issue) (emphasis added). Thus, contrary to Cellars' accusation, Roach is not trying to "reinvent[]" the attorney-client relationship; but merely seeking to have a jury determine whether Roach represented Cellars while simultaneously entering into a business relationship with Cellars.

Instead of challenging the evidence of the sequence of events, Cellars questions whether the creation of an attorney-client relationship is a question of fact. Cellars' Brief at 33 n.5. The California Supreme Court resolved this issue by expressly recognizing "the factual nature underlying the formation" of an attorney-client relationship. *Flatt v. Superior Ct.*, 885 P.2d 950, 953 (Cal. 1994). The duration of an attorney-client relationship is also a fact issue. *See Dahan v. Sussman Shank, LLP*, 2017 WL 2713737, at *6 (C.D. Cal. Feb. 7, 2017).

Cellars backhandedly dismisses as irrelevant the evidence of the parties' intent. *See* Cellars' Brief at 30. The existence of an attorney-client relationship, however, turns on whether the parties intended to enter into an "implied contract" to form an attorney-client relationship. *Zenith Ins. Co. v. O'Connor*, 55 Cal. Rptr. 3d 911, 920 (Cal. Ct. App. 2007).

Cellars also claims that Roach admitted that he violated Rule 3-300. Cellars' Brief at 23-24. The record does not support this erroneous assertion. According to Roach's testimony, Rule 3-300 would not apply because Roach never personally entered into a business transaction with Cellars:

- "I did not enter into any agreement with … Cellars."

- "Cellars … never asked me to enter into any agreement or relationship."

- "I did not knowingly seek to acquire an ownership interest in Schrader Cellars …."

4-ER-676 ¶25.

Cellars makes six other arguments for the application of Rule 3-300. Cellars' Brief at 30-36. First, Cellars asserts that Rule 3-300 applies "no matter who [Roach] claims to have represented at the time." *Id*. at 30-31. But this makes no sense. By statute, Cellars is a separate legal entity. CAL. CORP. CODE § 17701.04(a). Cellars cites no authority for the proposition that Roach's agreement to represent Fred triggers the application of Rule 3-300 to his separately incorporated businesses.

Cellars' Brief at 30-31; *cf. id.* at 32-33 (citing privilege cases addressing how corporations secure legal advice through their employees).

Further, Cellars impermissibly construes the facts in its favor to establish that Roach continuously represented Fred since 1997. Cellars' Brief at 31. Roach's legal advice was episodic, meaning that Roach provided legal advice that was "extremely limited in its scope" in response to Fred's specific requests, with each instance often involving only a "few hours" of work. 4-ER-682-84 ¶¶40-42. The 1997 legal advice took less than three days. 4-ER-667-68 ¶5. That does not prove that Roach represented Cellars in 2001. *See Allen*, 5 Cal. State Bar Ct. Rptr. at 204-05.

Second, Cellars argues that Rule 3-300 applies because Roach "sought to obtain an ownership interest" in the RBS wine — which allegedly belonged to Cellars. Cellars' Brief at 31. But this overlooks an obvious fact issue: Cellars expressly denied ownership of RBS. 10-ER-1752. Fred and Cellars represented that RBS was separate from Cellars. 4-ER-671-76 ¶¶15, 21, 24. The district court concluded that RBS was separate. 1-ER-78.

Third, Cellars asserts that it is "undisputed" that Roach represented Cellars, emphasizing the 2003 Mondavi matter. Cellars' Brief at 32. The timing question matters, and cannot be disregarded: did Roach represent Cellars while simultaneously claiming an ownership interest in Cellars? The above facts show that Roach did not represent Cellars at the time of the RBS agreement in 2001. 5-

ER-893-94; 5-ER-912-13. Cellars does not point to any evidence that Cellars even needed Roach's legal advice in 2001.

Cellars again improperly construes the summary-judgment evidence in its favor by claiming that the RBS agreement "included [Roach's] representation of Cellars, not just Fred." *Id.* But Cellars' evidence is entirely consistent with the evidence that, at the time of the 2001 RBS agreement, Fred was the intended client. 4-ER-682-84 ¶¶39-42; 5-ER-893-94; 5-ER-845; *see also* 3-SER-318 ("I had a partnership agreement that -- that required me to provide legal representation to Fred"). Fred **subsequently** invoked the RBS agreement to direct Roach to provide discrete legal advice to Cellars. *See* 4-ER-682-83 ¶41.[1]

Cellars also cites a 2004 document to claim that Roach held himself out as Cellars' "general counsel." 3-SER-524. Roach's declaration, however, explained that Roach never functioned as Cellars' general counsel and that any reference to that role "related only to my work for Fred …." 4-ER-684 ¶42. In fact, the 2004 document specifies that Roach "became legal counsel to Napa vintner Fred Schrader." *Id.* Most importantly, as Cellars admits, Roach did not claim an interest

---

[1] Cellars incorrectly asserts that the district court "struck Roach's declaration as fraudulent." Cellars' Brief at 32 n.4. To the contrary, the district court left the issue unresolved and declined to make the factfinding that Cellars alleges. 1-ER-97 n.5 ("To the extent this statement can be read as stating that Roach did not perform any legal services while being physically present in California ….").

in Cellars until the Texas litigation (in January 2021), long after the attorney-client relationship had ended in 2016.  *See* 4-ER-713.

Fourth, Cellars argues that the parties' subjective intent to enter into an attorney-client relationship became irrelevant after Fred secured legal advice from Roach for Cellars — *i.e.*, in 2003.  Cellars' Brief at 32-33.  Cellars, however, fails to prove that Roach's episodic legal advice coincided with Roach's claim of an ownership interest in Cellars.  *See generally id*.  To the contrary, Roach did not claim an ownership interest in Cellars until 2021.  4-ER-713.

Fifth, Cellars argues that the RBS agreement itself triggered Rule 3-300.  Cellars' Brief at 33-34 (citing *Fletcher v. Davis*, 90 P.3d 1216, 1221 (Cal. 2004)).  Roach, however, did not seek an interest in Cellars through the RBS agreement, only an interest in RBS, which Cellars admitted was separate.  4-ER-671-76 ¶¶15, 21, 24.  *Fletcher* is thus irrelevant.[2]

Sixth, Cellars contends that Rule 3-300 can only be satisfied by a never-ending series of disclosures and review by independent lawyers following every modification of the RBS agreement, no matter how minor.  Cellars' Brief at 34-35.  Cellars cites no authority for that proposition.  *See id*.  That would set the bar so high

---

[2] Cellars incorrectly claims that Roach admitted "that his claimed ownership arises out of an agreement for Cellars' legal representation …."  Cellars' Brief at 33.  But resolving all disputed evidence in favor of Roach, Fred was the intended client.  4-ER-682-84 ¶¶39-42; 5-ER-893-94; 5-ER-845.

that it could never be satisfied. Roach previously urged this Court not to adopt such a rule. Roach's Brief at 19. Cellars did not respond to that discussion.

Moreover, applying such a rule to this case would give Fred repeated opportunities to retroactively reject the deal after it was "already completed" and Roach had already invested his time and money. *Landgraf v. USI Film Prod.*, 511 U.S. 244, 280 (1994) (describing the retroactive effect of a statute). Similarly, equity prohibits applying such a rule in this case because Fred had already "accepted the benefit of the contract." *Cobb v. McDonald-Weist Logging Co.*, 278 F. 165, 167 (9th Cir. 1921).

Cellars emphasizes that Roach represented Cellars in January 2003 — before Cellars deposited Roach's last capital-contribution check. Cellars' Brief at 34-35. But Cellars' secret misappropriation of Roach's RBS investment in 2003 could not have triggered Rule 3-300. At that time, Roach had been told and believed that RBS was separate. 10-ER-1806; 4-ER-671-76 ¶¶15, 21, 24. Moreover, there is summary-judgment evidence that Roach learned for the first time in the Texas litigation that Cellars had misappropriated Roach's RBS investment. *See* 4-ER-788-91. Cellars' secret misappropriation and "commingling" in 2003 could not have triggered Rule 3-300.

**B.  Roach raised fact issues as to whether the RBS transaction was fair.**

The next fact issue was the fairness of the RBS agreement and whether Fred was fully advised.  *See* CAL. PROB. CODE § 16004(c).  Cellars now claims that a violation of Rule 3-300, by itself, invalidates the RBS agreement.  Cellars' Brief at 25.  But the district court ruled that an additional finding of unfairness and undue influence under Section 16004 was necessary.  1-ER-96.  This Court's on-point precedent agrees that a violation of the rules is insufficient.  *In re Kirsh*, 973 F.2d 1454, 1461 (9th Cir. 1992).

In response, Cellars repeatedly reiterates the district court's conclusion that Roach failed to argue fairness below.  Cellars' Brief at 18, 26-27.  To the contrary, Roach expressly contested fairness.  *See* 4-ER-659-60; 4-ER-552-53.

Focusing on waiver, Cellars gives short shrift to the summary-judgment evidence of fairness.  *See* Cellars' Brief at 25-28.  Roach emphasized to the district court that he was the "only financial investor" for Fred's "unproven RBS venture." 4-ER-659-60 (citing 4-ER-678 ¶30).  At the time, Cellars was essentially a failed venture.  4-ER-733-36; 4-ER-668 ¶6.  So Roach was not taking advantage of a former client, but was instead taking a "gamble" on Fred's next big idea.  5-ER-827-28.

Roach's summary-judgment response also described how Fred and Cellars had fraudulently induced the entire transaction.  4-ER-654 (citing 4-ER-671 ¶15).

The district court should have drawn all reasonable inferences in favor of Roach from this evidence: (1) the fraudulently induced transaction was extremely favorable to Fred and (2) Fred was fully aware of the terms of the deal, *i.e.*, of what he would secretly gain from his fraud.

Nor was there any reason for the district court to disregard the background facts in Roach's summary-judgment response which also raised a fact issue on fairness:

- Fred solicited the deal. 4-ER-641.

- Roach made a cash infusion. *Id.*

- Fred "refused" Roach's request for a written partnership agreement. 4-ER-642.

- Fred demanded Roach's complete trust. *Id.*

As to whether Fred was fully advised, Roach discussed the terms of the agreement with Fred, raising a fact issue about whether Fred was fully advised. 4-ER-659-60 (citing 4-ER-669 ¶8).

The participation of Fred's law firm, Farella Braun + Martel, confirms that there are fact issues as to whether Fred was fully advised. First, it is undisputed that Farella prepared a detailed, 17-page draft of the operating agreement for RBS, LLC, which spells out the details of the partnership. 10-ER-1779-96. Cellars put that document into evidence. 4-ER-694. Fred rejected Farella's draft, as Cellars admits,

which raised a fact issue as to whether Fred was fully informed of its contents. 4-ER-677 ¶26; Cellars' Brief at 8.

Moreover, Farella was Fred's pre-existing law firm. 4-ER-677 ¶26. In fact, Roach testified that "RBS, LLC became Farella's client, effectively making both Fred and me its joint clients." *Id.* Thus, Farella served as Fred's "lawyer-agent," and its knowledge should be imputed to Fred. *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141-42 (9th Cir. 1989).

Separately, Cellars claims that the RBS agreement was unfair as a matter of law by selectively analyzing narrow aspects of the deal. Cellars' Brief at 26-27. California law, however, required the district court to consider the deal as a whole. *Ferguson*, 183 Cal. Rptr. 3d at 92.

Cellars also misconstrues the terms of the RBS agreement. Cellars complains that the RBS agreement gave Roach "the right to 50% of the profits of RBS wine in perpetuity." Cellars' Brief at 26. Roach, however, agreed to plow his profits back into RBS "to grow and expand the RBS wine business." 4-ER-669 ¶8. So Roach's financial interest in the RBS project would be realized only when RBS was sold. In fact, Fred promised Roach that he would "promptly tell [Roach] in advance of any future RBS sale discussions." 4-ER-690-91 ¶62.

### C. Roach raised fact issues regarding whether he breached his fiduciary duties.

The next fact issue is whether Roach breached his fiduciary duties. Cellars relies almost exclusively on its assertion that Roach did not meet his burden of proof under Section 16004, essentially merging this question with the above-discussed question of fairness. *See* Cellars' Brief at 28-30. Cellars, however, does not dispute the evidence that Roach was fraudulently induced into investing in the RBS project. *See*, *e.g.*, 4-ER-671 ¶15.

The evidence of Cellars' fraud justifies a trial on its fiduciary-duty accusations. Roach was fraudulently induced to act by the very party accusing him of a breach of fiduciary duty. If a fraudfeasor can win a breach of fiduciary duty claim as a matter of law on summary judgment, that would effectively nullify this Court's conclusion that the Rules of Professional Conduct "were not intended as a protection for clients who wrong their lawyers." *Kirsh*, 973 F.2d at 1461.

The evidence of fraud also distinguishes this case from virtually every authority cited by Cellars. Only this Court's decision in *Kirsh* involved a client's fraud on the lawyer. *See Kirsh*, 973 F.2d at 1457. Thus, it is especially significant that *Kirsh* rejected the imposition of automatic liability based on the rules: "This is not a case where a faithless attorney has taken advantage of his client. Quite the reverse." *Id.* at 1461.

Moreover, Cellars does not dispute the overarching rule that whether a party breached his fiduciary duties is inherently a fact issue. *See David Welch Co. v. Erskine & Tulley*, 250 Cal. Rptr. 339, 342 (Cal. Ct. App. 1988). Nor does Cellars dispute that both cases it relies on were decided after a full trial on the merits. *See BGJ Associates, LLC v. Wilson*, 7 Cal. Rptr. 3d 140, 146 (Cal. Ct. App. 2003); *Fair v. Bakhtiari*, 125 Cal. Rptr. 3d 765, 773 (Cal. Ct. App. 2011).

Given the above, this Court should reverse the district court's summary-judgment conclusion that "Roach breached his fiduciary duty to Cellars." 1-ER-50.

### D. Cellars cannot invoke Rule 3-300 because Roach did not claim an interest in Cellars.

Cellars did not contest Roach's argument that Rule 3-300 could not apply as to Cellars because Roach never claimed an interest in Cellars until 2021. Roach's Brief at 28-29; Cellars' Brief at 30-36. Roach's legal representation ended in July 2016. 6-ER-1128 ¶96. Before then, Roach had only claimed an interest in RBS, pursuant to the RBS agreement. 10-ER-1806; 10-ER-1752. Nor did Roach enter into a business transaction with Cellars, because Cellars was not a party to the RBS agreement. 4-ER-676 ¶25. Cellars' failure to respond effectively concedes that Rule 3-300 cannot apply to Cellars as a separate legal entity.

**E.** **The *Noerr-Pennington* doctrine and the litigation privilege justify rendering judgment for Roach on Cellars' declaratory-judgment claim.**

Cellars argues waiver to resist Roach's additional request for this Court to dismiss Cellars' declaratory-judgment claim on the basis of the *Noerr-Pennington* doctrine and the litigation privilege — not just reverse summary judgment. Cellars' Brief at 44, 49. Roach, however, pled those defenses and won a jury verdict on them. 2-ER-184-85; 5-ER-990. Cellars did not dispute that it repeatedly admitted that it filed this lawsuit in response to Roach's Texas litigation. *See* Roach's Brief at 31; Cellars' Brief at 49-51. By statute, this Court has the discretion to direct the entry of any judgment "as may be just under the circumstances." 28 U.S.C. § 2106. It is entirely reasonable for Roach to ask this Court to acknowledge the import of these admissions and prohibit Cellars from continuing to prosecute its impermissible declaratory-judgment claims.

Legally, Cellars relies on anti-SLAPP authorities to resist Roach's request. Cellars' Brief at 49-50 (citing *City of Cotati v. Cashman*, 52 P.3d 695 (Cal. 2002)). *Cotati* did not rule on either the *Noerr-Pennington* doctrine or the litigation privilege. *See Cotati*, 52 P.3d at 698. So *Cotati* is off-point.[3] The core purpose of

---

[3] *Cotati* is also distinguishable because, in *Cotati*, the potentially retaliatory lawsuit did not even mention the earlier lawsuit. *Cotati*, 52 P.3d at 700. Here, Cellars' lawsuit admitted that it was filed in response to Roach's Texas lawsuit. 6-ER-1109-10 ¶¶12-14.

both *Noerr-Pennington* and the litigation privilege is to prohibit retaliatory lawsuits. *See*, *e.g.*, *Rubin v. Green*, 847 P.2d 1044, 1050 (1993) (identifying "the evils … accompanying retaliatory suits").  There is no basis to rely on off-point caselaw to override the core purpose of these jurisprudentially important doctrines.

## II.    Cellars failed to demonstrate its standing to rescind a contract to which it is not a party.

Cellars makes several admittedly "cursory" arguments in response to Roach's challenge to its standing.  *See* Cellars' Brief at 44-46.  But Cellars never challenged the core principle that only parties to a contract have standing to void a contract.  *See Schauer v. Mandarin Gems of Cal., Inc.*, 23 Cal. Rptr. 3d 233, 240-41 (Cal. Ct. App. 2005).  Nor does Cellars point to any evidence that it was a party to the RBS agreement.  *See* Cellars' Brief at 44-46.  This is a critical failure because Cellars had the burden of proof on standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To defend its standing, Cellars first asserts waiver.  Cellars' Brief at 44. Standing, however, is jurisdictional and cannot be waived.  *See Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001).

Second, Cellars asserts that Roach is "[r]ecasting Cellars' claims as seeking 'recission.'" Cellars' Brief at 44. This repeats Cellars' prior admission that it "never brought a claim for recission or asked the Court to rescind any contract …." 2-ER-

137.[4]  This is irrelevant to standing.  Admittedly, all plaintiffs must establish standing "for each form of relief that they seek."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  But standing is also a limit on the power of the district court:  "Article III does not give federal courts the power to order relief to any uninjured plaintiff …."  *Id.* (citations omitted).  The district court thus exceeded its power by voiding the RBS agreement.  *See* 1-ER-94; 1-ER-104.

Third, Cellars implies that Roach previously admitted that Cellars was a party to the relevant contract:  "Roach alleges Cellars was a party to some oral agreement …."  Cellars' Brief at 44.  To the contrary, the RBS agreement was solely between Roach and Fred.  4-ER-669-74 ¶¶7-20.  In this passage, Cellars is alluding to a separate license agreement by which Cellars "would make and sell the wine for our separate RBS business."  4-ER-670 ¶11.  The summary-judgment order, however, voided only the RBS agreement.  *See* 1-ER-94; 1-ER-104.  Cellars admitted the separateness of the two agreements when it confirmed, in writing, that (1) Cellars was not a party to the RBS "project" and (2) "Cellars produces and sells the wines for the project."  10-ER-1752.

Fourth, Cellars claims that Roach failed to specify "which claim lacks standing."  Cellars' Brief at 45.  Roach is narrowly challenging Cellars' standing to

---

[4] To the contrary, Cellars repeatedly sought to void the RBS agreement.  4-ER-721-24; 4-ER-537-38; 4-ER-542.

obtain the remedy of rescission. By law, "plaintiffs must demonstrate standing …
for each form of relief that they seek …." *TransUnion LLC*, 594 U.S. at 431.

Fifth, Cellars argues that, in light of Roach's counterclaims, it does not need
to prove standing. Cellars' Brief at 45. Effectively, Cellars is alleging that it was
the defendant. To the contrary, Cellars was the plaintiff. As Cellars admits, the
district court "granted summary judgment on its claim for declaratory relief" and
declared Cellars the "sole owner" of the assets. *Id.* That declaratory judgment was
based on rescission, and it cannot survive *Schauer*. Moreover, rescission is not a
valid defense to Roach's non-contract counterclaims, which were based on Cellars'
**tortious** conduct. *See* Roach's Brief at 50-60. Cellars cannot circumvent *Schauer*
by claiming that a contract defense like rescission was a defense to its tortious
conduct.

Sixth, Cellars argues that the jury found that it suffered an injury-in-fact.
Cellars' Brief at 45. But the jury's answer to a causation question does not establish
that Cellars has standing to rescind a contract to which it is not a party. Standing "is
not dispensed in gross." *TransUnion*, 594 U.S. at 431. Cellars must prove that it
has standing to obtain the specific remedy that the district court awarded: rescission.
*See id.*

Seventh, Cellars claims that Roach's argument under *Schauer* goes to the
merits, not to standing. Cellars' Brief at 45-46. Cellars completely failed to refute

Roach's argument that *Schauer* undermines two elements of standing: (1) there is no "injury in fact" because Cellars does not have a "legally protected interest" in voiding the RBS agreement and (2) there is no redressability because *Schauer* prohibits Cellars from voiding the RBS agreement. *See* Roach's Brief at 34. Cellars thus effectively conceded that it cannot meet the elements of Article III standing. Moreover, this Court's own authority treated a similar doctrine as a rule of standing. *See Sentience Studio LLC v. Sec. Ins. Co. of Hartford*, 231 Fed. Appx. 583, 584 (9th Cir. 2007).

## III. Cellars cannot justify its attempt to re-litigate ethics allegations that were authoritatively rejected in Texas.

The next dispositive issue is whether the district court wrongly based its summary judgment on ethics charges that Texas disciplinary authorities and Texas courts had rejected.

### A. Cellars did not contest that this Court's jurisprudence gives Texas primary responsibility to adjudicate Cellars' ethics allegations.

Cellars did not dispute the underpinnings of this Court's "great deference" jurisprudence, including that states have primary responsibility to police the "conduct of the attorneys whom they license." *Gadda v. Ashcroft*, 377 F.3d 934, 944 (9th Cir. 2004). Nor did Cellars contest this Court's holding that each state's control of its own bar is paramount, "regardless of the jurisdiction in which [the

alleged misconduct] occurs." *Canatella v. California*, 404 F.3d 1106, 1110 (9th Cir. 2005).

Cellars did not contest factually that the Texas authorities considered and rejected the same alleged violations at the heart of the district court's summary-judgment order. *See* 9-ER-1517; 9-ER-1520-21; 7-ER-1283. Nor did Cellars dispute this Court's prior holding that the mere application of the law of a different jurisdiction does not mean that the Texas authorities resolved a different legal issue than the one the district court addressed. *See Applied Med. Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909, 918 (9th Cir. 2009).

This law and these facts — which Cellars has effectively conceded — justify overruling the district court's summary judgment. Cellars' lawyers should not be allowed to shop around rejected ethics allegations at the cost of judicial consistency and Roach's due process rights.

## B. This Court should reject Cellars' attempts to justify re-litigating rejected ethics allegations.

Cellars disputes that the Texas authorities actually decided the ethics issue, claiming that they merely refused "to … pursue a grievance against Roach." Cellars' Brief at 46. Cellars is incorrect. The Texas Bar expressly found that Fred's grievances did not "demonstrate misconduct on the part of the lawyer." 6-ER-1269. The Bar "dismissed" Fred's grievances and permitted an appeal. *Id*. A separate

disciplinary body affirmed those dismissals and declared that "The Board's decision is final." 6-ER-1133.

Cellars argues that this Court's "great deference" jurisprudence should be limited to cases involving reciprocal discipline. Cellars' Brief at 46-48. To the contrary, recognizing each state's "extensive control" over its bar is an overriding federal doctrine that should not be disregarded merely because it impacts a civil litigant. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982).

Cellars also argues that allowing a disciplinary proceeding to affect a civil lawsuit would "distort the separate function of attorney discipline." Cellars' Brief at 49. Cellars does not cite any support for its proposed rule. *See id*. The rule is the opposite. Findings in private civil litigation trigger "a strong presumption of validity" in bar proceedings and can sometimes be binding. *See Lefner v. State Bar*, 410 P.2d 832, 834 (Cal. 1966) (presumption of validity); *In Matter of Applicant A*, 3 Cal. State Bar Ct. Rptr. 318, 322, 1995 WL 322593, at *1 (Cal. Bar Ct. May 24, 1995) (giving collateral estoppel effect to a jury's fraud finding in a subsequent bar proceeding).

Cellars' proposed rule also would violate Roach's due process rights. *See In re Ruffalo*, 390 U.S. 544, 551 (1968). Civil litigation should not be a safe haven for the repeated prosecution of ethics charges after an attorney is vindicated. Cellars

freely admitted that it is asserting these ethics allegations offensively here, in California, in order to obtain an advantage in a civil lawsuit in Texas. 4-ER-586. Given this admission, Cellars' lawyers should not be allowed to (1) to disregard the very ethics decisions they solicited and (2) to pick a new forum after they lost in their original forum. *Cf. Applicant A*, 3 Cal. State Bar Ct. Rptr. at 328 (failing to take into account the prior fraud verdict would "undermine the principles of consistency and finality of judicial determinations").

Additionally, Cellars' proposed rule should not apply because Cellars' lawyers also made and lost these same ethics allegations in litigation — not just in disciplinary proceedings. *See* 9-ER-1581-1601. The Texas appellate court also rejected these allegations. *See* 9-ER-1603-65; 6-ER-1271-72.

Importantly, Cellars' fiduciary-duty claim is based exclusively on an alleged violation of the disciplinary rules. The rules are the province of state disciplinary proceedings. Because Cellars is invoking the rules for its advantage in private civil litigation, Cellars should not be able to avoid the results of the prior adjudication of those same alleged rules violations in Roach's favor.

Cellars also asks this Court to follow Texas procedural law, which would not apply "the doctrines of res judicata or estoppel" to Texas disciplinary rulings. TEX. R. DISC. PROCEDURE 17.03. That argument fails for three reasons. First, that Rule does not apply by its own terms. This Court's "great deference" jurisprudence is not

based on res judicata or estoppel. *See Gadda*, 377 F.3d at 944. Second, a state procedural rule does not apply in federal court. *See Gasperini v. Center for Humanities*, 518 U.S. 415, 427 (1996). Third, Texas' procedural law should not displace federal substantive law generally and should not displace this Court's "great deference" jurisprudence specifically. *See Cornwell v. City of Riverside*, 896 F.2d 398, 399 (9th Cir. 1990).

Cellars asserts that the "great deference" argument was waived. Cellars' Brief at 44. Roach presented an extended explanation why there was no waiver, which Cellars did not contest. Roach's Brief at 47-50.

## IV. Cellars failed to defend the district court's illogical dismissal of Roach's non-contract counterclaims based on its decision to void a contract.

The next dispositive issue is the dismissal of Roach's counterclaims based on the district court's cursory and incorrect conclusion that they were "all" based on the voided contract. 1-ER-104. Cellars never contested that this Court's precedent required the district court to evaluate Roach's counterclaims as they were actually pled. *See Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1114-15 (9th Cir. 2011).

Cellars instead responds by reinterpreting the summary judgment ruling as an **evidentiary** holding: "the district court correctly found Roach could not present sufficient evidence in support of [Roach's] claims as a matter of law." Cellars' Brief at 36. To the contrary, the district court was clear: "Roach cannot prevail on his

claims for declaratory relief and equitable accounting, as they are all based on the existence of an enforceable partnership agreement." 1-ER-104.

Cellars responded with multiple additional arguments. First, Cellars accused Roach of misrepresenting his own claims: "Roach did not plead claims for fraud, breach of fiduciary duty, or equitable estoppel, he pled declaratory judgment of ownership." Cellars' Brief at 36. To the contrary, Roach previously described how his ownership claims were based on Cellars' fraud, breach of fiduciary duties, and equitable estoppel. Roach's Brief at 51-56. Cellars did not respond to that discussion. Cellars' Brief at 36-40.[5]

Second, Cellars points to one line in the "notice" of its summary-judgment motion to argue that it triggered Roach's obligation to prove Cellars' tortious conduct. Cellars' Brief at 37 (citing 4-ER-703). This Court has flatly rejected that procedure: "A moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000).

Nevertheless, there was extensive evidence of Cellars' misconduct. *See*, *e.g.*, 4-ER-788-91 (describing Roach's discovery of Cellars' misappropriation of his RBS

---

[5] Cellars incorrectly asserts that "Roach's counterclaims sought a declaration Cellars could not establish its equity and assets." Cellars' Brief at 36.

investment money); 4-ER-681 ¶36 (describing 15 years of ownership misrepresentations made to obtain free services from Roach). Cellars' accounting records betray its knowledge of Roach's "investment" in the RBS "joint venture." *See* 10-ER-1742-44; 4-ER-755-56. Cellars represented to Roach in writing that Cellars did not own RBS. 10-ER-1752.

Third, Cellars invites this Court to reinterpret Roach's claims as asserting contract claims: "No matter the tort theory Roach termed his claims, he ultimately sought to enforce an oral agreement …." Cellars' Brief at 37. Cellars' sole authority provides no support for reinterpreting a party's pleadings. *See Novato Fire Prot. Dist. v. United States*, 181 F.3d 1135, 1139-40 (9th Cir. 1999) (invalidating a "refreshingly candid" attempt by a municipality to tax the federal government).

Other circuits have rejected the reinterpretation of pleadings — because the plaintiff is the "master of his complaint." *See BP Chemicals Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 683-86 (8th Cir. 2002); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 728 (4th Cir. 2021); *May v. Sasser*, 666 Fed. Appx. 796, 798 (11th Cir. 2016).

Fourth, Cellars asserts that an enforceable contract is a necessary element of Roach's tort claims. Cellars' Brief at 38 ("[T]here must still be an agreement for ownership underlying the purported fraud or breach [of fiduciary duties]."). To the contrary, under California law, a fraud claim can proceed even if the underlying

contract is unenforceable. *See Tenzer v. Superscope, Inc.*, 702 P.2d 212, 218-19 (Cal. 1985). The same is true for equitable estoppel. *See id.* at 216-18.

Cellars also argues, as a matter of policy, that Roach's fraud claims improperly circumvent Rule 3-300 by "weaponiz[ing] his client's alleged representations" about the voided contract. Cellars' Brief at 38. To the contrary, California's fundamental public policy is "discouraging fraud." *Haney v. Aramark Unif. Servs., Inc.*, 17 Cal. Rptr. 3d 336, 339 (Cal. Ct. App. 2004). "Persons claiming that, for reasons of policy, they should be immune from liability for intentional fraud bear a very heavy burden of persuasion ...." *Small v. Fritz Companies, Inc.*, 65 P.3d 1255, 1265 (2003).

Cellars next asserts that there was no reasonable reliance as a matter of law. Cellars' Brief at 38-39. Cellars failed to address Roach's prior discussion of this issue. *See* Roach's Brief at 59-60. Substantively, Cellars argues that Roach cannot reasonably rely on legal advice from a non-lawyer. Cellars' Brief at 38-39. Cellars, however, fails to explain how Fred's false promises of a partnership, ownership, and financial interest in RBS constitute legal advice. *See id.*

Cellars baldly asserts that the only basis for a fiduciary duty was the voided RBS agreement. Cellars' Brief at 39. Cellars, however, did not contest Roach's prior discussion of the multiple ways that a fiduciary duty arose here. *See* Roach's Brief at 53.

**V.    Cellars' alleged evidence of its "record title" does not defeat Roach's equitable counterclaims or affirmative defenses.**

Cellars' lead argument is that it proved "record title" to the wines by, for example, paying its taxes.  Cellars' Brief at 19-22.  Summary judgment was not entered on this basis.  *See* 1-ER-93-94 (setting out the legal issues to be addressed in the summary judgment order); 1-ER-104 (describing the basis for granting summary judgment).

Regardless, Roach is asserting equitable rights, not superior legal title.  For example, Cellars is equitably estopped from denying Roach's ownership interest following years of publicly and privately representing Roach as the owner of RBS.  *See* 5-ER-1025-32.  In fact, Cellars' "record title" is part of the fraud.  Cellars told Roach that it did not own RBS.  *See* 10-ER-1752.  Now, Cellars claims that it always treated RBS as exclusively its own property.

**A.    Superficial compliance with corporate formalities does not excuse Cellars' inequitable conduct.**

Cellars cites no authority indicating that compliance with inapposite regulatory requirements defeats equitable claims, especially those based on fraud.  *See* Cellars' Brief at 19-22.  Nor is this true as a matter of policy.  In California, "discouraging fraud" is fundamental public policy.  *Haney*, 17 Cal. Rptr. 3d at 339.

California cases establish the priority of equitable remedies over legal formalities.  *See Tenzer*, 702 P.2d at 216-18 (applying equitable estoppel to defeat

the statute of frauds); *Claudine v. West*, 241 P.2d 580, 581 (Cal. Ct. App. 1952) (not permitting a businessman to use his partner's non-compliance with legal requirements as an excuse to avoid contractual obligations); *Epstein v. Stahl*, 1 Cal. Rptr. 143, 147-50 (Cal. Ct. App. 1959) (not permitting a "greedy and avaricious joint venturer to keep for himself all the fruits of the venture" merely because of the plaintiff's failure to comply with licensing requirements).

This Court's jurisprudence is in accord. *See Cobb*, 278 F. at 167. In *Cobb*, a debtor in bankruptcy had a statutory right to void a contract because the other party failed to follow certain regulatory requirements. *Id*. This Court prohibited the exercise of that statutory right because the debtor had "accepted the benefit of the contract." *Id*. Under *Cobb*, Cellars' compliance with inapposite regulations does not trump Roach's equitable remedies.

### B. Roach had record title to the investment of his capital contribution and sweat equity.

Cellars argues that Roach cannot invoke Section 2224 because Roach supposedly has no title to any relevant assets. Cellars' Brief at 22, 39-40. The premise behind this argument is mistaken.

As Cellars implicitly admits, Roach had title to his fraudulently induced original investment. *Id*. at 21. Cellars kept possession of Roach's money from 2001 to 2010. *See* 10-ER-1742. Roach's investment was extraordinarily valuable because it was the seed money to purchase the prestigious Beckstoffer Tokalon grapes that

28

turned Cellars into a successful cult wine maker. *See* 4-ER-737-39; 4-ER-668-70 ¶¶7, 10; 4-ER-734-36; 5-ER-827-28. Roach also provided Fred free business services for 15 years. 4-ER-679-86 ¶¶35, 39-49. Under California law, that is valuable consideration that can support the existence of a partnership and the ownership interests that go with it. *See Epstein*, 1 Cal. Rptr. at 146.

Cellars' own authority confirms that its 10-year retention of Roach's investment is a sufficient property interest: "profits derived from wrongfully retained property can be subject to a constructive trust." *Internet Direct Response, Inc. v. Buckley*, 2011 WL 835607, at *8 n.8 (C.D. Cal. Mar. 7, 2011).

Roach also has ownership interests pursuant to this Court's opinion in *Nickel*: "The elementary rule of restitution is that if you take my money and make money with it, your profit belongs to me." *Nickel v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 290 F.3d 1134, 1138 (9th Cir. 2002); *see also Brown v. New York Life Ins. Co.*, 152 F.2d 246, 249-50 (9th Cir. 1945) (imposing a constructive trust over a life insurance payout because the policy premiums were paid with stolen funds).

Under *Nickel*, it does not matter that Cellars eventually repaid Roach, with most of the agreed interest. *See Nickel*, 290 F.3d at 1138. In *Nickel*, a bank tried to remedy a breach of fiduciary duty by repaying the amounts owed, with interest. *See id*. at 1136. This Court held that was not enough. *See id*. at 1138. Instead, disgorgement of **all** of the wrongdoer's profits was required. *See id*.

Further, when a fiduciary commingles trust funds with its own, "the whole will be treated as trust property." *Republic Supply Co. of California v. Richfield Oil Co. of California*, 79 F.2d 375, 377 (9th Cir. 1935). It is undisputed that Cellars commingled Roach's RBS investment by treating it like a loan. 5-ER-854-55.

Cellars' lead case is distinguishable. *See Communist Party v. 522 Valencia, Inc.*, 41 Cal. Rptr. 2d 618 (Cal. Ct. App. 1995). In *522 Valencia*, the plaintiff claimed that it was the intended owner of two corporations, invoking the **alter-ego doctrine**. *See id.* at 622 n.3. In contrast, Roach seeks a constructive trust based on Cellars' fraudulent acquisition of his investment and free labor. This distinguishing fact is outcome determinative. According to *522 Valencia*, a constructive trust is appropriate when "property has been wrongfully acquired or detained." *Id.* at 624. That is precisely what occurred here. 4-ER-671 ¶15.

There is also the remedy of equitable estoppel under Section 623, which Cellars did not address. CAL. EVID. CODE § 623. Here, even though Roach eventually recouped his principal, Roach was promised an overarching financial interest in the RBS project that he would realize when RBS was sold. *See* 4-ER-690-91 ¶62. Equitable estoppel prevents Cellars from "contradict[ing]" that representation. CAL. EVID. CODE § 623.

## VI. Cellars' alternative grounds for affirmance lack merit and would not moot Roach's appeal.

Cellars asserts three alternative grounds for affirmance, two of which the district court did not reach. Cellars' Brief at 40-43. This Court has and should exercise the discretion to remand these issues for the district court to rule on them in the first instance. 28 U.S.C. § 2106. Moreover, all three grounds are irrelevant to half of the district court's summary judgment order — which granted declaratory relief as well as dismissed Roach's counterclaims. For example, Cellars' limitations defense cannot establish that Cellars is the exclusive owner of the assets at issue. That question remains active in Roach's Texas lawsuit. Granting these alternative arguments would not moot Roach's appeal of the summary-judgment order.

### A. The statute of frauds does not apply.

First, Cellars invokes the statute of frauds. Cellars' Brief at 40. By statute, however, partnership agreements can be oral. CAL. CORP. CODE § 16101(a)(10); *see also Weiner v. Fleischman*, 816 P.2d 892, 895 (1991). Accordingly, the statute of frauds does not apply to partnership agreements. *In re Yan*, 381 B.R. 747, 753 (N.D. Cal. 2007); *Jodo Shu Betsuin v. Jodoshu N. Am. Buddhist Missions*, 2007 WL 2773937, at *15 (Cal. Ct. App. Sept. 25, 2007) (citing cases).

Moreover, estoppel prevents the application of the statute of frauds whenever it would cause either an unconscionable injury or unjust enrichment. *Tenzer*, 702 P.2d at 216-18. Invoking estoppel is especially appropriate "to prevent fraud."

31

*Monarco v. Lo Greco*, 220 P.2d 737, 739 (1950).  Because of these fact-intensive issues, any summary judgment based on the statute of frauds would be "improper[]." *Tenzer*, 702 P.2d at 218.

**B.  Roach provided evidence of a partnership and its ownership of RBS.**

Second, Cellars argues that Roach failed to prove that the RBS partnership even existed.  Cellars' Brief at 41-43.  Cellars also claims that the partnership had no "title" to anything.  *Id*. at 41.

Roach's tort-based claims do not depend on an enforceable partnership agreement.  Roach's Brief at 50-60.  Nevertheless, the existence of a partnership is ordinarily a fact question.  *See Bank of California v. Connolly*, 111 Cal. Rptr. 468, 478 (Cal. Ct. App. 1973).  "The ultimate test of the existence of a partnership is the intention of the parties to carry on a definite business as co-owners."  *Greene v. Brooks*, 45 Cal. Rptr. 99, 102 (Cal. Ct. App. 1965).  The courts make this determination from the parties' "conduct and oral understandings."  *Id*.

Roach testified that Fred and Roach intended to carry on a definite business as co-owners:  "the development, promotion, and sale of a new wine like RBS was discussed between the partners as being an open-ended, long-term ownership project …."  4-ER-670 ¶14; *see generally* 4-ER-668-74 ¶¶7-20.  Roach funded the RBS partnership.  4-ER-671 ¶15.  Roach called his investment a "capital contribution."  10-ER-1806.  Cellars' accounting records recognized the partnership as a "joint

venture." 10-ER-1742-44; 4-ER-755-56. Cellars advertised that Roach was a "partner[]." 10-ER-1775. Cellars made numerous admissions to third parties of Roach's partnership interests. 10-ER-1737; 10-ER-1733; 4-ER-681 ¶36; 4-ER-743-45; 4-ER-747-48.

Moreover, Roach had the right of joint control. 10-ER-1803 (indicating that "all … members" of RBS, LLC would manage the business); 4-ER-678 ¶30 ("We agreed that major decisions for our partnership were to be made jointly."). It is irrelevant that Roach agreed that Fred would manage "day-to-day" operations: "by agreement, one partner may be given the duty of management of the enterprise …." *Singleton v. Fuller*, 259 P.2d 687, 691 (Cal. Ct. App. 1953). Plus, Roach participated in management. Roach initiated the formation of RBS, LLC. 4-ER-673-74 ¶20. Roach provided legal advice in his "sole discretion" and participated in marketing decisions. 4-ER-678-79 ¶¶30, 33. This creates a fact issue. *See Singleton*, 259 P.2d at 688-92.

Cellars also attacks the partnership because (1) it failed to follow corporate formalities and (2) Fred refused to sign the partnership agreement. Cellars' Brief at 41-42. This is irrelevant. California allows informal partnerships, which can be "written, oral, or implied." CAL. CORP. CODE § 16101(a)(10). The partners do not even need to "realize that they are partners …." *Greene*, 45 Cal. Rptr. at 102.

There was summary-judgment evidence that the partnership owned the RBS wine. The partnership funded RBS. 10-ER-1806-07; 4-ER-668-71 ¶¶7-11; 4-ER-671 ¶15. Cellars admitted that RBS is owned by "Fred and Roach only." 10-ER-1752. Cellars admitted that it merely provided services to the RBS project. *Id.* At trial, the jury perceived that the RBS partnership was likely the owner of the RBS wine, asking the key question, "Was there a registered LLC or Inc. for RBS exclusively?" 12-ER-2252. The judge did not tell them the answer. 12-ER-2254-55. Yes, there was.

Cellars also attacks the partnership based on Fred's cancellation of RBS, LLC. Cellars' Brief at 41. Fred's unilateral cancellation of RBS, LLC was improper. 4-ER-674-75 ¶¶22. After the cancellation, the handshake partnership operated exactly as before, with Fred's continuing representations that Roach was a "partner in RBS." 4-ER-674-76 ¶¶22-23. Further, Roach has asserted personal claims that do not belong to RBS, LLC, including fraud-based claims. Fred's wrongful cancellation of RBS, LLC does not deprive Roach of his personal claims. *See Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 381 (7th Cir. 1990).

## C. Fact questions prohibit summary judgment on the basis of limitations.

Third, Cellars asserts that Roach's claims are barred by limitations. Cellars' Brief at 43. In open court, the district court held that fact issues about the discovery

rule precluded summary judgment on limitations: "I think that's a factual issue." 4-ER-556-557.

Cellars did not acknowledge this ruling and thus "failed to address the district court's reasoning in [its] opening brief." *Mapuatuli v. Sessions*, 714 Fed. Appx. 730, 731 (9th Cir. 2018). For this reason alone, this Court could reject Cellars' limitations argument. *See id*.

The district court correctly rejected limitations. Cellars invoked California's four-year statute. 4-ER-717. The discovery rule applies. *See In re Brocade Communications Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1035-36 (N.D. Cal. 2009); *Evans v. Eckelman*, 265 Cal. Rptr. 605, 608 (Cal. Ct. App. 1990). Under the discovery rule, limitations does not run until "a reasonable person" in the plaintiff's shoes is on inquiry notice of both (i) the injury and (ii) "potential wrongdoing." *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1407 (9th Cir. 1994). Above all, the date of discovery is a fact question. *Id*. at 1408.

Roach testified that Fred was his partner and fiduciary. 4-ER-667 ¶2; 4-ER-668-70 ¶¶7-14; 4-ER-674-75 ¶22. That created fact issues. *See Hobbs v. Bateman Eichler, Hill Richards, Inc.*, 210 Cal. Rptr. 387, 403-04 (Cal. Ct. App. 1985). Fred demanded Roach's "complete trust." 4-ER-672 ¶18. Fred continuously assured Roach that he was an owner and partner. 4-ER-673 ¶19. The email that supposedly constituted notice indicated that a vote of the entire partnership was necessary to

cancel RBS, LLC.  4-ER-674-75 ¶22.  No such vote occurred.  *Id*.  Roach testified that he "completely trusted Fred to (i) follow the law, (ii) follow the legal advice contained in the email, and (iii) respect my right to vote yes or no on the issue."  *Id*.  Fred did none of those things.  *See id*.  Afterwards, the partnership business continued on just as before, with assurances and public statements that Roach was a "partner in RBS."  4-ER-674-76 ¶¶22, 23.  This evidence raised a fact issue about the discovery rule.

## CONCLUSION

For the foregoing reasons, the Court should reverse the summary judgment, dismiss Cellars' declaratory-judgment claim, and remand Roach's counterclaims for trial.

## ROACH'S ANSWERING BRIEF

## (CASE NO. 23-15990)

## STATEMENT OF THE ISSUES

1.      Was there substantial evidence to support the jury's finding of privilege?

2.      Did the jury instructions constitute an abuse of discretion and, if so, was the error harmful?

3.      Did the district court abuse its discretion in its evidentiary rulings and, if so, was the error harmful?

4.      Is Cellars entitled to seek equitable disgorgement despite losing its fiduciary-duty claim?

5.      Can Cellars meet the element of damages when a non-party paid the attorneys' fees that constituted Cellars' only potential damages?

6.      Can attorneys' fees serve as the basis for meeting the element of damages?

7.      Was Cellars' fiduciary-duty claim barred by limitations?

## STATUTORY PROVISIONS

The text of the pertinent statutes are set forth in the Statutory Addendum.

## SUMMARY OF ARGUMENT

In its cross-appeal, Cellars seeks to set aside the jury verdict. The jury found that Cellars filed this lawsuit in retaliation for Roach's Texas lawsuit, triggering both the *Noerr-Pennington* doctrine and California's litigation privilege. There was substantial evidence supporting the jury's finding, including Cellars' extensive examination of Roach about the Texas lawsuit. Cellars' own expert admitted that Roach's Texas lawsuit was the basis for Cellars' claim of damages — because Cellars needed to "quiet title" to the wines.

Cellars also attacks the jury instructions, arguing that the word "gravamen" was inappropriately borrowed from another area of law. There was no abuse of discretion. California courts repeatedly use the word "gravamen" to describe the same question that the jury answered.

Cellars also complains that the jury was allowed to see Roach's pleadings from the Texas litigation. Again, there was no abuse of discretion. The district court was merely trying to avoid jury confusion. To address Cellars' concern, the district court instructed the jury that the pleadings were not evidence. This careful balancing is exactly how district courts are supposed to exercise their discretion. Moreover, Cellars itself introduced pleadings from Roach's Texas lawsuit into evidence. Cellars cannot have it both ways.

Cellars also asks this Court to reverse the trial court's denial of the equitable remedy of disgorgement. Cellars, however, cannot lose at trial and still recover equitable remedies. Moreover, Cellars does not acknowledge that equitable remedies are discretionary. Cellars provides no reason to disturb the district court's exercise of its discretion.

Finally, Roach will show — for three reasons — that Cellars' fiduciary-duty claim should never have reached a jury. For example, the only basis for Cellars' claim of damages was its attorneys' fees. Yet Cellars did not pay those fees — Fred did. There is no reason to reverse the jury verdict when Cellars' fiduciary-duty claim was legally invalid.

## STATEMENT OF THE CASE

Cellars' Statement of the Case failed to "disregard all evidence favorable to [Cellars] that the jury is not required to believe." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008).

The original focus of Roach's 2018 Texas lawsuit was to recover Roach's ownership and financial interest in the RBS wine. 12-ER-2206-09. During the Texas lawsuit, however, Roach learned that Cellars misappropriated Roach's RBS capital contribution. 12-ER-2208-09. Fred testified that he always intended for RBS to be "not separate" from Cellars and that Fred intended to treat Roach money as a loan to Cellars. 12-ER-2208-09 (mistakenly transcribing "a loan" as "alone").

In January 2021, following this discovery, Roach filed his Fifth Amended Petition in Texas that was more directly adverse to Cellars. 12-ER-2267-68; 12-ER-2287. In response, Cellars began investigating whether to file the current lawsuit in January 2021 — and then filed it in February 2021. 12-ER-2267-68. Cellars' expert testified that the motive for this lawsuit was to "quiet title" to the wines in response to Roach's Fifth Amended Petition. 12-ER-2267-68; 12-ER-2271-72; 12-ER-2276-78; 12-ER-2287; 12-ER-2290-92. Cellars wanted to shut down Roach's "false claim of ownership." 12-ER-2271-72; 12-ER-2287.

Cellars claims that "No witness addressed Roach's defense of privilege." Cellars' Brief at 14. In addition to the above testimony, however, Roach testified extensively about the Texas lawsuit. 11-ER-2145-57; 12-ER-2160-61; 12-ER-2205-12.

Separately, Roach demonstrated that Fred testified dishonestly about whether Cellars' accounting records treated Roach's capital contribution as an investment. 11-ER-2089-90.

## STANDARD OF REVIEW

Cellars provided an incomplete standard of review.

As to Cellars' appeal of its Rule 50 motion, a reviewing court "[1] must view all evidence in the light most favorable to the nonmoving party, [2] draw all reasonable inferences in the favor of the non-mover, and [3] disregard all evidence

favorable to the moving party that the jury is not required to believe." *Harper*, 533 F.3d at 1021. Granting a Rule 50 motion is only proper if the evidence "permits only one reasonable conclusion." *A.D. v. California Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013). The reviewing court gives "significant deference to the jury's verdict …." *Id.*

As to the jury instructions, Cellars omits that the relevant standard is abuse of discretion. *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 917 (9th Cir. 2008). This is particularly true "in formulating the precise language of jury instructions." *United States v. Solomon*, 825 F.2d 1292, 1295 (9th Cir. 1987).

As to the denial of equitable relief, Cellars omits that the relevant standard is abuse of discretion. *S.E.C. v. Clark*, 915 F.2d 439, 454 (9th Cir. 1990).

## ARGUMENT

### I.    Roach presented substantial evidence of privilege.

Cellars asserts that Roach did not present substantial evidence to support the verdict. Cellars' Brief at 56-60. According to Cellars, Roach's only evidence was "Roach's pleadings from a Texas lawsuit." Cellars' Brief at 56, 58. To the contrary, there was substantial evidence that Cellars filed this lawsuit in retaliation for Roach's Texas lawsuit.

**A.** **The purpose of both the *Noerr-Pennington* doctrine and the litigation privilege is to prevent retaliatory lawsuits.**

Roach's privilege defense was based on the *Noerr-Pennington* doctrine and California's litigation privilege. "The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people ... to petition the Government ....'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). The famous "breathing space" principle applies to "overprotect[]" this constitutional right. *Id.* at 934. Roach's Texas lawsuit constitutes protected activity under *Noerr-Pennington*. *See id.* at 929-31. The *Noerr-Pennington* doctrine creates an "absolute immunity." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988).

California's litigation privilege is similar. By statute, a "publication or broadcast" made in a "judicial proceeding" is privileged. CAL. CIV. CODE § 47(b). "[T]he litigation privilege is held to be absolute in nature." *Silberg v. Anderson*, 786 P.2d 365, 370 (Cal. 1990). "[A]ny doubt as to whether the privilege applies is resolved in favor of applying it." *Morales v. Coop. of Am. Physicians, Inc.*, 180 F.3d 1060, 1062 (9th Cir. 1999). The litigation privilege protects "the filing of a legal action" like Roach's Texas lawsuit. *Action Apartment Assn., Inc. v. City of Santa Monica*, 163 P.3d 89, 101 (2007).

Both doctrines prohibit retaliatory lawsuits. As the California Supreme Court concluded, "this retaliatory suit is not maintainable." *Rubin*, 847 P.2d at 1045. The

purpose of California's litigation privilege is to prevent "another round of litigation." *Id.* at 1049-51. The purpose of the privilege is "curtailing derivative lawsuits." *Action Apartment*, 163 P.3d at 95. The same is true under *Noerr-Pennington*. As this Court explained, citizens are entitled to "enjoy the right of access to the courts without fear of prosecution." *Sosa*, 437 F.3d at 934.

Here, the jury found that Cellars filed its fiduciary-duty claim in retaliation for Roach's Texas lawsuit. *See* 2-ER-184-85, Question 4. As Cellars' counsel told the jury, Question 4 asked whether Cellars sought to "punish" Roach for bringing his Texas lawsuit. 13-ER-2449. The jury answered yes.

## B. Substantial evidence demonstrated that Cellars filed this lawsuit in retaliation for Roach's Texas lawsuit.

There was substantial evidence of retaliation, starting with Cellars' own extensive trial examination of Roach. For 15 pages, Cellars questioned Roach about the Texas lawsuit. 11-ER-2145-57; 12-ER-2160-61; *cf.* 12-ER-2205-12. During this examination, Cellars introduced the Texas Original Petition as an exhibit. 11-ER-2145-49. Cellars paid special attention to Roach's Fifth Amended Petition — emphasizing that it sought to unwind Constellation's acquisition of Cellars. 11-ER-2154-57. Later in the trial, the jury learned that the Texas court rejected Constellation's motion to abate, but invited Cellars to intervene in Texas. 13-ER-2377; 12-ER-2210-12; *cf.* 6-ER-1274. Instead of intervening in Texas, Cellars filed this lawsuit.

43

Second, Roach's Texas lawsuit was the basis for Cellars to prove an **element** of its fiduciary-duty claim, *i.e.*, damages. *See* 11-ER-1985-92 (opening statement). Specifically, Cellars' only claim for damages was the attorneys' fees that it expended to shut down the Texas lawsuit and Roach's claims of ownership. Cellars' own expert confirmed that those fees were incurred to "quiet title" after Roach's Texas lawsuit called the ownership of the assets into question. 12-ER-2267-68; 12-ER-2271-72; 12-ER-2276-78; 12-ER-2287; 12-ER-2290-92.

Third, Cellars' excuse for filing this lawsuit was false. Fred testified that his motive for financing this lawsuit was to vindicate his "legacy" from Roach's claims of ownership, but that the Texas lawsuit had nothing to do with it. 11-ER-2071-73. To the contrary, the great majority of Cellars' claims against Roach were non-ownership claims, including claims for false advertising, unjust enrichment, defamation, trade libel, and trademark infringement. 12-ER-2277-78.

Fourth, the jury could have found Fred's testimony to be dishonest. *See* 11-ER-2089-90. That dishonesty empowered the jury to conclude the **opposite** of Fred's testimony: "[It is the] prerogative of the jury to disbelieve the testimony of a party and conclude that the opposite of his testimony is true." *Bowles v. City of Porterville*, 571 Fed. Appx. 538, 542 (9th Cir. 2014) (Korman, J., dissenting) (citing cases). As the Supreme Court explained, "the factfinder is entitled to consider a

party's dishonesty about a material fact as 'affirmative evidence of guilt.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000).

Fifth, Cellars verbally admitted its retaliatory motives at trial. Fred testified that Roach's actions constituted a "shakedown." 11-ER-2070. In closing, when describing what led to Cellars' lawsuit, Cellars likewise referred to Roach's Texas lawsuit as a "shakedown." 13-ER-2382; 13-ER-2386-87. Cellars accused Roach of "threatening" to take ownership of Cellars, "lock, stock, and barrel." 11-ER-1987-89. Supposedly, Roach's request for compensation "became troublesome enough to require this lawsuit." 11-ER-1988. Cellars said that "[i]t's about time for the onslaught to end." 11-ER-1993. The jury had every right to treat these statements as admissions that Cellars sued Roach in retaliation for his Texas lawsuit. *United States v. Wilmer*, 799 F.2d 495, 502 (9th Cir. 1986) (concessions at oral argument are judicial admissions).

Sixth, Cellars admitted its retaliatory motive in writing. The district court took judicial notice of Cellars' original Complaint and published it to the jury. 1-SER-3; FER-38-90 (Trial Exhibit 617); 13-ER-2376-77; 13-ER-2372-73. In that Complaint, Cellars admitted that the basis for its lawsuit was to defeat Roach's Texas lawsuit. FER-41-42 ¶¶13-15; *see also* 6-ER-1109-10 ¶¶12-14 (Amended Complaint). Those admissions were unambiguous.

In addition to attacking the evidence of retaliation, Cellars also briefly challenges whether Roach provided evidence of the elements of the litigation privilege. The privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants …; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." *Action Apartment*, 163 P.3d at 95.

Roach's testimony met these elements. (1) Roach identified a Texas lawsuit, *i.e.*, a judicial proceeding. 12-ER-2206-07. (2) Roach was a litigant. *Id.* (3) Roach filed the Texas pleadings in order to assert his ownership interest in RBS. 12-ER-2207-08. (4) The Texas pleadings have a logical connection to the Texas lawsuit. *See Kashian v. Harriman*, 120 Cal. Rptr. 2d 576, 598 (Cal. Ct. App. 2002) ("The communications in this case were not only related to the litigation, they *were* the litigation ….").

## C. Alternatively, the litigation privilege applies as a matter of law.

Addressing only the litigation privilege, Cellars asserts that it should be decided as a matter of law. Cellars' Brief at 56. Cellars appears to be mistaken. The California Supreme Court identified a "question of fact" with the privilege. *Action Apartment*, 163 P.3d at 102-03. Other California authorities indicate that the litigation privilege only constitutes a question of law "[i]f there is no dispute as to the operative facts …." *Kashian*, 120 Cal. Rptr.2d at 593.

Here, the district court identified the decisive fact question: did Cellars assert the fiduciary-duty claim because of Roach's Texas lawsuit — or because Roach had made "public comments" about potentially taking over Cellars, as Fred spuriously claimed. 1-ER-11.

But even if the litigation privilege were a question of law, it would still apply. Cellars repeatedly admitted that it filed this lawsuit in response to Roach's Texas litigation. *See* Roach's Brief at 31 (collecting Cellars' admissions). Some of these admissions appeared in Cellars' pleadings and thus constitute judicial admissions. *See American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Most vividly, Cellars said it sought to "nullify[]" Roach's ownership claims in Texas. 4-ER-591. Importantly, one of Cellars' admissions confirmed that Cellars' fiduciary-duty claims were specifically brought in response to Roach's Texas lawsuit. 4-ER-586. There is no reason to disturb the verdict for reaching the same conclusion as Cellars' admissions.

### D. Cellars did not sue Roach for a "course of conduct" but rather in retaliation for the Texas litigation.

Again addressing only the litigation privilege, Cellars claims that it did not sue Roach in retaliation for his Texas lawsuit but for Roach's underlying "course of conduct." Cellars' Brief at 58-60. According to Cellars, it merely "learned" of Roach's breach from Roach's Texas lawsuit. *Id.* Cellars did not object to the jury instructions on this basis. 2-SER-161-65.

The standard of review defeats this argument. The jury found retaliation. 2-ER-184-85. To avoid that verdict, Cellars must show that the evidence "permits only one reasonable conclusion." *A.D.*, 712 F.3d at 453. Cellars, however, did not systematically refute the trial evidence supporting the verdict. Cellars' Brief at 58-60, 64. Instead, Cellars only addressed one narrow category of evidence — pleadings from Texas and from this lawsuit. *Id.*

Moreover, Cellars' lawsuit directly arises from Roach's Texas lawsuit — because Roach's Texas lawsuit served as an **element** of Cellars' fiduciary-duty claim. Specifically, the Texas lawsuit caused Cellars to expend the attorneys' fees that it claims as damages. Before trial, Cellars admitted this in open court: "the theory is that by clouding the ownership of Schrader Cellars through that action in Texas is what our damage is." 3-ER-373; *see also* 3-ER-409-12. That damage claim violates the privilege. 2-ER-254-55.

Cellars later recanted this admission. At trial, however, there was substantial evidence that Cellars' alleged damages arose from its attempt to "quiet title" by shutting down Roach's Texas lawsuit. 12-ER-2267-68; 12-ER-2271-72; 12-ER-2276-78; 12-ER-2287; 12-ER-2290-92. Cellars' expert testified that he calculated over $2 million in attorneys' fees "in connection with … quieting the title to assets." 12-ER-2276-78. The expert directly linked the Texas lawsuit to Cellars' attorneys' fees:

Q. And do you know what Cellars did in response [to Roach's Fifth Amended Petition in Texas]?

\*\*\*

[A.] Cellars engaged Pillsbury to evaluate whether there were claims that could be asserted to quiet title to its property ….

12-ER-2267-68.

Cellars argues that it sought to "quiet title" only in response to Roach's public comments that Roach was going to take over Cellars. Cellars' Brief at 57-58. However, as the district court explained, "The way in which Roach attempted to gain a pecuniary interest was by filing and prosecuting the Texas litigation." 1-ER-11.

## E. The litigation privilege protects attorneys.

Cellars also asserts that the litigation privilege does not apply to legal malpractice claims. Cellars' Brief at 57. As a preliminary matter, "Cellars ignores that Roach's defense was also based on the federal privilege under the *Noerr-Pennington* doctrine." 1-ER-23.

The district court rejected this argument because Cellars did not sue Roach for malpractice. 1-ER-9-10; *cf. Graham-Sult v. Clainos*, 756 F.3d 724, 742 (9th Cir. 2014) ("But here, Plaintiffs do not assert a *malpractice* claim ….") (emphasis in original). In fact, Fred was fully satisfied with Roach's legal services. 11-ER-2065.

More in depth, the district court explained why the litigation privilege does not apply to "garden variety legal malpractice actions." 1-ER-61. In short, the "key

49

purpose" of the litigation privilege is "to promote freedom of access to the courts …
without the fear of retaliatory lawsuits." *Kolar v. Donahue, McIntosh &
Hammerton*, 52 Cal. Rptr. 3d 712, 719 (Cal. Ct. App. 2006). That rationale does not
apply when the client sues the attorney for **how** the attorney prosecuted the lawsuit
on behalf of the client. *Id*. at 718.

In contrast, the jury found that Cellars brought this retaliatory lawsuit against
Roach for prosecuting the Texas lawsuit on his **own** behalf. 2-ER-184-85. As the
district court explained, California courts draw a distinction "between a situation
where an attorney is sued for acts taken on behalf of a **client** and a situation where
an attorney is sued for acts taken on behalf of a **third-party**." 1-ER-61 (emphasis
added).

In summary, the privilege protects Roach's attempt, on his own behalf, "to
gain ownership of Cellars" through the Texas lawsuit. 1-ER-10; *cf. Kashian*, 120
Cal. Rptr. 2d at 596 (the privilege applies to lawsuits filed on behalf of sham
plaintiffs). Thus, the privilege applies here. *See Thayer v. Kabateck Brown Kellner
LLP*, 143 Cal. Rptr. 3d 17, 30-31 (Cal. Ct. App. 2012).

## II.    The privilege instruction accurately stated the law.

Cellars next complains about the jury instructions. Cellars' Brief at 61-64.
The district court issued correct instructions and did not abuse its discretion.

## A.     The jury instruction did not cause any confusion.

Cellars first claims confusion.  The jury instructions asked whether "the gravamen — or heart — of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas lawsuit." 1-ER-55; 2-ER-184-85. Supposedly, the jury might answer this question "yes" on the basis of an innocuous finding that Cellars merely learned about Roach's breach from the Texas lawsuit. Cellars' Brief at 61-62.

The plain language of the instruction refutes the alleged confusion.  The instruction does not instruct the jury to decide "whether the Texas lawsuit informed Cellars of its claim."  It used strong, clear language directing the jury to determine whether the "gravamen" or "heart" of Cellars' claim was the Texas lawsuit.  1-ER-55; 2-ER-184-85.

Importantly, the jury did not express any confusion about this issue.  Plus, Cellars initially failed to offer an alternate instruction.  1-ER-9; 2-SER-183-91. There is thus no basis for finding that the district court abused its discretion.

## B.     The jury instruction did not inappropriately borrow language from California's anti-SLAPP statute.

Cellars also contends that the charge inappropriately borrowed language from California's anti-SLAPP statute.  Cellars' Brief at 62 n.10.  Cellars focuses on the word "gravamen." *Id.*

This argument does not withstand scrutiny. "Gravamen" is a common word, and it can be used in multiple contexts. Moreover, the word was accurate. California courts use the word "gravamen" to describe the same privilege question that the jury answered. *See Rubin*, 847 P.2d at 1049; *Action Apartment*, 163 P.3d at 100-01; *Ramalingam v. Thompson*, 60 Cal. Rptr. 3d 11, 19 (Cal. Ct. App. 2007).

In a footnote, Cellars also argues that the jury instructions inaccurately described the *Noerr-Pennington* doctrine. Cellars' Brief at 63 n.11. To the contrary, the instructions were accurate: "*Noerr* immunity bars any claim, federal or state, common law or statutory, that has as its **gravamen** constitutionally-protected petitioning activity." *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 956 (S.D. Cal. 1996) (emphasis added). Further, Cellars did not object to the jury instructions on this basis. 2-SER-161-65; 11-ER-1883-84.

In that same footnote, Cellars claims that it was deprived of the opportunity to argue the sham litigation exception to *Noerr-Pennington*. In open court, however, Cellars denied that it would pursue that exception. 2-ER-227-29. Cellars never offered an instruction on sham litigation. 1-ER-11. Nor did Cellars plead the exception. *See generally* 6-ER-1106-31.

## C.    Any error was harmless.

Moreover, any purported error in the charge was harmless. FED. R. CIV. P. 61. Cellars itself accurately told the jury the meaning of the language at issue:

"That's what that question is actually after, Number 4. Are we here to just punish him for filing suit?" 13-ER-2449.

When combined with Cellars' admissions of its retaliatory intent, any errors were "more probably than not harmless." *Freitag v. California Dept. of Corr.*, 289 Fed. Appx. 146, 148 (9th Cir. 2008) (finding charge error harmless after taking into account "counsel's closing arguments, and the overwhelming evidence presented at trial").

**D.  There was legally sufficient evidence to submit the privilege defense to the jury.**

Cellars also argues that there was "no evidence" to support the submission of the privilege question to the jury. Cellars' Brief at 64. This argument merely repeats Cellars' prior argument that no substantial evidence supports the verdict. Roach incorporates his discussion, *supra* at 43-45, of the six categories of evidence supporting the verdict.

**III.  The district court did not abuse its discretion in allowing the jury to see Texas pleadings.**

Cellars next objects to the district court's decision to treat "pleadings from the Texas litigation as evidence." Cellars' Brief at 65. Specifically, Cellars objects to Trial Exhibit 601, Roach's First Amended Petition in the Texas litigation. FER-244-64.

### A. Cellars failed to show an abuse of discretion.

The district court handled the issue properly. First, the district court took judicial notice of the filing dates of certain pleadings and instructed the jury to accept those dates as conclusive. 1-SER-3; 13-ER-2376-77.

Cellars asserts that this first step was impermissible. Cellars' Brief at 65. To the contrary, taking judicial notice of uncontroverted facts and informing the jury of those facts is a routine act expressly authorized by the Rules. FED. R. EVID. 201(f); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system ….") (citations omitted); *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER.").

Next, to avoid jury confusion, the district court allowed the jury to see the pleadings: "without the documents, the jurors are not going to be able to understand what happened." 13-ER-2366. To account for Cellars' objection that "pleadings are not evidence," the district court instructed the jury not to treat the pleadings as evidence. 1-SER-3; *see generally* 13-ER-2364-73. This careful balancing is exactly the type of decision that is left to the trial court's broad discretion. *Cf. Longenecker v. Gen. Motors Corp.*, 594 F.2d 1283, 1286 (9th Cir. 1979) ("Trial judges are better

able to sense the dynamics of a trial than we can ever be, and broad discretion must be accorded them ….").

The district court's decision also was not an abuse of discretion because Cellars' objection was disingenuous. At trial, Cellars introduced a different pleading from the Texas lawsuit as an exhibit (Roach's Original Petition). 11-ER-2146-49; FER-265-69.[6] Cellars also submitted another filing from the Texas lawsuit into evidence. 11-ER-2151-53; FER-91-243. Cellars' inconsistency justified the district court's decision to allow the jury to see Exhibit 601. 1-ER-11-12.

## B. Any error was harmless.

If there was any error, it was harmless, meaning that it was "more probable than not" that the jury would have reached the same verdict. *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 949 (9th Cir. 2009).

First, the district court issued a jury instruction to address Cellars' concern that the pleadings were not evidence. 1-SER-3; 13-ER-2376-77. There is a "strong" presumption that juries follow instructions. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014). Under *Escriba*, the jury instruction renders any error harmless. *See id.*

---

[6] Cellars mistakenly asserts that this document was not admitted into evidence. Cellars Brief at 66.

Second, Cellars' expert provided evidence that Exhibit 601 (Roach's First Amended Petition) was superseded and irrelevant. He testified that a subsequent Texas petition — the Fifth Amended Petition — triggered Cellars' efforts to "quiet title." 12-ER-2267-68.

Third, Cellars wrongly asserts that it had "no notice" that the jury would consider Exhibit 601. Cellars' Brief at 66. To the contrary, the district court had previously ruled that Exhibit 601 was admissible. 1-ER-12; FER-31.

Fourth, the district court took judicial notice of Cellars' original Complaint and published it to the jury. 1-SER-3. In that Complaint, Cellars freely admitted that the basis for its lawsuit was to defeat Roach's Texas lawsuit. FER-41-42 ¶¶13-15. Because the jury saw Cellars' admissions firsthand, it is unlikely that Roach's Texas pleadings would have caused the jury to reach a different verdict.

Additionally, there was considerable evidence, discussed above, of Cellars' retaliatory motive. So it was more probable than not that the jury would have reached the same verdict. *See Boyd*, 576 F.3d at 949 (finding harmless error due to the "overall strength" of the evidence).

## IV. Cellars cannot recover equitable relief.

Cellars next appeals the district court's denial of disgorgement of the wine that Roach received pursuant to the RBS agreement. Cellars' Brief at 67-68. This assertion is meritless. First, Cellars lost at trial. 2-ER-184-85. The district court

expressly denied disgorgement because the jury found that Roach's affirmative defenses defeated Cellars' cause of action. 1-ER-12-13. How can Cellars recover disgorgement without winning the underlying cause of action? By not answering this question, Cellars failed to address the district court's straightforward reasoning. *See Mapuatuli*, 714 Fed. Appx. at 731.

Second, the district court had broad discretion to deny Cellars' request for equitable relief. *See Faberge, Inc. v. Saxony Prod., Inc.*, 605 F.2d 426, 429 (9th Cir. 1979); *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 808 Fed. Appx. 459, 460 (9th Cir. 2020). By not acknowledging that the decision was discretionary, Cellars provides no reason to disturb the exercise of that discretion. *See generally* Cellars' Brief at 67-68. Moreover, before trial, the district court telegraphed that disgorgement would be denied because of Cellars' unclean hands. 2-ER-227-31. "[T]here is substantial evidence of [Cellars'] unclean hands here." 2-ER-231. That strongly supports the denial of equitable relief.

Third, Cellars was not a party to the RBS agreement. As a result, Cellars has no standing to recoup the wine. At trial, Fred unequivocally testified "I gave him wine …." 11-ER-2127; *see also* 11-ER-2132; 11-ER-2098. In addition to defeating Cellars' standing, this is another factor supporting the district court's exercise of discretion to deny disgorgement.

Fourth, the district court correctly held that limitations barred Cellars' claim for disgorgement. 1-ER-13-14. Roach will address limitations below.

## V. This Court should reject Cellars' unsupported request to remand for a partial trial only.

In its conclusion, Cellars asks for a partial new trial "limited to the damages and equitable relief." Cellars' Brief at 69. Cellars does not provide any analysis to support that request. Partial retrials are disfavored, and they can only be ordered when "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prod. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931). Here, the issue of damages "is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter ...." *Id.*

## VI. There are sound alternative grounds for dismissing Cellars' fiduciary-duty claim.

Cellars' fiduciary-duty claim should have never reached a jury for three independent reasons. Roach asserted these arguments below. 2-ER-186-207; 2-ER-161-83. All three present pure questions of law.

### A. Cellars failed to prove damages.

The first issue is whether Cellars can claim attorneys' fees as damages when Fred — not Cellars — took responsibility for paying those fees. As the district court acknowledged, this issue implicates Cellars' standing. 12-ER-2307; *see Brewer Env't Indus., LLC v. Matson Terminals, Inc.*, 2011 WL 1637323, at *6 (D. Haw.

58

Apr. 28, 2011) (party had no standing to recover payments that were "paid exclusively" by another party).

At trial, the only damages that Cellars claimed were its attorneys' fees. 1-ER-52. It was undisputed that Fred paid those fees. 11-ER-2072-74, 11-ER-2123-26, 11-ER-2130-31; 11-ER-1989. Importantly, Cellars never undertook the obligation to pay the attorneys' fees. Before filing suit, Fred voluntarily agreed to take full responsibility for the fees:

> Q. And when you -- you brought suit, it sounds like you talked about it with the current owners.
>
> A. Yes, I did.
>
> Q. And did you agree to pay the legal fees for the suit?
>
> A. I did agree to pay the legal fees.

11-ER-2073.

The district court nevertheless found that Cellars suffered damages. This was error. First, the district court cited Fred's testimony that Cellars somehow "incurred" the fees. 11-ER-2072-74. In actuality, Fred's testimony was inconsistent. He testified three times that he personally "incurred" the fees. 11-ER-2074 (twice); 11-ER-2131. Regardless, this word game does not make a difference legally. Fred provided no explanation what the word "incurred" could mean, given that Fred (1) agreed to take responsibility for paying the fees and (2) was directly invoiced for the fees. 11-ER-2123-26, 11-ER-2130-31. Under California law, Fred incurred the

59

fees. *See Musaelian v. Adams*, 198 P.3d 560, 562 (Cal. 2009) ("[T]he ordinary and usual meaning of the word 'incur' is to 'become liable.'").

Second, the district court pointed to a contingent reimbursement agreement between Fred and Cellars that Cellars creatively described as a "loan." 1-ER-14-15. Fred testified that he would be "paid back" if Cellars recovered attorneys' fees in this lawsuit. 11-ER-2076-77. On close inspection, this arrangement vividly disproves Cellars' alleged injury. In short, Fred agreed to take responsibility for paying the fees, and he might recover them from Roach at trial — with Cellars merely serving as a pass-through. 11-ER-2076-77. No matter the outcome of the trial, Cellars was risk-free.

Third, the district court invoked the collateral-source doctrine, holding that "**if a plaintiff has an obligation to pay, then that plaintiff has been damaged, even if another source is covering the loss.**" 1-ER-15 (citing *Staley v. Gilead Sciences, Inc.*, 2022 WL 1158006, at *7 (N.D. Cal. Apr. 19, 2022)) (emphasis added). Here, the undisputed evidence proved that Cellars never undertook an "obligation to pay." Instead, from the outset, Fred agreed to be responsible for the fees. 11-ER-2072-73. Under *Staley*, that is dispositive. *See Staley*, 2022 WL 1158006, at *7 (finding no standing when Medicaid, not the plaintiffs, had the "obligation to pay").

**B. Pursuant to the American Rule, California does not permit parties to claim attorneys' fees as damages.**

Moreover, by statute, California follows the American Rule. *See* CAL. CIV. PROC. CODE § 1021. Thus, attorneys' fees are not a proper basis to meet the "element of damages." *Gray v. Don Miller & Assocs., Inc.*, 674 P.2d 253, 256-58 (Cal. 1984). *Gray* expressly disapproved an earlier case that had allowed a plaintiff "to recover attorney fees as an element of damages …." *Id.* at 258. "The California Supreme Court … is loathe to expand the contexts in which a party can recover its attorneys' fees unless authorized by a statute." *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1099 (N.D. Cal. 2007) (citing *Gray*).

Here, the district court declined to follow the American Rule based on a narrow exception recognized in *Oasis West Realty, LLC v. Goldman*, 250 P.3d 1115, 1124-25 (Cal. 2011). *Oasis* did not overrule *Gray* and did not even mention the American Rule. *Id.*

*Oasis* is not on point because it only authorized the recovery of attorneys' fees incurred outside of litigation — "to prepare a letter demanding that Goldman cease and desist from further misconduct." *Id.* "The cost of this remediation exceeded $3,000." *Id.* Here, in contrast to *Oasis*, Cellars is trying to broadly recover virtually all of the attorneys' fees incurred in this litigation — to satisfy the element of damages. That is exactly what *Gray* prohibits. 674 P.2d at 258. Cellars is trying to use a narrow exception to undo *Gray* and recover over $2 million in fees. This Court

should not allow the exception to swallow the rule and effectively negate Section 1021 for future litigants.

## C.  Cellars' claim was time-barred.

Finally, the district court ruled that **part** of Cellars' fiduciary-duty claim was barred by limitations as a matter of law.  1-ER-13-14.  That ruling should have applied to the entire claim.

There was no legally valid reason to treat Cellars' fiduciary-duty claim as two distinct claims for purposes of limitations.  Cellars agrees.  *See* Cellars' Brief at 68.  The California Supreme Court has implicitly confirmed that a cause of action should not be split for limitations purposes.  In short, when an alleged breach causes some damages, limitations starts to run, even if the breach goes on to cause more damages.  *See Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 958 P.2d 1062, 1070 (Cal. 1998).

The district court found that limitations expired under the 4-year provision in Section 340.6(a).  1-ER-13-14.  That provision does not contain a discovery rule.  Cal. Civ. Proc. Code § 340.6(a).  However, the limitations period is tolled if the following exist:

> (1)  The plaintiff has not sustained actual injury.
>
> (2)  The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.

*Id.*

Both of these tolling provisions can be resolved as a matter of law. As to the duration of the legal representation, Cellars judicially admitted that it ended in July 2016. 6-ER-1128 ¶96. Limitations thus should have expired by the end of July 2020. Covid-19 tolled limitations between April 6, 2020 – October 1, 2020. By this time, Cellars' claims were on the verge of expiring, with at least 3 years and 8 months having already expired. When the stay lifted on October 1, 2020, Schrader Cellars had, at most, an additional 4 months to file its complaint (at the latest, by February 1, 2021). Cellars did not file its lawsuit until February 26, 2021. 6-ER-1159.

As for actual injury, Cellars is seeking to disgorge the delivery of RBS wine to Roach. It is undisputed that this wine was provided to Roach "starting in the early 2000s." 11-ER-2096-99. Limitations should thus have expired over a decade ago. *See Jordache*, 958 P.2d at 1070 (limitations starts to run as soon as the plaintiff suffers "[a]ny appreciable and actual harm flowing from the attorney's negligent conduct").

The district court gave Cellars the benefit of the doubt and calculated limitations from the last wine delivery, which occurred "when the legal representation ended in [July] 2016." 1-ER-14. Even with that concession, the district court found that Cellars' claim was still time-barred. *Id.*

At trial, the jury reached a different result, finding that Cellars did not suffer actual injury before September 2, 2019. 2-ER-184. But the jury could only reach that result by disregarding the wine deliveries "starting in the early 2000s." 11-ER-2096-99. Because Cellars is seeking to recoup that same wine, the delivery of that wine started the limitations period: "The test for actual injury under section 340.6 … is whether the plaintiff has sustained any damages **compensable** in an action …." *Jordache*, 958 P.2d at 1071 (emphasis added).

Additionally, there was undisputed testimony that this delivery of wine was a concrete loss. 11-ER-2098. Moreover, Cellars sought to void the RBS agreement. 4-ER-721-24. In other words, Cellars contended that it was never obligated to provide that wine in the first place. Under California law, making a payment that is not owed constitutes an actual injury. *Safine v. Sinnott*, 19 Cal. Rptr. 2d 52, 54 (Cal. Ct. App. 1993). Thus, just as the district court ruled, any claim to recover the wine delivered to Roach is barred by limitations. 1-ER-13-14.

## CONCLUSION

For the foregoing reasons, the Court should affirm the dismissal of Cellars' claim for breach of fiduciary duties.

Respectfully submitted,

ALEXANDER DUBOSE & JEFFERSON LLP


By: */s/ William J. Boyce*
       William J. Boyce
       Robert B. Dubose
       ALEXANDER DUBOSE & JEFFERSON LLP
       1844 Harvard Street
       Houston, Texas  77008
       (713) 523-2358
       bboyce@adjtlaw.com
       rdubose@adjtlaw.com

       Manuel López
       ROACH NEWTON, L.L.P.
       One Westchase Center
       10777 Westheimer Rd., Suite 1100
       Houston, Texas  77042
       (713) 652-5717
       MLopez@roachnewton.com


ATTORNEYS FOR ROBERT M. (RANDY) ROACH, JR.,

# CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number(s)**  23-15862 & 23-15990

- I am the attorney or self-represented party.

- **This brief contains 13,983 words,** including _____0_____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f).  The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

- I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[ **X** ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

        [  ] it is a joint brief submitted by separately represented parties.

        [  ] a party or parties are filing a single brief in response to multiple briefs.

[  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _/s/ Manuel López_
**Date**   February 26, 2024

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 26, 2024. All participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Manuel López

# STATUTORY ADDENDUM

Except for the following, all pertinent statutory authorities are contained in the Opening Brief of Appellant, Robert M. (Randy) Roach, Jr., or in the Brief for Cross-Appellant Schrader Cellars, LLC.

## STATUTORY ADDENDUM

1.  28 U.S.C. § 2106...............................................................................71

2.  CAL. CIV PROC. CODE § 340.6.........................................................71

3.  CAL. CIV. PROC. CODE § 1021 ..........................................................73

4.  CAL. CORP. CODE § 16101(a)(10).......................................................73

5.  CAL. CORP. CODE § 17701.04..............................................................73

6.  CAL. RULES PROF. CONDUCT, Rule 1.8.1 .........................................75

**28 U.S.C. § 2106:**

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

**Cal. Civ. Proc. Code § 340.6:**

(a)     An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.  If the plaintiff is required to establish the plaintiff's factual innocence for an underlying criminal charge as an element of the plaintiff's claim, the action shall be commenced within two years after the plaintiff achieves postconviction exoneration in the form of a final judicial disposition of the criminal case.  Except for a claim for which the plaintiff is required to establish the plaintiff's factual innocence, the time for commencement of legal action shall not exceed four years except that the period shall be tolled during the time that any of the following exist:

(1)     The plaintiff has not sustained actual injury.

(2)     The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.

(3)     The attorney willfully conceals the facts constituting the wrongful act or omission when those facts are known to the attorney, except that this subdivision shall toll only the four-year limitation.

(4)     The plaintiff is under a legal or physical disability that restricts the plaintiff's ability to commence legal action.

(5)     A dispute between the lawyer and client concerning fees, costs, or both is pending resolution under Article 13 (commencing with Section 6200) of Chapter 4 of Division 3 of the Business and Professions Code.  As used in this paragraph, "pending" means from the date a request for arbitration is filed until 30 days after receipt of notice of the award of the arbitrators, or receipt of notice that the arbitration is otherwise terminated, whichever occurs first.

(b)     In an action based upon an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of that act or event.

**CAL. CIV. PROC. CODE § 1021:**

Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided.

**CAL. CORP. CODE § 16101(a)(10):**

"Partnership agreement" means the agreement, whether written, oral, or implied, among the partners concerning the partnership, including amendments to the partnership agreement.

**CAL. CORP. CODE § 17701.04:**

(a)     A limited liability company is an entity distinct from its members.

(b)     A limited liability company may have any lawful purpose, regardless of whether for profit, except the banking business, the business of issuing policies of insurance and assuming insurance risks, or the trust company business.  A domestic or foreign limited liability company may render services that may be lawfully rendered only pursuant to a license, certificate, or registration authorized by the Business and Professions Code, the Chiropractic Act, the Osteopathic Act, or the Yacht and Ship Brokers Act, if the applicable provisions of the Business and

Professions Code, the Chiropractic Act, the Osteopathic Act, or the Yacht and Ship Brokers Act authorize a limited liability company or foreign limited liability company to hold that license, certificate, or registration.

(c)     A limited liability company has perpetual duration.

(d)     Notwithstanding subdivision (b) and as specifically provided in this subdivision, a limited liability company may operate as a health care service plan licensed pursuant to Chapter 2.2 (commencing with Section 1340) of Division 2 of the Health and Safety Code if the limited liability company is a subsidiary of a health care service plan licensed pursuant to those provisions and the limited liability company is established to serve an existing line of business of the parent health care service plan.  Notwithstanding any other law, the tort or contract liability of a limited liability company created to operate as a health care service plan under this subdivision and its members is not limited or restricted in any manner because of the limited liability company status of the health care service plan.

(e)     Nothing in this title shall be construed to permit a domestic or foreign limited liability company to render professional services, as defined in subdivision (a) of Section 13401 and in Section 13401.3, in this state.

## CAL. RULES PROF. CONDUCT, Rule 1.8.1

A lawyer shall not enter into a business transaction with a client, or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied:

(a)    the transaction or acquisition and its terms are fair and reasonable* to the client and the terms and the lawyer's role in the transaction or acquisition are fully disclosed and transmitted in writing* to the client in a manner that should reasonably* have been understood by the client;

(b)    the client either is represented in the transaction or acquisition by an independent lawyer of the client's choice or the client is advised in writing* to seek the advice of an independent lawyer of the client's choice and is given a reasonable* opportunity to seek that advice; and

(c)    the client thereafter provides informed written consent* to the terms of the transaction or acquisition, and to the lawyer's role in it.

COMMENT

[1]    A lawyer has an "other pecuniary interest adverse to a client" within the meaning of this rule when the lawyer possesses a legal right to significantly impair or prejudice the client's rights or interests without court action. (See *Fletcher v. Davis* (2004) 33 Cal. 4th 61, 68 [14 Cal. Rptr.3d 58]; see also Bus. & Prof. Code, § 6175.3 [Sale of financial products to elder or dependent adult clients; Disclosure];

Fam. Code, §§ 2033-2034 [Attorney lien on community real property].)  However, this rule does not apply to a charging lien given to secure payment of a contingency fee.  (See *Plummer v. Day/Eisenberg*, LLP (2010) 184 Cal. App. 4th 38 [108 Cal. Rptr.3d 455].)

[2]    For purposes of this rule, factors that can be considered in determining whether a lawyer is independent include whether the lawyer:  (i) has a financial interest in the transaction or acquisition; and (ii) has a close legal, business, financial, professional or personal relationship with the lawyer seeking the client's consent.

[3]    Fairness and reasonableness under paragraph (a) are measured at the time of the transaction or acquisition based on the facts that then exist.

[4]    In some circumstances, this rule may apply to a transaction entered into with a former client.  (Compare *Hunniecutt v. State Bar* (1988) 44 Cal.3d 362, 370-71 ["[W]hen an attorney enters into a transaction with a former client regarding a fund which resulted from the attorney's representation, it is reasonable to examine the relationship between the parties for indications of special trust resulting therefrom.  We conclude that if there is evidence that the client placed his trust in the attorney because of the representation, an attorney-client relationship exists for the purposes of [the predecessor rule) even if the representation has otherwise ended [and] It appears that [the client] became a target of [the lawyer's] solicitation because he knew, through his representation of her, that she had recently received the

settlement fund [and the court also found the client to be unsophisticated]."] with *Wallis v. State Bar* (1942) 21 Cal.2d 322 [finding lawyer not subject to discipline for entering into business transaction with a former client where the former client was a sophisticated businesswoman who had actively negotiated for terms she thought desirable, and the transaction was not connected with the matter on which the lawyer previously represented her].)

[5]     This rule does not apply to the agreement by which the lawyer is retained by the client, unless the agreement confers on the lawyer an ownership, possessory, security, or other pecuniary interest adverse to the client.  Such an agreement is governed, in part, by rule 1.5.  This rule also does not apply to an agreement to advance to or deposit with a lawyer a sum to be applied to fees, or costs or other expenses, to be incurred in the future.  Such agreements are governed, in part, by rules 1.5 and 1.15.

[6]     This rule does not apply:  (i) where a lawyer and client each make an investment on terms offered by a third person* to the general public or a significant portion thereof; or (ii) to standard commercial transactions for products or services that a lawyer acquires from a client on the same terms that the client generally markets them to others, where the lawyer has no advantage in dealing with the client.